# EXHIBIT 1

Transaction of Interest -- Section 831(b) Micro-Captive Transactions

Notice 2016-66

The Department of the Treasury ("Treasury Department") and the Internal Revenue Service (the "IRS") are aware of a type of transaction, described below, in which a taxpayer attempts to reduce the aggregate taxable income of the taxpayer, related persons, or both, using contracts that the parties treat as insurance contracts and a related company that the parties treat as a captive insurance company. Each entity that the parties treat as an insured entity under the contracts claims deductions for premiums for insurance coverage. The related company that the parties treat as a captive insurance company elects under § 831(b) of the Internal Revenue Code (the "Code") to be taxed only on investment income and therefore excludes the payments directly or indirectly received under the contracts from its taxable income. The manner in which the contracts are interpreted, administered, and applied is inconsistent with arm's length transactions and sound business practices.

The Treasury Department and the IRS believe this transaction ("micro-captive transaction") has a potential for tax avoidance or evasion. See IR-2016-25 (discussing characteristics of an abusive micro-captive insurance structure). However, the Treasury Department and the IRS lack sufficient information to identify which § 831(b) arrangements should be identified specifically as a tax avoidance transaction and may lack sufficient information to define the characteristics that distinguish the tax avoidance

1

transactions from other § 831(b) related-party transactions. This notice identifies the transaction described in section 2.01 of this notice and substantially similar transactions as transactions of interest for purposes of § 1.6011-4(b)(6) of the Income Tax Regulations and §§ 6111 and 6112 of the Code. This notice also alerts persons involved in such transactions to certain responsibilities and penalties that may arise from their involvement with these transactions.

SECTION 1. BACKGROUND

.01 *Overview of Transaction*

In the micro-captive transaction, A, a person, directly or indirectly owns an interest in an entity (or entities) ("Insured") conducting a trade or business. A, persons related to A, or both, also directly or indirectly own another entity (or entities) ("Captive").

In some cases, Captive enters into a contract (or contracts) (the "Contract") with Insured as discussed below in section 1.02 of this notice. In these cases, Captive may enter into a reinsurance or pooling agreement under which a portion of the risks covered under the Contract are treated as pooled with risks of other entities, and Captive assumes risks from other entities as also discussed below in section 1.02 of this notice.

In other cases, Captive indirectly enters into the Contract by reinsuring risks that Insured has initially insured with an intermediary, Company C, as discussed below in section 1.03 of this notice.

2

.02 *Cases in Which Captive Enters into the Contract with Insured*

(a) *In general.* In cases in which Captive enters into the Contract with Insured, Captive and Insured treat the Contract as an insurance contract for federal income tax purposes. Captive provides coverage for Insured.

Captive may offer coverage only to persons related to or affiliated with Insured. If Captive also offers coverage to persons that are not related to or affiliated with Insured, Captive typically offers coverage only to other entities represented by a person who promotes the micro-captive transaction. Captive may enter into a reinsurance or pooling agreement under which a portion of the risks covered under the Contract are treated as pooled with risks of other entities and Captive assumes risks from other entities. Typically, the other entities participating in the reinsurance or pooling agreement are also represented by a person who promotes the micro-captive transaction.

Insured makes payments to Captive under the Contract, treats the payments as insurance premiums that are within the scope of § 1.162-1(a), and deducts the payments as ordinary and necessary business expenses under § 162. Captive treats the payments received from Insured under the Contract as premiums for insurance coverage. If Captive is not a domestic corporation, Captive makes an election under § 953(d) to be treated as a domestic corporation. The micro-captive transaction is structured so that Captive has no more than $1,200,000 in net premiums written (or, if greater, direct premiums written) for each taxable year ($2,200,000 for taxable years

3

beginning after December 31, 2016) in which the transaction is in effect. Captive makes an election under § 831(b) to be taxed only on taxable investment income and excludes the premiums from taxable income.

(b) *Promoter.* A promoter ("Promoter") typically markets the micro-captive transaction structure to A. Promoter, persons related to Promoter, or both, typically provide continuing services to Captive, including:

(1) providing the forms used for the Contract;

(2) management of Captive; and

(3) administrative, accounting, or legal services, including the filing of tax forms.

(c) *Contract coverage.* The coverage provided by Captive under the Contract has one or more of the following characteristics:

(1) the coverage involves an implausible risk;

(2) the coverage does not match a business need or risk of Insured;

(3) the description of the scope of the coverage in the Contract is vague, ambiguous, or illusory; or

(4) the coverage duplicates coverage provided to Insured by an unrelated, commercial insurance company, and the policy with the commercial insurer often has a far smaller premium.

