# EXHIBIT 3



Media Relations Office     Washington, D.C.     Media Contact: 202.317.4000
www.IRS.gov/newsroom     Public Contact: 800.829.1040

# Abusive Tax Shelters Again on the IRS "Dirty Dozen" List of Tax Scams for the 2016 Filing Season

IR-2016-25, Feb. 16, 2016

WASHINGTON — The Internal Revenue Service today said using abusive tax shelters and structures to avoid paying taxes continues to be a problem and remains on its annual list of tax scams known as the "Dirty Dozen" for the 2016 filing season.

"Taxpayers should steer clear of unscrupulous promoters who sell phony tax shelters with no real purpose other than to avoid paying what is owed," said IRS Commissioner John Koskinen. "These schemes can end up costing taxpayers more in back taxes, penalties and interest than they saved in the first place."

Compiled annually, the "Dirty Dozen" lists a variety of common scams that taxpayers may encounter anytime but many of these schemes peak during filing season as people prepare their returns or hire people to help with their taxes.

Illegal scams can lead to significant penalties and interest and possible criminal prosecution. IRS Criminal Investigation works closely with the Department of Justice (DOJ) to shut down scams and prosecute the criminals behind them.

**Abusive Tax Structures**

Abusive tax schemes have evolved from simple structuring of abusive domestic and foreign trust arrangements into sophisticated strategies that take advantage of the financial secrecy laws of some foreign jurisdictions and the availability of credit/debit cards issued from offshore financial institutions.

IRS Criminal Investigation (CI) has developed a nationally coordinated program to combat these abusive tax schemes. CI's primary focus is on the identification and investigation of the tax scheme promoters as well as those who play a substantial or integral role in facilitating, aiding, assisting, or furthering the abusive tax scheme, such as accountants or lawyers. Just as important is the investigation of investors who knowingly participate in abusive tax schemes.

Multiple flow-through entities are commonly used as part of a taxpayer's scheme to evade taxes. These schemes may use Limited Liability Companies (LLCs), Limited Liability Partnerships (LLPs), International Business Companies (IBCs), foreign financial

accounts, offshore credit/debit cards and other similar instruments. They are designed to conceal the true nature and ownership of the taxable income and/or assets.

Whether something is "too good to be true" is important to consider before buying into any arrangements that promise to "eliminate" or "substantially reduce" your tax liability. If an arrangement uses unnecessary steps or a form that does not match its substance, then that arrangement is an abusive scheme. Another thing to remember is that the promoters of abusive tax schemes often employ financial instruments in their schemes; however, the instruments are used for improper purposes including the facilitation of tax evasion.

The IRS encourages taxpayers to report unlawful tax evasion. [Where Do You Report Suspected Tax Fraud Activity?](#)

**Misuse of Trusts**

Trusts also commonly show up in abusive tax structures. They are highlighted here because unscrupulous promoters continue to urge taxpayers to transfer large amounts of assets into trusts. These assets include not only cash and investments, but also successful on-going businesses. There are legitimate uses of trusts in tax and estate planning, but the IRS commonly sees highly questionable transactions. These transactions promise reduced taxable income, inflated deductions for personal expenses, reduced (even to zero) self-employment taxes, and reduced estate or gift transfer taxes.

These transactions commonly arise when taxpayers are transferring wealth from one generation to another. Questionable trusts rarely deliver the tax benefits promised and are used primarily as a means of avoiding income tax liability and hiding assets from creditors, including the IRS.

IRS personnel continue to see an increase in the improper use of private annuity trusts and foreign trusts to shift income and deduct personal expenses, as well as to avoid estate transfer taxes. As with other arrangements, taxpayers should seek the advice of a trusted professional before entering a trust arrangement.

**Captive Insurance**

Another abuse involving a legitimate tax structure involves certain small or "micro" captive insurance companies. Tax law allows businesses to create "captive" insurance companies to enable those businesses to protect against certain risks. The insured claims deductions under the tax code for premiums paid for the insurance policies while the premiums end up with a captive insurance company owned by the owners of the insured or family members.

The captive insurance company, in turn, can elect under a separate section of the tax code to exclude up to $1.2 million of its net premium income per year, so that the captive is taxed only on its investment income.

In the abusive structure, unscrupulous promoters, accountants, or wealth planners persuade the owners of closely held entities to participate in these schemes. The promoters assist the owners to create captive insurance companies onshore or offshore and cause the creation and sale of the captive "insurance" policies to the closely held entities. The policies may cover ordinary business risks or esoteric, implausible risks for exorbitant "premiums," while the insureds continue to maintain their far less costly commercial coverages with traditional insurers. Captive "insurance" policies may attempt to cover the same risks as are covered by the entities' existing commercial coverage, but the captive policies' "premiums" may be double or triple the premiums of the policy owners' commercial policies.

Annual premium amounts are frequently targeted to the amounts of deductions business entities seek in order to reduce their taxable income. In these abusive schemes, total premiums can equal up to $1.2 million annually to take full advantage of the premium income exclusion provision. Underwriting and actuarial substantiation for the insurance premiums paid are either absent or illusory. The promoters manage the entities' captive insurance companies for substantial fees, assisting taxpayers unsophisticated in insurance, to continue the charade from year to year.

The Protecting Americans from Tax Hikes Act of 2015 reins in certain of the micro captive abuses that the IRS is currently combatting. Those provisions are effective for small insurance companies' taxable years beginning after Dec. 31, 2016.

—30—