IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| CIC SERVICES, LLC, *et al.*, | ) |
| | )     Case No. 3:17-cv-00110-TRM-HBG |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| INTERNAL REVENUE SERVICE, *et al.*, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

# INTRODUCTION

Plaintiffs CIC Services, LLC and Ryan, LLC's complaint challenges the IRS's decision to designate certain captive insurance transactions as "Transactions of Interest" via IRS Notices 2016-66 and 2017-08. The IRS has used this congressionally-authorized notice procedure since 2007 to designate "Transactions of Interest," *i.e.*, transactions the IRS has determined have a potential for tax avoidance or evasion. The designation requires the disclosure of the identified transaction (and those substantially similar) by taxpayers and material advisors,[1] and authorizes the assessment of tax penalties against participants and material advisors if they fail to disclose to the IRS certain information concerning the transaction described in the notice.

Plaintiffs contend that the IRS lacks authority to designate potentially tax-abusive transactions as "Transactions of Interest" without first undergoing notice-and-comment rulemaking. Plaintiffs seek a preliminary injunction to set aside IRS Notices 2016-66 and 2017-08.[2] As a practical matter, this would enjoin the IRS from assessing or collecting penalties that are treated as taxes under 26 U.S.C. § 6671. It will also interfere with the IRS's ability to identify and examine potentially abusive transactions, and assess and collect taxes otherwise due from transaction participants.

The Court should deny plaintiffs' motion because they have not demonstrated that they are entitled to the extraordinary remedy of a preliminary injunction under the Sixth Circuit's

---

[1] A material advisor is any person "who provides any material aid, assistance, or advice with respect to organizing, managing, promoting, selling, implementing, insuring, or carrying out any reportable transaction, and" who receives gross income for such activities in excess of certain thresholds ($50,000 when individuals reap the tax savings and $250,000 in all other cases). 26 U.S.C. § 6111(b)(1). Plaintiffs allege they are material advisors, but have not alleged any facts beyond the mere conclusory allegation that they fall within the statutory definition.

[2] Plaintiffs base their motion for a preliminary injunction solely on Count I of the complaint. Pls.' Br. 5.

four-factor test.  First, plaintiffs are unlikely to succeed on the merits.  The Anti-Injunction Act deprives the Court of jurisdiction because the requested injunction would impermissibly restrain the assessment and collection of federal taxes.  Even if the Court were to exercise jurisdiction, plaintiffs have failed to state a claim for relief under the Administrative Procedure Act because the applicable regulation did not obligate the IRS to engage in notice-and-comment rulemaking prior to designating a subset of captive insurance transactions as "Transactions of Interest." Indeed, the IRS issued the challenged notices using a procedure that the IRS created in 2007 through notice-and-comment rulemaking, and Congress had earlier approved the use of this procedure for designating other "Reportable Transactions."

None of the remaining factors, whether considered alone or in combination, favor issuance of a preliminary injunction.  Plaintiffs' irreparable harm arguments fail because they cannot establish the economic or reputational harm that they allege, much of which could not even be cured through an injunction.  In addition, because an injunction would harm both the IRS's ability to collect taxes and the public's interest in the just administration of the tax laws, those factors also weigh against the Court issuing a preliminary injunction.

## I.    BACKGROUND

### A.    Statutory and Regulatory Background[3]

Congress empowered the IRS to investigate tax shelters by granting the agency broad authority to establish procedures for designating certain transactions as "Reportable Transactions" because such transactions generally are (or have the potential for being) used for the purpose of tax avoidance or evasion.  26 U.S.C. § 6707A(C)(1); see also, 26 U.S.C.

_____

[3] Although the legislative and regulatory history is discussed in detail in section II.B.2, *infra*, a brief overview of the IRS's process for designating "Reportable Transactions" provides helpful context.

§§ 6707A, 6708, 6111 and 6112.  Congress directed that the IRS "may proscribe regulations which provide … such rules as may be necessary or appropriate to carry out the purposes of this section."  26 U.S.C. § 6111(c)(3).  Through notice-and-comment rulemaking, the IRS created a category of "Reportable Transaction" known as "Transactions of Interest."  26 C.F.R § 1.6011-4(b)(6).  This designation does not prohibit the designated transaction, but instead imposes disclosure requirements on the transaction's participants and material advisors.  Congress authorized the IRS to assess penalties against participants (or their material advisors) for failing to file the required disclosures.  26 U.S.C.  §§ 6707(a) and 6708(a) (for material advisors); 26 U.S.C. § 6707A (for taxpayers).