(d) *Amounts paid to Captive.* The payments made by Insured to Captive under the Contract have one or more of the following characteristics:

(1) the amounts of Insured's payments under the Contract are designed to

4

provide Insured with a deduction under § 162 of a particular amount;

(2) the payments are determined without an underwriting or actuarial analysis that conforms to insurance industry standards;

(3) the payments are not made consistently with the schedule in the Contract;

(4) the payments are agreed to by Insured and Captive without comparing the amounts of the payments to payments that would be made under alternative insurance arrangements providing the same or similar coverage;

(5) the payments significantly exceed the premium prevailing for coverage offered by unrelated, commercial insurance companies for risks with similar loss profiles; or

(6) if Insured includes multiple entities, the allocation of amounts paid to Captive among the insured entities does not reflect the actuarial or economic measure of the risk of each entity.

(e) *Claims procedures and management of Captive.* Captive, Insured, or both does one or more of the following:

(1) Captive fails to comply with some or all of the laws or regulations applicable to insurance companies in the jurisdiction in which Captive is chartered, the jurisdiction(s) in which Captive is subject to regulation because of the nature of its business, or both;

(2) Captive does not issue policies or binders in a timely manner consistent with industry standards;

5

(3) Captive does not have defined claims administration procedures that are consistent with insurance industry standards; or

(4) Insured does not file claims for each loss event covered by the Contract.

(f) *Captive's capital.* Captive's capital has one or more of the following characteristics:

(1) Captive does not have capital adequate to assume the risks that the Contract transfers from Insured;

(2) Captive invests its capital in illiquid or speculative assets usually not held by insurance companies; or

(3) Captive loans or otherwise transfers its capital to Insured, entities affiliated with Insured, A, or persons related to A.

.03 *Cases in Which Insured and Captive Use an Intermediary Company*

In certain cases, Captive indirectly enters into the Contract by reinsuring risks that Insured has initially insured with an intermediary, Company C. In these cases, Insured enters into a contract with Company C that the parties treat as an insurance contract. Company C also enters into a reinsurance contract with Captive to reinsure risks under the contract between Insured and Company C. In cases in which Captive reinsures risks that Insured has initially insured with an intermediary, Company C, the reinsurance agreement between Company C and Captive is the Contract for purposes of this notice and the disclosures required in section 3.05 of this notice.

In these cases, the coverage provided by Captive under the Contract, the

6

payments made to Captive by Company C, and Captive's capital each has one or more of the characteristics described in section 1.02(c), (d) or (f) of this notice, as applicable; also, Captive, Insured or both do one or more of the items described in section 1.02(e) of this notice. In addition, a Promoter typically markets the transaction to A.

Moreover, in these cases, Company C is unrelated to A or Insured but may be related to Promoter. Company C enters into similar arrangements with other entities, which usually are also represented by Promoter. Company C reinsures with Captive a portion of the risks, commonly in layers. For example, the first layer might cover losses from $1 up to $10,000; the second layer might cover losses greater than $10,000, but not more than $100,000; and the third layer might cover losses greater than $100,000. Captive might assume from Company C 100% of one layer of Insured's risks and in another layer a proportionate share of the aggregate risk of Insured and other entities. The allocation among the layers of amounts paid to Captive as premiums typically does not reflect the actuarial or economic measures of the risks associated with the particular layers. In addition, any claims filed generally fall within the layer or layers that only cover risks of Insured.

.04 *Claimed Tax Treatment and Benefits*

In the micro-captive transaction, Insured, Captive, and, if applicable, Company C, treat the Contract as an insurance contract for federal income tax purposes. Insured claims a deduction for the premiums paid under § 162. Captive excludes the premium income from its taxable income by electing under § 831(b) to be taxed only on its

7

investment income. Captive uses the premium income for purposes other than administering and paying claims under the Contract, generally benefitting Insured or a party related to Insured. For instance, Captive may use premium income to provide a loan to Insured.

However, if the transaction does not constitute insurance, Insured is not entitled to deduct the amount of that payment under § 162 as an insurance premium. In addition, if Captive does not provide insurance, Captive does not qualify as an insurance company and Captive's elections to be taxed only on its investment income under § 831(b) and to be treated as a domestic insurance company under § 953(d) are invalid.