### B.    IRS Notices 2016-66 and 2017-08

On November 1, 2016, the IRS released IRS Notice 2016-66, which designated a subset of so-called captive insurance transactions as a "Transaction of Interest."  IRS Notice 2016-66, 2016-47 I.R.B. 745, at 1-2.  Captive insurers are companies whose sole purpose is to issue insurance to their parent company (or its affiliates).  When a business creates a "captive" insurance company to protect against certain risks, the Internal Revenue Code permits the insured business to deduct from their income the premium payments made to the captive, thereby lowering their tax liability.  26 U.S.C. § 162(a); 26 C.F.R. § 1.1162-1(a).  If the captive that receives those payments elects to be taxed under 26 U.S.C. § 831(b), it can exclude those premiums from income, which reduces the captive's tax liability.

Because the tax treatment of captive insurers departs from the traditional rule that a payment deductible by one party is includible in income by the recipient, taxpayers can derive an improper tax benefit if "the [insurance] contracts are interpreted, administered, and applied" in a

manner inconsistent with the arm's-length standard and sound business practices.[4]  IRS Notice 2016-66 at 1.  The risk to the public fisc increases when taxpayers engaging in such transactions count on the inability of the IRS to audit all taxpayers or to identify such transactions from the face of an income tax return without an intrusive examination. The risk to the public fisc increases further when material advisors are compensated for arranging such transactions but under no obligation to report the transactions.

The IRS designated a subset of captive insurance transactions as "Transactions of Interest" in order to "define the characteristics that distinguish the tax avoidance transactions from other § 831(b) related-party transactions."  Id.  The Notices at issue direct captives and their material advisors to disclose certain information if the captive insurance arrangement meets specific criteria, such as the ratio of the captive's insured losses to the captive's received premium payments, less dividends.  IRS Notice 2016-66 at § 2.01.  By identifying the transaction as a reportable transaction, taxpayers who engage in and material advisors who advise on such transactions are statutorily required to provide information identifying and describing the transaction; material advisors are also required to maintain a list of clients that enter into these transactions, and penalties are imposed on those who fail to do so.  26 U.S.C. §§ 6707A and 6708.

IRS Notice 2016-66 originally required captives and their material advisors to begin reporting on January 30, 2017. IRS Notice 2016-66, § 3.03.  However, in late 2016 the IRS extended that deadline by 90 days to May 1, 2017. See IRS Notice 2017-08, 2017-3 I.R.B. 423, at § 3.03.

_____

[4] For instance, a captive insurer engaged in such a scheme might sell insurance to a company in eastern Tennessee that insured its offices in Johnson City against volcano damage.

## C.     The Instant Litigation

On December 28, 2016, CIC Services filed its first complaint challenging IRS Notice 2016-66.  CIC Services, LLC v. IRS, 3:16-cv-809 (E.D. Tenn.).  Rather than press its claims in that case, however, CIC Services voluntarily dismissed its complaint on December 30, 2016. See id., ECF No. 7.

Plaintiffs filed the instant four-count complaint on March 27, 2017.  As in the initial complaint, plaintiffs seek an injunction setting aside IRS Notices 2016-66 and 2017-08.[5] Plaintiffs' first count, which is the sole basis for their motion for a preliminary injunction, invokes the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., and alleges that the IRS Notices are invalid because the IRS did not release them through notice-and-comment rulemaking.[6]

On March 30, 2017, plaintiffs filed the instant motion for a preliminary injunction. Plaintiffs argue that they are likely to succeed on the merits on Count I of the complaint because Notices 2016-66 and 2017-08 were not the product of notice-and-comment rulemaking.  Pls.' Br. 14.  Plaintiffs also assert that they will suffer irreparable financial and reputational harm if the IRS Notices are not set aside.  Id. at 14-15.  Plaintiffs contend that the balance of equities lies in their favor because, in plaintiffs' opinion, the IRS does not have a sufficient need for the information to justify the potential compliance costs.  Pls.' Br. 16.  Lastly, plaintiffs claim that the public interest weighs in favor of granting the injunction because "[c]onsiderations of the

---

[5] Notice 2017-08 extended the reporting deadline by 90 days.

[6] The government intends to move to dismiss the complaint in its entirety after the court resolves the pending motion.  Because plaintiffs' motion is limited to Count I, however, so too is the government's response.

separation of powers inherent in the rulemaking process and the APA are put at risk" by the IRS's actions.  Pls.' Br. 16.

Plaintiffs' arguments are without legal or evidentiary support, and fall far short of the substantial showing necessary to justify the issuance of a preliminary injunction.  The Court should deny their motion.

## II.     PLAINTIFFS HAVE NEITHER DEMONSTRATED THAT THE COURT HAS JURISDICTION TO ENJOIN THE IRS NOR CARRIED THEIR BURDEN OF DEMONSTRATING ENTITLEMENT TO A PRELIMINARY INJUNCTION

### A.     Standard of Review for Preliminary Injunction

A preliminary injunction constitutes a "drastic and extraordinary remedy."  Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010).  When determining the appropriateness of a preliminary injunction, the court must examine four factors: (1) whether the plaintiff has established a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served if the court were to grant the requested injunction.  Liberty Coins, LLC v. Goodman, 748 F.3d 682, 689–90 (6th Cir. 2014); In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985) (factors are to be balanced against each other); Crawford v. United States Department of Treasury, No. 3:15-cv-250, 2015 WL 5697552, at *5 (S.D. Ohio Sept. 29, 2015) (denying preliminary injunction, appeal of merits case docketed May 23, 2016).  None of these factors, whether in isolation or balanced against each other, weigh in favor of granting plaintiffs' motion for a preliminary injunction.