The Treasury Department and the IRS recognize that related parties may use captive insurance companies that make elections under § 831(b) for risk management purposes that do not involve tax avoidance, but believe that there are cases in which the use of such arrangements to claim the tax benefits of treating the Contract as an insurance contract is improper. Therefore, the Treasury Department and the IRS are identifying transactions described in section 2.01 of this notice (and transactions substantially similar to such transactions) as transactions of interest for purposes of § 1.6011-4(b)(6) and §§ 6111 and 6112 of the Code.

SECTION 2. TRANSACTIONS OF INTEREST

.01 *Transactions Identified as Transactions of Interest*

The following transaction is identified as a transaction of interest under this
8

notice:

(a) A, a person, directly or indirectly owns an interest in an entity (or entities) ("Insured") conducting a trade or business;

(b) An entity (or entities) directly or indirectly owned by A, Insured, or persons related to A or Insured ("Captive") enters into a contract (or contracts) (the "Contracts") with Insured that Captive and Insured treat as insurance, or reinsures risks that Insured has initially insured with an intermediary, Company C;

(c) Captive makes an election under § 831(b) to be taxed only on taxable investment income;

(d) A, Insured, or one or more persons related (within the meaning of § 267(b) or 707(b)) to A or Insured directly or indirectly own at least 20 percent of the voting power or value of the outstanding stock of Captive; and

(e) One or both of the following apply:

(1) the amount of the liabilities incurred by Captive for insured losses and claim administration expenses during the Computation Period (defined in section 2.02 of this notice) is less than 70 percent of the following:

(A) premiums earned by Captive during the Computation Period, less

(B) policyholder dividends paid by Captive during the Computation Period; or

(2) Captive has at any time during the Computation Period directly or indirectly made available as financing or otherwise conveyed or agreed to make available or convey to A, Insured, or a person related (within the meaning of § 267(b) or 707(b)) to A

9

or Insured (collectively, the "Recipient") in a transaction that did not result in taxable income or gain to Recipient, any portion of the payments under the Contract, such as through a guarantee, a loan, or other transfer of Captive's capital.

A transaction described in this section 2.01 is identified as a transaction of interest regardless of whether the transaction has the characteristics described in section 1 of this notice.

.02 *The Computation Period*

The Computation Period is (a) the most recent five taxable years of Captive or (b) if Captive has been in existence for less than five taxable years, the entire period of Captive's existence.  For purposes of the preceding sentence, if Captive has been in existence for less than five taxable years and Captive is a successor to one or more Captives created or availed of in connection with a transaction described in this notice, taxable years of such predecessor entities are treated as taxable years of Captive.  For purposes of this section 2.02, a short taxable year is treated as a taxable year.

.03 *Exception for Compensatory Arrangements with Prohibited Transaction Exemption*

There may be limited circumstances in which a captive insurance company arrangement that provides insurance for employee compensation or benefits is described in this section and accordingly is identified as a transaction of interest under this notice.  However, if such an arrangement is one for which the Employee Benefits Security Administration of the U.S. Department of Labor has issued a Prohibited

10

Transaction Exemption, it is not treated as an arrangement identified as a transaction of interest under this notice.

SECTION 3. RULES OF APPLICATION

.01 *Effective Date*

Transactions that are the same as, or substantially similar to, the transaction described in section 2.01 of this notice are identified as "transactions of interest" for purposes of § 1.6011-4(b)(6) and §§ 6111 and 6112 effective November 1, 2016. Persons entering into these transactions on or after November 2, 2006, must disclose the transaction as described in § 1.6011-4. Material advisors who make a tax statement on or after November 2, 2006, with respect to transactions entered into on or after November 2, 2006, have disclosure and list maintenance obligations under §§ 6111 and 6112. See § 1.6011-4(h) and § 301.6111-3(i) and § 301.6112-1(g) of the Procedure and Administration Regulations.

Independent of their classification as transactions of interest, transactions that are the same as, or substantially similar to, the transaction described in section 2.01 of this notice may already be subject to the requirements of §§ 6011, 6111, or 6112, or the regulations thereunder. When the Treasury Department and the IRS have gathered enough information regarding potentially abusive § 831(b) arrangements, the IRS and the Treasury Department may take one or more actions, including removing the transaction from the transactions of interest category in published guidance, designating the transaction as a listed transaction, or providing a new category of reportable

11

transaction. In the interim, the IRS may challenge a position taken as part of a transaction that is the same as, or substantially similar to, the transaction described in section 2.01 of this notice under other provisions of the Code or judicial doctrines such as sham transaction, substance over form, or economic substance.