### B.     Plaintiffs Cannot Establish a Likelihood of Success on the Merits

Plaintiffs have not carried their burden of demonstrating a likelihood of success on the merits.  Even assuming plaintiffs have standing, Count I (1) is barred by the Anti-Injunction Act,

26 U.S.C. § 7421 ("AIA") and (2) fails to state a claim under the APA. Accordingly, this first factor strongly favors the government.

### 1. The Court Lacks Subject Matter Jurisdiction Because the Requested Injunction Is Barred by the Anti-Injunction Act[7]

Count I of the complaint seeks injunctive relief to prevent enforcement of the reporting requirements of Notices 2016-66 and 2017-08, which occur through imposition of a penalty under sections 6707, 6707A, and 6708 of the Internal Revenue Code. Their action is barred by the AIA, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ." 26 U.S.C. § 7421(a). The AIA protects "the Government's ability to collect a consistent stream of revenue" by requiring taxpayers to fully pay their liabilities before challenging them in district court. Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566, 2582 (2012), (hereinafter NFIB) (holding AIA did not apply because penalty at issue not found in Subchapter 68B). The AIA's principal purpose is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" Bob Jones Univ. v. Simon, 416 U.S. 725, 736-37 (quoting Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7 (1962)).

The AIA has "almost literal effect," Bob Jones, 416 U.S. at 737, and applies to both direct restraints on assessment or collection and "activities which are intended to or may

---

[7] For many of the same reasons discussed in section C.1, *infra*, Plaintiffs fail to adequately plead facts to support their claim that they are material advisors or have suffered an injury-in-fact sufficient to support standing. Although the government assumes the sufficiency of plaintiffs' standing allegations for the purpose of opposing their motion for a preliminary injunction, if necessary the government intends to seek jurisdictional discovery to determine, *inter alia*, whether plaintiffs are material advisors and whether any of the captives under plaintiffs' management *actually* meet the disclosure criteria listed in the challenged notices, Compl. ¶ 20, and whether plaintiffs can substantiate their claims of reputational harm.

culminate in the assessment or collection of taxes." Dickens v. United States, 671 F.2d 969, 971 (6th Cir. 1982) (AIA barred suit to enjoin IRS from using particular types of evidence in assessing taxes); accord Daulton v. United States, 76 F. App'x 652, 654 (6th Cir. 2003) (AIA barred suit to enjoin IRS investigation because the investigation "may lead to the assessment and collection of taxes"); Kemlon Prod. & Dev. Co. v. United States, 638 F.2d 1315, 1320 (5th Cir. 1981) (AIA barred suit to restrain IRS from collecting information from taxpayer's customers); Pflum v. United States, No. 99-4170-SAC, 2002 WL 1334857, at *2 (D. Kan. May 15, 2002) (collecting cases).

Plaintiffs seek pre-assessment review of the Notices, which is precisely the type of relief that the AIA forbids. Assuming, as plaintiffs do, that they are required to report under the Notices, plaintiffs can decline to report, pay one assessed penalty, and file a claim for a refund. If the IRS denies the claim, or the IRS takes no action for six months, plaintiffs can file suit in a district court (or the Court of Federal Claims) for a refund and challenge the reporting requirement. 26 U.S.C. § 7422 and 28 U.S.C. § 1346.

Although the AIA does not "reach all disputes tangentially related to taxes," Cohen v. United States, 650 F.3d 717, 727 (D.C. Cir. 2011), it bars suits like this when a post-payment remedy of a refund suit lies. Courts have routinely dismissed APA challenges that would have prematurely interfered with the IRS's ability to assess or collect taxes and tax penalties. E.g., RYO Mach., LLC v. U.S. Dep't of Treasury, 696 F.3d 467, 470 (6th Cir. 2012) (AIA barred challenge to Alcohol and Tobacco Tax and Trade Bureau ruling that subjected tobacco retailers to certain permitting requirements); Florida Bankers Ass'n v. U.S. Dep't of the Treasury, 799 F.3d 1065, 1068 (D.C. Cir. 2015) (AIA barred challenge to IRS regulation that triggered a penalty on U.S. banks that failed to report certain interest payments), cert. denied, 136 S. Ct.