.02 *Participation*

Under § 1.6011-4(c)(3)(i)(E), A, Insured, Captive, and, if applicable, Company C are participants in a transaction for each year in which their respective tax returns reflect tax consequences or a tax strategy of a transaction of interest described in section 2.01 of this notice.

.03 *Time for Disclosure*

For rules regarding the time for providing disclosure of a transaction described in section 2.01 of this notice, see § 1.6011-4(e) and § 301.6111-3(e). However, if, under § 1.6011-4(e), a taxpayer is required to file a disclosure statement with respect to a transaction described in section 2.01 of this notice after November 1, 2016, and prior to January 30, 2017, that disclosure statement will be considered to be timely filed if the taxpayer alternatively files the disclosure with the Office of Tax Shelter Analysis by January 30, 2017.

.04 *Material Advisor Threshold Amount*

The threshold amounts are the same as those for listed transactions. See § 301.6111-3(b)(3)(i)(B).

.05 *Disclosure*

12

(a) *General rule*. Under § 1.6011-4(d) and the Instructions to Form 8886, Reportable Transaction Disclosure Statement, the required disclosure must identify and describe the transaction in sufficient detail for the IRS to be able to understand the tax structure of the reportable transaction and the identity of all parties involved in the transaction.

(b) *Information required of all participants*. For all participants, describing the transaction in sufficient detail includes, but is not limited to, describing on Form 8886 when and how the taxpayer became aware of the transaction.

(c) *Information required of Captive*. For Captive, describing the transaction in sufficient detail includes, but is not limited to, describing the following on Form 8886:

(1) Whether Captive is reporting because (i) the amount of the liabilities incurred by Captive for insured losses and claim administration expenses during the Computation Period is less than 70 percent of the amount specified in section 2.01(e)(1) of this notice; (ii) Captive has at any time during the Computation Period made available as financing or otherwise conveyed or agreed to make available or convey any portion of the payments under the Contract to A, Insured, or a person related (within the meaning of § 267(b) or 707(b)) to A or Insured through a separate transaction, such as a guarantee, a loan, or other transfer; or (iii) both (i) and (ii);

(2) Under what authority Captive is chartered;

(3) A description of all the type(s) of coverage provided by Captive during the year or years of participation (if disclosure pertains to multiple years);

13

(4) A description of how the amounts treated as premiums for coverage provided by Captive during the year or years of participation (if disclosure pertains to multiple years) were determined, including the name and contact information of any actuary or underwriter who assisted in these determinations;

(5) A description of any claims paid by Captive during the year or years of participation (if disclosure pertains to multiple years), and of the amount of, and reason for, any reserves reported by Captive on the annual statement; and

(6) A description of the assets held by Captive during the year or years of participation (if disclosure pertains to multiple years); that is, the use Captive has made of its premium and investment income, including but not limited to, securities (whether or not registered), loans, real estate, or partnerships or other joint ventures, and an identification of the related parties involved in any transactions with respect to those assets.

.06 *Penalties*

Persons required to disclose these transactions under § 1.6011-4 who fail to do so may be subject to the penalty under § 6707A. Persons required to disclose these transactions under § 6111 who fail to do so may be subject to the penalty under § 6707(a). Persons required to maintain lists of advisees under § 6112 who fail to do so (or who fail to provide such lists when requested by the IRS) may be subject to the penalty under § 6708(a). In addition, the IRS may impose other penalties on parties involved in these transactions, including the accuracy-related penalty under § 6662 or

14

§ 6662A.

SECTION 4. REQUEST FOR COMMENTS

The Treasury Department and the IRS request comments on how the transaction might be addressed in published guidance.

Comments should be submitted in writing on or before January 30, 2017. Send submissions to CC:PA:LPD:PR (Notice 2016-66), Room 5203, Internal Revenue Service, P.O. Box 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (Notice 2016-66), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW, Washington, DC 20224. Comments may also be sent electronically, via the following e-mail address: *Notice.comments@irscounsel.treas.gov*. Please include "Notice 2016-66" in the subject line of any electronic communications. All comments submitted will be available for public inspection and copying.

SECTION 5. DRAFTING INFORMATION

The principal author of this notice is John E. Glover of the Office of Associate Chief Counsel (Financial Institutions & Products). For further information regarding this notice contact Mr. Glover at (202) 317-6995 (not a toll-free call).

15