2429 (2016); <u>Maze v. Internal Revenue Serv.</u>, 206 F. Supp. 3d 1, 19 (D.D.C. 2016) (AIA barred challenge to published IRS settlement procedures) (appeal docketed September 23, 2016); <u>Debt Buyers' Ass'n v. Snow</u>, 481 F. Supp. 2d 1, 9 (D.D.C. 2006) (AIA barred challenge to requirement that lenders report information about their customers to IRS related to the discharge of debt); <u>see also</u> <u>Lutz v. United States</u>, 919 F.2d 738 (6th Cir. 1990) (unpublished) (APA does not waive sovereign immunity or replace jurisdiction withdrawn by AIA ).

The injunction sought by plaintiffs' complaint violates the AIA because it would directly restrain tax assessment and collection. Specifically, the requested injunction would prevent the IRS from assessing a tax penalty against material advisors and captive insurers who do not file the disclosures required by the statutory and regulatory framework set forth by 26 U.S.C. §§ 6111, 6112, 6707, and 6707A; 26 C.F.R. §§ 1.6011-4, 301.6111-3 and 301.6112-1. This framework authorizes the IRS to assess a penalty against plaintiffs if they (1) serve as material advisors with respect to a "Transaction of Interest" and (2) fail to make a return or file false or incomplete information with respect to such transaction. <u>See</u> 26 U.S.C. § 6707A.

The penalties imposed are found in subchapter 68B of the Internal Revenue Code. The Supreme Court recently reiterated that penalties in subchapter 68B of the Internal Revenue Code, are "treated as taxes under Title 26, which includes the Anti-Injunction Act." <u>NFIB</u>, 132 S. Ct. at 2583; <u>accord</u> 26 U.S.C. § 6671 (penalties in subchapter "shall be assessed and collected in the same manner as taxes").

In light of this instruction, the D.C. Circuit recently held, in a very similar case to the instant litigation, that the AIA barred suits that would prevent the assessment of subchapter 68B penalties. <u>Florida Bankers</u>, 799 F.3d at 1068; <u>see also</u> <u>LNV Corp. v. Hook</u>, 638 F. App'x 667, 672 (10th Cir. 2015) (applying <u>NFIB</u> and holding penalties treated as taxes for AIA purposes);

<u>Endeavor Partners Fund, LLC v. CIR</u>, 111 T.C.M. (CCH) 1055 (T.C. 2016) (AIA barred

Taxpayer's pre-enforcement challenge to prevent § 6707 penalty assessments); <u>Washington v.

United States</u>, No. CV 15-2360-DSF (AGR), 2016 WL 6995355, at *3 (C.D. Cal. Mar. 31, 2016)

(frivolous filing penalties under 26 U.S.C. § 6702 constitute "taxes" for purposes of AIA), <u>report

and recommendation adopted</u>, 2016 WL 6995357 (C.D. Cal. May 31, 2016).

 In <u>Florida Bankers</u>, plaintiffs challenged a Treasury regulation that required banks to

report interest paid to certain non-resident aliens. 799 F.3d at 1068.  If a bank failed to file the

required report, that bank would be subject to a penalty under 26 U.S.C. § 6721(a).  <u>Id.</u>  Relying

on the plain language of 26 U.S.C. § 6671(a) and <u>NFIB</u>, the Court held that the Anti–Injunction

Act required dismissal.  <u>Id.</u> (holding that Subchapter 68 penalty was "treated as a tax for

purposes of the Anti-Injunction Act.  We know that for two good reasons: The text of the Tax

Code says so, and the Supreme Court says so.").  Thus, <u>Florida Bankers</u> stands for the same

proposition espoused by the Supreme Court in <u>NFIB</u>: penalties located in subchapter 68B of the

Internal Revenue Code are "treated as taxes under Title 26, which includes the Anti-Injunction

Act."[8]  <u>NFIB</u>, 132 S. Ct. at 2583.

 Against this weight of authority, plaintiffs put forth a string cite of easily distinguishable

cases.  Pls.' Br. 21.  Two of the cases plaintiffs repeatedly cite are inapposite to the facts alleged

in the complaint. Those cases stand for the proposition that the AIA doesn't bar suits to enjoin

(alleged) unconstitutional viewpoint discrimination if the court finds that either (i) the requested

injunction would not impact the IRS's ability to assess or collect taxes; or (ii) an injunction

---

[8] Although the filing requirement, 26 U.S.C. § 6011, appears in Chapter 68, subchapter A, the penalties are imposed by 26 U.S.C. §§ 6707, 6707A, and 6708.  Therefore, the penalty at issue in this case is "provided by" subchapter B, <u>see</u> I.R.C. § 6671(a), just like the penalty at issue in <u>Florida Bankers</u>.

would remedy the alleged injury, but a refund suit would provide no remedy at all.  See Pls.' Br. 21 (citing NorCal Tea Party Patriots v. IRS, 2014 WL 3547369 (S.D. Ohio July 17, 2014) and Z Street v. Koskinen, 791 F.3d 24 (D.C. Cir. 2015)).  The facts in those cases are unlike the facts at issue here: plaintiffs here have not alleged viewpoint discrimination, the plaintiffs here are not seeking tax-exempt status, and the plaintiffs here have a post-payment refund suit remedy.

Two of the other cases plaintiffs cite do not involve the AIA.  Rather, these cases implicate the Tax Injunction Act, 28 U.S.C. § 1341, which prevents courts from enjoining *state* tax assessment and collection in certain situations.  Pls.' Br. 21 (citing Direct Marketing Association v. Brohl, 135 S. Ct. 1124 (2015) and Pendleton v. Heard, 824 F.2d 448, 451-52 (5th Cir. 1987)).  Though generally similar, there are important textual differences between the Tax Injunction Act and the Anti-Injunction Act.  See Maze, 206 F. Supp. 3d at 18-19. Perhaps of greater importance (given NFIB), neither Direct Marketing nor Pendleton involved an injunction that would prohibit the assessment of Subchapter 68B penalties.  See Direct Marketing, 135 S. Ct. at 1136 (Ginsburg, J. concurring) (noting that "A different question would be posed, however, by a suit to enjoin reporting obligations imposed on a taxpayer or tax collector.").

Plaintiffs also rely on a plainly inapposite Fourth Circuit decision, King v. Burwell, despite the fact that the case involved the same non-Subchapter 68B penalty that was at issue in NFIB. 759 F.3d 358 (4th Cir. 2014).  Id.  Nor can plaintiffs save their complaint by reference to the D.C. Circuit's *en banc* decision in Cohen, 650 F.3d 717.  Unlike the tax penalties at issue in the case at bar, the taxes at issue in Cohen *had already been collected*.  Id. at 725.  Thus, plaintiffs have not marshalled any authority from which this court might rule that plaintiffs have established subject matter jurisdiction—much less a likelihood of success on the merits.

In sum, plaintiffs' request that the Court set aside IRS Notices 2016-66 and 2017-08 constitutes a request for pre-enforcement judicial interference with the assessment and collection of penalties that are treated as taxes. This is precisely the type of relief that the AIA forbids. NFIB.[9]

### 2. Plaintiffs Fail to State a Claim for Relief Under the Administrative Procedure Act

Even if the Court were to conclude that it had jurisdiction, plaintiffs still fail to state a claim for relief because it is undisputed that the IRS released the challenged notices in accordance with the applicable regulation, 26 C.F.R. § 1.6011-4, which was issued in 2007 through notice-and-comment rulemaking.

Count I is based on the faulty premise that the IRS was obligated to engage in notice-and-comment rulemaking prior to designating certain captive insurance transactions as "Transactions of Interest." Congress authorized the IRS to establish regulations to designate transactions as "Reportable Transactions." 26 U.S.C. § 6111(c) (quoted above). The IRS then promulgated, via notice-and-comment rulemaking, the procedure to identify transactions of interest by notice such as that used to issue IRS Notices 2016-66 and 2017-08 (*i.e.*, 26 C.F.R. § 1.6011-4). That regulation, in turn, provides for the designation of "Transactions of Interest" that are "the same as or substantially similar to one of the types of transactions that the IRS has identified by notice, regulation, or other form of published guidance as a transaction of interest." 26 C.F.R. § 1.6011-4(b)(6).

---

[9] For this same reason, the Court lacks jurisdiction over Counts II and III. For a similar reason, the Court lacks jurisdiction to grant a declaratory judgment requested in Count IV. See Bob Jones, 416 U.S. 725, 732 n.7 (1974) (federal tax exception to Declaratory Judgment Act is at least as broad as the Anti-Injunction Act).

Although the "Transaction of Interest" designation was new in 2007, the use of IRS Notices to designate a "Reportable Transaction" was not. Before 2004, the term "Reportable Transaction" was not used anywhere in the Internal Revenue Code. During its consideration of the American Jobs Creation Act, Congress noted that the Treasury Department had issued "final regulations regarding the disclosure of reportable transactions." H.R. Conf. Rep. 108-755 (2004), at 595 & n.452. Those regulations required the disclosure of six categories of "Reportable Transactions." Tax Shelter Regulations, 68 Fed. Reg. 10161, 10163-66 (Mar. 4, 2003). Congress also listed out each of the six types of Reportable Transactions. H.R. Conf. Rep. 108-755, at 595-96. Congress described the first type, "Listed Transactions," as transactions that are the same as, or substantially similar to, "a transaction that is specified by the Treasury Department as a tax avoidance transaction whose tax benefits are subject to disallowance under present law." Id. at 595 (citing Treas. Reg. § 1.6011-4(b)(2) (2003), 68 Fed. Reg. at 10164). In turn, the Regulation stated that specification by the Treasury Department happened "*by notice*, regulation, or other form of published guidance." Treas. Reg. § 1.6011-4(b)(2) (2003), 68 Fed. Reg. at 10164 (emphasis added).

Thus, Congress was well aware that the IRS designated "Reportable Transactions" by issuing notices. Congress did not disapprove that practice. Quite the opposite: Congress created a penalty for taxpayers and material advisors who failed to comply. First, Congress created 26 U.S.C. § 6707A, which provided that "Reportable Transactions" were "any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion." See Pub.L. 108-357, Title VIII, § 811(a), Oct. 22, 2004, 118 Stat. 1418, 1575-76.

Next, Congress substantially rewrote 26 U.S.C. § 6111 to require "[e]ach material advisor with respect to any reportable transaction" to file a return "in such form as the Secretary may prescribe." Id. § 815(a), 118 Stat. at 1581 (codified at I.R.C. § 6111(a)). Congress defined the term "reportable transaction" by cross-reference to § 6707A. Id., 118 Stat. at 1582 (codified at 26 U.S.C. § 6111(b)(2)). Congress also gave this requirement teeth by creating a specific penalty for material advisors. See id. § 816, 118 Stat. at 1583 (codified at 26 U.S.C. § 6707). In short, Congress expected that the Treasury Department would use IRS Notices to designate certain transactions "reportable," and it created a penalty to force material advisors (like the plaintiffs allege they are) to abide by the Notices.

It does not matter that the reportable transaction category at issue here, "Transactions of Interest," was not defined at the time Congress codified the reporting requirements and created the penalty. Congress noted in its legislative history that it was not defining "Reportable Transaction." Instead, the law "authorize[d] the Treasury Department to define . . . 'reportable transaction' under [I.R.C. §] 6011." H.R. Conf. Rep. 108-755, at 597. See also id. at 597 n.462 (explaining that the Secretary "may modify . . . the definitions of 'listed transaction' and 'reportable transactions' as appropriate" (parenthesis omitted)).

The IRS created the "Transaction of Interest" designation when it issued Treas. Reg. § 1.6011-4(b)(6) on August 3, 2007. See 72 FR 43146-01, 2007 WL 2212181. That regulation, which was a product of notice-and-comment rulemaking, authorized the IRS to designate "Transactions of Interest" "by notice, regulation, or other form of published guidance." 26 C.F.R. § 1.6011-4(b)(6). In selecting this procedure, the IRS expressly declined to adopt the recommendation of some commenters that the IRS engage in notice-and-comment rulemaking prior to publishing guidance that identified Transactions of Interest. The IRS explained that

"providing a specific definition for the transactions of interest category in the regulations would unduly limit the IRS and Treasury Department's ability to identify transactions that have the potential for tax avoidance or evasion." 72 FR 43147. Notably, plaintiffs' motion for a preliminary injunction does not challenge the promulgation of the guiding Treasury regulation for lack of notice-and-comment rulemaking or on any other ground. At best, the plaintiffs' challenge to the regulation is that they would have issued a different regulation if they had been the Secretary.

In light of the foregoing legislative and regulatory history, plaintiffs cannot support their contention that the IRS was obligated to undergo additional notice-and-comment rulemaking prior to designating a new "Transaction of Interest." Because plaintiffs also do not support— much less allege—that the IRS released the challenged notices in a manner that did not conform to 26 C.F.R. § 1.6011-4, plaintiffs fail to state a claim for relief under the APA.

### C. Plaintiffs Have Failed To Demonstrate That Any of the Remaining Factors, Taken Individually or in Combination, Favor Issuing a Preliminary Injunction

The remaining factors, alone or on balance, similarly do not support plaintiffs' request for a preliminary injunction. Those factors require the Court to consider (1) whether plaintiffs would suffer irreparable injury if the injunction does not issue; (2) whether the injunction would cause substantial harm to others; and (3) whether the public interest is served if the Court grants the requested injunction. Liberty Coins, LLC, 748 F.3d at 689–90 (internal quotations omitted). We address each factor, in turn, below.

#### 1. Plaintiffs Have Not Substantiated Their Claims of Irreparable Harm

Plaintiffs fail to demonstrate how they would be irreparably harmed in the absence of a preliminary injunction. The Court must look to three factors when evaluating harm: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of

the proof provided.  <u>Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog</u>, 945 F.2d

150, 154 (6th Cir. 1991).  The Sixth Circuit has explained that the "key word in this

consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and

energy necessarily expended in the absence of a stay, are not enough."  <u>Id.</u> (quoting <u>Sampson v.

Murray</u>, 415 U.S. 61, 90, 94 (1974)).  Plaintiffs have not seriously attempted to address these

factors.

<div style="text-align:center">

**a)**     **Plaintiffs Will Not Suffer Irreparable Reputational Harm
Because of Notices 2016-16 and 2017-08**

</div>

Plaintiffs claim that they will suffer irreparable embarrassment and reputational harm

absent an injunction, but this misses the mark.  Pls.' Br. 14.  Indeed, plaintiffs never articulate

how (or to what extent) they will suffer any embarrassment from complying with the Notice,

particularly given that the IRS does not disclose their information to the public.  26 U.S.C.

§ 6103(a).  The return information protected by section 6103 extends to the names of those who

filed the returns required by the Notice.  26 U.S.C. §§ 6103(a) ("return information shall be

confidential"); 6103(b)(2)(A) (defining return information to include "a taxpayer's identity"); <u>see

also</u> <u>United States v. NorCal Tea Party Patriots</u>, 817 F.3d 953, 965 (6th Cir. 2016) (names on a

return are taxpayer information protected from disclosure by 26 U.S.C. § 6103(b)(2)(A)).

The cases cited by plaintiff regarding reputational harm are inapposite.[10]  Plaintiffs

primarily rely on <u>Patriot, Inc. v. U.S. Dept. of Housing and Urban Development</u>, 963 F. Supp. 1

(D.D.C. 1997), in which the district court noted the general rule is "economic loss does not, in

---

[10] The two other cases cited by plaintiffs are further afield than <u>Patriot, Inc.</u>  Both involve
litigation where employers attempted to enforce covenants not to compete against former
employees.  These facts are readily distinguishable from those in the case at bar.  <u>Basicomputer
Corp. v. Scott</u>, 973 F.2d 507, 512 (6th Cir. 1992); <u>Economou v. Physicians Weight Loss Centers
of America</u>, 756 F. Supp. 1024, 1039 (N.D. Ohio 1991).

and of itself, constitute irreparable harm." Id. at 5 (quoting Wisconsin Gas v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)).  There, the court found irreparable harm because a letter issued by the Department of Housing and Urban Development not only barred those plaintiffs from participating in the reverse mortgage market, but also included inflammatory language in describing plaintiffs and their conduct in that market. Id.  Here, the IRS made no such characterizations of plaintiffs in the Notice, and the IRS makes no attempt to bar plaintiffs from operating in this field.

Plaintiffs also cannot establish irreparable harm because the IRS listed "captive insurance" in its 2016 "Dirty Dozen" news release, Pls.' Br. 14.[11]  First, the relief sought by plaintiffs – enjoining the IRS from enforcing IRS Notice 2016-66 – would not require the IRS to rescind its annual "Dirty Dozen" list of tax scams.  Second, any alleged harm from the "Dirty Dozen" news release has already occurred, and past harm is legally insufficient to support an injunction.  Monsanto, 561 U.S. at 162-63; Howell v. District of Columbia, 522 F. Supp. 57, 64 (D.D.C. 2007) (party seeking injunction must show more than past harm); see also  Maffei v. U.S. Dept. of Veterans Affairs, 2016 WL 3913676, at *2 (N.D. Ohio July 20, 2016) ("To obtain an injunction, a plaintiff must be threatened with present or future harm; an injunction cannot be based solely on a past wrong").  Accordingly, plaintiffs' have failed to demonstrate how their purported "reputational harm" satisfies the three-part test for irreparable harm.  Michigan Coal., 945 F.2d at 154.

---

[11] The IRS releases a Dirty Dozen of tax scams annually.  See, e.g., IR-2017-37, 2017 WL 699143 (Feb. 17, 2017).  For the last three years, the IRS has included abusive transactions involving micro-captive insurers on that list. Id.; see also I.R.-2017-31, 2017 WL 699137 (Feb. 14, 2017).  Plaintiffs acknowledge that some captive insurance transactions are used for tax avoidance. Pls.' Br. 4 ("It would seem likely that some § 831(b) captives are used for abusive tax purposes").

**b)      Plaintiffs Will Not Suffer Irreparable Economic Harm Because of Notice 2016-66**

Plaintiffs claim that compliance with the challenged notices will cost in excess of $60,000 per year. Pls.' Br. 6, 15. This unsupported claim is also insufficient to establish irreparable harm. First, it is entirely speculative. Plaintiffs have failed to allege—much less provide supporting evidence—that that they (or the captives they advise) enter into the sorts of transactions that meet the criteria in the Notice. As previously discussed, *supra*, not all captive insurance transactions fall within the ambit of Notices 2016-66 and 2017-08. Absent a specific allegation that plaintiffs serve as material advisors to such transactions, plaintiffs cannot show that they will actually be required to incur compliance cost. See Barber v. Miller, 803 F.3d 840, 849 (6th Cir. 2015) (plaintiffs "must demonstrate separate standing to seek declaratory or injunctive relief focused on prospective harm") (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

Plaintiffs' claim of $60,000 in compliance costs suffers for a second reason: it is completely unsupported by any evidence. As an initial matter, plaintiffs provide zero evidence that they actually serve as material advisors to captive insurance transactions that meet the criteria of the challenged notices. Clearly, this is information in their possession and could have been submitted in a reasonably detailed declaration that sets forth the specific basis for this estimate. Instead, plaintiffs rest their case entirely on their "Verified Complaint." Having failed to even attempt substantiate their claims, plaintiffs cannot satisfy the third prong of the Sixth Circuit's "irreparable harm" analysis. Michigan Coal., 945 F.2d at 154. In light of the foregoing, the Court should hold that the second factor for granting a preliminary injunction, the existence of irreparable harm absent the injunction, favors the United States.

## 2. A Preliminary Injunction Would Significantly Harm the United States

As shown above, plaintiffs have not demonstrated that they will be irreparably harmed if this Court does not grant their request for a preliminary injunction.[12]  However, such an injunction *will* significantly harm the United States.  An injunction would interfere with the Internal Revenue Service's ability to collect tax penalties, administer and enforce domestic tax laws, and more easily identify and investigate potentially abusive transactions. See G.M. Leasing Corp. v. United States, 429 U.S. 338, 349 (1977) ("enforcement of the revenue laws . . . is an essential part of our self-assessment tax system and . . . enhances voluntary compliance in the collection of taxes.").

Because plaintiffs are not proceeding on behalf of members of an organization, it is of no moment that they allege (again without evidence) that the Notices have "the potential to demolish or void an uncountable number of business transactions."  Pls.' Br. 15.  In the Sixth Circuit, the Court should only consider what harm arises if the Court issues the injunction, not the harm that will allegedly occur if the Court does not act.  Liberty Coins, LLC, 748 F.3d at 690 (focusing on "whether the injunction would cause substantial harm to others") (quoting Bays v. City of Fairborn, 668 F.3d 814, 818-19 (6th Cir. 2012)); Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 550-51 (6th Cir. 2007) (analyzing "whether the *issuance* of the injunction would cause substantial harm to others") (quoting Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005)) (emphasis added). Furthermore, the record is

---

[12] The Sixth Circuit has focused on whether the issuance of the injunction will cause substantial harm to others in some instances, see, e.g., Liberty Coins, LLC, 748 F.3d at 689-90, and on a balancing of the equities in others. See, e.g., Collins Inkjet Corp. v. Eastman Kodak Co., 781 F.3d 264, 280 (6th Cir. 2015).  It appears under either framing the purpose of this prong is to counterbalance any harm to the movant against the harm an injunction would cause others, including the non-movant.

devoid of any evidence supporting plaintiffs' bald allegations.[13] Where "[t]here is no showing in the record how others would possibly be affected" by the injunction, such relief is inappropriate. Henley v. City of Johnson City, Tenn., 2012 WL 3027948, at *5 (E.D. Tenn. July 24, 2012).

### 3. An Injunction Would Not Serve the Public Interest

Notwithstanding plaintiffs' warning that "the separation of powers . . . are put at risk by Notice 2016-66," Pls.' Br. 16, the public interest is not served by issuing a preliminary injunction. First, Congress intentionally created a statutory scheme designed to enable the IRS to designate "Reportable Transactions" to address potential tax evasion. More broadly, Congress expressed its clear policy preference, through the AIA, of disfavoring injunctions that would restrain tax assessment and collection. 26 U.S.C. § 7421(a). Indeed, in cases considering injunctions involving the administration and enforcement of the Internal Revenue Code, courts consistently find that the public interest is served through the "fair administration of the tax laws." United States v. Wilson, 2009 WL 1465878, at *2 (E.D. Ky. Apr. 6, 2009) (injunction requiring defendants to file payroll tax returns); Gregory v. United States, 1996 WL 571762, at *5 (E.D. Mich. July 17, 1996) (declining to issue injunction against IRS because injunction "would prejudice [the United States] and undermine the public interest to the extent that it would hinder enforcement of the tax codes"); United States v. Benson, 561 F.3d 718, 727 (7th Cir. 2009) (enforcement of income tax laws serves public interest).

---

[13] Plaintiffs' complaint makes no mention of the impact of IRS Notice 2016-66 on business transactions by captive insurance companies or their parent corporations. Furthermore, the exhibits attached to the brief in support of their preliminary injunction also fail to mention such business transactions, mergers, or stock acquisitions.

# CONCLUSION

Plaintiffs have failed to carry their burden of establishing that any of the applicable factors weigh in favor of issuing an injunction or that on balance the factors weigh in favor of an injunction. Accordingly, the Court should deny plaintiffs' motion for a preliminary injunction.

DATE: April 13, 2017

<div style="margin-left: 40%;">

Respectfully submitted

NANCY S. HARR
Acting United States Attorney

DAVID A. HUBBERT
Acting Assistant Attorney General

/s/ Richard J. Hagerman
RICHARD J. HAGERMAN
NY Bar 5113303
KYLE L. BISHOP
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
202-616-9832 (v)
202-514-6866 (f)
Richard.J.Hagerman@usdoj.gov
Kyle.L.Bishop@usdoj.gov

</div>

CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record:

*/s Richard J. Hagerman*
RICHARD J. HAGERMAN
Trial Attorney
United States Department of Justice, Tax Division