IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| CIC SERVICES, LLC, | ) | Case No. 3:17-cv-00110-TRM-HBG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I.  Introduction ................................................................................................................ 1

II.  Background................................................................................................................ 2

  A.  Statutory and regulatory background........................................................................ 2

  B.  IRS Notices 2016-66 and 2017-08........................................................................... 3

  C.  Procedural history .................................................................................................... 4

III.  Plaintiff has not shown entitlement to a preliminary injunction......................... 6

  A.  Standard of review. ................................................................................................... 6

  B.  Plaintiff has not established a likelihood of success on the merits. ..................... 7

  C.  Plaintiff cannot show it will suffer irreparable harm in the absence of a preliminary injunction. ................................................................................................................ 12

    1.  Plaintiff's unreasonable delay in seeking this relief should foreclose the finding that CIC will suffer irreparable harm in the absence of an injunction......................... 13

    2.  Plaintiff has not substantiated its claims of irreparable harm. ...................... 14

      a.  CIC need not divert its resources to comply with the impact of Notice 2016-66 on itself...................................................................................................................... 15

      b.  CIC's allegations of financial losses are specious.................................... 16

      c.  Notice 2016-66 imposes no limitations on how CIC conducts its business.............. 17

      d.  The reputational harm CIC complains of is not due to the continued enforcement of Notice 2016-66...................................................................................................... 18

      e.  Threats of civil or criminal investigation by the IRS stems from conduct unrelated to CIC's compliance with Notice 2016-66. .......................................................... 19

  D.  The public interest does not favor issuing a preliminary injunction................................ 20

IV.  Any injunction should be limited to Plaintiff. ...................................................... 21

V.  Conclusion .............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. Imaging Servs., Inc. v. Eagle-Picher Indust., Inc.,
    963 F.2d 855 (6th Cir. 1992) ................................................7, 18

Assoc. of Am. Physicians & Surgeons v. FDA,
    No. 20-1784, 2020 WL 5745974 (6th Cir. Sept. 24, 2020) ................................17, 20

Avrahami v. Commissioner,
    149 T.C. 144 (Tax Ct. 2017) ................................................3, 8

Benisek v. Lamone,
    138 S.Ct. 1942 (2018) ................................................13

Brown v. District of Columbia,
    888 F. Supp. 2d 28 (D.D.C. 2012) ................................................12

Califano v. Yamasaki,
    442 U.S. 682 (1979) ................................................21

Card-Monroe Corp. v. Tuftco Corp.,
    270 F. Supp. 3d 967 (E.D. Tenn. 2017) ................................................7

Casa De Md. v. U.S. Dep't of Homeland Sec.,
    924 F.3d 684 (4th Cir. 2019) (concurring op.) ................................................21

Caylor Land & Dev. Inc. v. Commissioner,
    T.C. Memo. 2021-30, 2021 WL 915613 (Tax Ct. 2021) ................................................18

CIC Services, LLC v. IRS,
    3:16-cv-809 (E.D. Tenn.) ................................................ *passim*

CIC Svcs., LLC v. IRS,
    141 S.Ct. 1582 (2021) ................................................ *passim*

CIC Svcs., LLC v. IRS,
    No. 18-5019 (6th Cir.) ................................................5

City of Chicago v. Sessions,
    888 F.3d 272 (7th Cir. 2018) ................................................21

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013) ................................................15, 17

Cross v. Sbarro Am., Inc.,
2011 WL 572415 (E.D. Tenn. Feb. 15, 2011) ...............................................7

Daunt v. Benson,
956 F.3d 396 (6th Cir. 2020) ..........................................................................6

Dismas Charities, Inc. v. U.S. Dep't of Justice,
401 F.3d 666 (6th Cir. 2005) ..........................................................................9

E. Bay Sanctuary Covenant v. Barr,
934 F.3d 1026 (9th Cir. 2019) .......................................................................21

Expedia, Inc. v. United Airlines, Inc.,
2019 WL 1499269 (S.D.N.Y. Apr. 5, 2019).................................................15

Fed. Ins. Co. v. Metro. Transp. Auth.,
2017 WL 2929471 (S.D.N.Y. July 10, 2017) ...............................................15

Free Speech Coal., Inc. v. Att'y Gen. United States,
974 F.3d 408 (3d Cir. 2020)...........................................................................22

Gallant v. Ahmed,
No. 1:14-cv-199, 2015 WL 136168 (S.D. Ohio Jan. 9, 2015).................16, 18

Hunter v. Hamilton Cnty. Bd. of Elections,
635 F.3d 219 (6th Cir. 2011) .........................................................................14

Island Creek Coal Co. v. Wilkerson,
910 F.3d 254 (6th Cir. 2018) .........................................................................12

Liberty Coins, LLC v. Goodman,
748 F.3d 682 (6th Cir. 2014) .......................................................................1, 6

Livonia Prop. Holdings v. 12840-12976 Farmington Road Holdings, LLC,
717 F. Supp. 2d 724 (E.D. Mich. 2010)........................................................15

Loan Payment Admin. LLC v. Hubanks,
2015 WL 1245895 (N.D. Cal. Mar. 17, 2015)..........................................14, 17

Local Spot, Inc. v. Cooper,
2020 WL 7554247 (M.D. Tenn. Dec. 21, 2020)............................................17

Manlove v. Volkswagen Aktiengesellschaft,
2019 WL 2291894 (E.D. Tenn. May 17, 2019)..........................................13, 19

Mann Construction, Inc. v. United States,
--- F. Supp. 3d ---, 2021 WL 1923412 (E.D. Mich., May 13, 2021) ................10, 11

Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog,
    945 F.2d 150 (6th Cir. 1991) ................................................................13

Monsanto Co. v. Geertson Seed Farms,
    561 U.S. 139 (2010).................................................................................6

New York v. U.S. Dep't of Homeland Sec.,
    969 F.3d 42 (2d Cir. 2020).....................................................................22

Nken v. Holder, 556 U.S. 418 (2009) .........................................................6

Raceday Ctr., LLC v. RL BB Fin., LLC,
    2014 WL 11511063 (E.D. Tenn. Apr. 30, 2014).....................................7

Reserve Mech. Corp. v. Commissioner,
    T.C. Memo. 2018-86, 2018 WL 3046596 (Tax Ct. 2018), appeal docketed at
    No. 18-9011 (10th Cir.) .......................................................................18

Sampson v. Murray, 415 U.S. 61 (1974) ..................................................14

Select Specialty Hosp.-Memphis, Inc. v. Tr. of Langston Co., Inc.,
    2020 WL 4275264 (W.D. Tenn. July 24, 2020) ....................................12

Sharpe v. Cureton,
    319 F.3d 259 (6th Cir. 2003) ................................................................21

Skyworks, Ltd. v. Centers for Disease Control and Prevention,
    2021 WL 2228676 (N.D. Ohio, June 3, 2021).......................................22

Sony/ATV Publishing, LLC v. Marcos,
    651 F. App'x 482 (6th Cir. 2016) .........................................................21

Sunbelt Rentals, Inc. v. Spring,
    No. 3:18-cv-334, 2018 WL 11241773 (E.D. Tenn. Nov. 19, 2018)........13

Syzygy Ins. Co. v. Commissioner,
    T.C. Memo. 2019-34, 2019 WL 1559540 (Tax Ct. 2019).......................18

Titaness Light Shop, LLC v. Sunlight Supply, Inc.,
    585 Fed. Appx. 390 (9th Cir. 2014).......................................................16

United States v. Cinemark USA, Inc.,
    348 F.3d 569 (6th Cir. 2003) ..................................................................8

United States v. Hughley,
    No. 1:04-cr-14-002, 2007 WL 9706622 (E.D. Tenn. Oct. 1, 2007) ........16

V Real Est. Grp. Inc. v. U.S. Citizenship & Immigr. Servs.,
    2014 WL 5243369 (D. Nev. Oct. 15, 2014) .....................................15, 17

Vitolo v. Guzman,
    999 F.3d 353 (6th Cir. 2021) ................................................................5

**Statutes**

5 U.S.C. § 553(b) ............................................................................................7

26 U.S.C. § 162(a) ..........................................................................................3

26 U.S.C. § 831(b) ..........................................................................................3

26 U.S.C. § 6111 ......................................................................2, 8, 9, 15, 16

26 U.S.C. § 6112 .............................................................................................2

26 U.S.C. § 6694 ...........................................................................................19

26 U.S.C. § 6695 ...........................................................................................19

26 U.S.C. § 6700 ...........................................................................................19

26 U.S.C. § 6701 ...........................................................................................19

26 U.S.C. § 6707 ..................................................................................2, 8, 10

26 U.S.C. § 6707A ................................................................................2, 3, 10

26 U.S.C. §6708 ..............................................................................................2

Administrative Procedure Act, 5 U.S.C. § 551 et seq............................ *passim*

Anti-Injunction Act, 26 U.S.C. § 7421 ....................................................5, 10

**Other Authorities**

26 C.F.R. § 1.6011-4.....................................................................................2, 9

26 C.F.R. § 1.1162-1........................................................................................3

26 C.F.R. § 301.6111............................................................................2, 3, 10

26 C.F.R. § 301.6112........................................................................................2

72 Fed. Reg. 43146-01 (Aug. 3, 2007) ...........................................................2

Federal Rule of Appellate Procedure Rule 8 .................................................................4

IRS Notice 2016-66, 2016-47 I.R.B. 745 ................................................... *passim*

IRS Notice 2017-08, 2017-3 I.R.B. 423 .................................................................4

Wright & Miller, Federal Practice & Procedure ...................................................13, 15

# I.    Introduction

CIC Services advises taxpayers in setting up micro-captive insurance entities, which it admits taxpayers may use for tax avoidance or evasion purposes.  In this case, CIC challenges the IRS's designation of certain micro-captive insurance transactions as a type of "reportable transaction," a designation that helps the IRS gather information about transactions ripe for tax abuse.  Now, for a second time, CIC seeks a preliminary injunction with respect to Notices 2016-66 and 2017-08.  Because CIC fails to show that it merits this extraordinary relief, the Court should deny it once more.

When deciding if a preliminary injunction is warranted, a court examines four factors: (1) whether the plaintiff has established a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served if the court were to grant the requested injunction.  Liberty Coins, LLC v. Goodman, 748 F.3d 682, 689–90 (6th Cir. 2014).  In seeking an injunction, CIC fails to meet its burden at every step of the analysis.

First, CIC neglects to explain why it is likely to prevail on the merits of its claim under the Administrative Procedure Act, and leans instead on a misapprehension of the Supreme Court's recent decision in CIC Svcs., LLC v. IRS, 141 S.Ct. 1582 (2021).  Second, CIC's claims of irreparable harm between now and the Court's merits decision ring hollow in view of CIC's steady failure to seek expedited review over the last four years.  On top of that, the harms that CIC claims to face are either unsupported by evidence and implausible, or else unmoored from the Notice that it challenges.  Third, the Court already ruled four years ago that the public interest weighed against a preliminary injunction, and CIC offers nothing to change that conclusion.  And last, where CIC fails to demonstrate that it should get injunctive relief from the

Notice it challenges, it doubly fails to show why the Court should take the additional and drastic

step of issuing a nationwide injunction as to the Notice when a narrower injunction would

address CIC's purported harm.

## II.    Background

### A.    Statutory and regulatory background

Congress granted the IRS broad authority to establish procedures for designating certain

transactions as reportable transactions because such transactions can be used for tax avoidance or

evasion.  26 U.S.C. § 6707A(C)(1); see also, 26 U.S.C. §§ 6707, 6708, 6111 and 6112.  These

statutes allow the IRS to "prescribe regulations which provide . . . such rules as may be necessary

or appropriate to carry out the purposes of this section."  26 U.S.C. § 6111(c)(3).  Regulations,

which CIC *has not challenged*, in turn provide that material advisors (such as CIC) must provide

specified information about six types of "reportable transactions," one of which is a transaction

of interest.  26 C.F.R §§ 1.6011-4(b)(6), 301.6111-3, 301.6112-1.  Transactions of interest are

those that have "the potential for tax avoidance or evasion," but for which the IRS lacks

sufficient information "to determine whether the transaction should be identified specifically as a

tax avoidance transaction."  AJCA Modifications to the Section 6011 Regulations, 72 Fed. Reg.

43146-01 (Aug. 3, 2007).  Congress authorized the IRS to assess penalties against taxpayer

participants (and their material advisors) for failing to file the required disclosures.  26 U.S.C.

§§ 6707(a) and 6708(a) (for material advisors); 26 U.S.C. § 6707A (for taxpayers).

A material advisor — such as CIC — typically makes one disclosure in response to

Notice 2016-66.[1]  Material advisors must file Form 8918, Material Advisor Disclosure

---

[1]    This return includes information describing the reportable transaction, any potential tax
benefits expected to result from the transaction, and any other information the Secretary requires.
See generally 26 U.S.C. § 6111.

Statement, one time (generally by the last day of the month that follows the end of the calendar quarter in which the advisor became a material advisor with respect to the reportable transaction).  26 C.F.R. § 301.6111-3(d)(1) and (e).  The regulations are clear that "a material advisor may file a single form for substantially similar transactions" and that they "are not required to file an additional form for each additional taxpayer that enters into the same or substantially similar transaction."  26 C.F.R. § 301.6111-3(d)(1).  A material advisor would have to file an amended form only if information previously provided is no longer accurate; additional information that was not disclosed becomes available; or there were material changes to the transaction.  Id.  There is no annual disclosure requirement for material advisors.

**B.     IRS Notices 2016-66 and 2017-08**

On November 1, 2016, the IRS released Notice 2016-66, which designated a subset of so-called captive insurance transactions as transactions of interest.  IRS Notice 2016-66, 2016-47 I.R.B. 745, at 1-2.  Captive insurers are companies whose sole purpose is to issue insurance to brother and sister companies with which the insurer shares a common parent.  The Internal Revenue Code permits entities insured by captive insurers to deduct from their income the premium payments made to the captive insurer, thus lowering their taxable income.  26 U.S.C. § 162(a); 26 C.F.R. § 1.1162-1(a).  If the captive that receives those payments elects to be taxed under 26 U.S.C. § 831(b), it can exclude those premiums from income, which reduces the captive's taxable income.  This departs from the typical rule that a payment deductible by one party is includible in income by the recipient, and thus allows taxpayers looking to shelter income (if they go undetected) to derive an improper tax benefit if "the [insurance] contracts are interpreted, administered, and applied" in a manner inconsistent with the arm's-length standard

and sound business practices.[2]  IRS Notice 2016-66 at 1.  In other words, if the captive company

is not actually providing insurance despite purporting to do so, then the tax benefit is actually tax

avoidance.  Avrahami v. Commissioner, 149 T.C. 144, 197 (Tax Ct. 2017).

Via Notice 2016-66, the IRS identified a subset of captive insurance transactions as

transactions of interest in order to "define the characteristics that distinguish the tax avoidance

transactions from other § 831(b) related-party transactions."  Id.  This Notice directs captives and

their material advisors to disclose information if the captive insurance arrangement meets

specified criteria.  IRS Notice 2016-66 at 9.

Notice 2016-66 required captives and their material advisors to begin reporting on

January 30, 2017.  IRS Notice 2016-66, § 3.03.  However, in late 2016 the IRS extended that

deadline by 90 days to May 1, 2017.  See IRS Notice 2017-08, 2017-3 I.R.B. 423 § 3.03.  Notice

2016-66 also requested comments "on how the transaction might be addressed in published

guidance."  Notice 2016-66, § 4.

C.      **Procedural history**

On December 28, 2016, CIC filed its first complaint challenging Notice 2016-66.  CIC

Services, LLC v. IRS, 3:16-cv-809 (E.D. Tenn.).  It voluntarily dismissed that action on

December 30, 2016.  See id., Doc. 7.  CIC then filed the instant complaint on March 27, 2017.[3]

(Doc. 1).  As in the initial complaint, CIC seeks an injunction setting aside Notices 2016-66 and

2017-08.

---

[2]      For instance, a captive insurer engaged in such a scheme might sell insurance to a
company in eastern Tennessee that insured its offices in Johnson City against volcano damage.

[3]      After the plaintiffs filed the appeal, the other plaintiff – Ryan LLC – asked the Court of
Appeals to dismiss it from this litigation.  The Court of Appeals granted that request.  Thus, this
brief refers at all times to the sole remaining plaintiff, CIC.

CIC moved for a preliminary injunction on March 30, 2017. (Doc. 8). After additional briefing from both sides, (Doc. 17, 21), the Court conducted a hearing on April 19, 2017. (Doc. 41 (transcript)). At that hearing, Sean King, principal and founder of CIC, testified that captive insurance arrangements can "most definitely" be used for tax avoidance or evasion purposes. (Id. at 39:22-24).

Two days later the Court denied CIC's motion. (Doc. 24). The company did not move for a stay under Rule 8 of the Federal Rule of Appellate Procedure; indeed, it declined to pursue an interlocutory appeal of the order. See, e.g., Vitolo v. Guzman, 999 F.3d 353 (6th Cir. 2021).

Rather, the case remained with the district court. The United States moved to dismiss on the ground that the suit was barred by the Anti-Injunction Act, (Doc. 25), which this Court ultimately granted in November 2017. (Doc. 35). Plaintiff waited eight weeks to appeal that order, and once again did not appeal the denial of the preliminary injunction. (Doc. 37). At the Court of Appeals, Plaintiff did not seek expedited relief. See CIC Svcs., LLC v. IRS, No. 18-5019 (6th Cir.). After a panel ruled against it, CIC waited 47 days — the maximum allowed — to petition for en banc rehearing. Id. at Doc. 48. The Court of Appeals denied that petition. Id. at Doc. 65-1.

After seeking and receiving a 30-day extension of the deadline to petition for certiorari, see CIC Svcs., LLC v. IRS, No. 18-5019 at Doc. 67 (6th Cir. 2019), CIC filed that petition in January 2020. Once again, CIC did not try to expedite the appellate process. Having abandoned the motion for a preliminary injunction years earlier, CIC focused in its petition on arguing that it could bring its suit, notwithstanding the language of the Anti-Injunction Act. 26 U.S.C. § 7421. The Supreme Court ruled in CIC's favor, holding that the Anti-Injunction Act did not bar this

suit challenging Notices 2016-66 and 2017-18. <u>CIC Svcs., LLC v. IRS</u>, 141 S.Ct. at 1594

(holding only that this suit "does not trigger the Anti-Injunction Act").

On remand, this Court reopened the case at the end of June. After a status conference,

the Court announced a briefing schedule for the parties that would conclude in December. (Doc.

57). While CIC asked the Court during the status conference to immediately grant a preliminary

injunction or allow it to move for one, the Court's scheduling order included no reference to, or

briefing schedule for, a renewed motion for a preliminary injunction. (<u>Id.</u>). Soon after, the

United States moved to extend one of the briefing deadlines in the Court's schedule by five

weeks because of scheduling conflicts.[4] (Doc. 58). CIC did not consent to that request. (<u>Id.</u>).

Instead, CIC filed a second motion for a preliminary injunction. (Doc. 59).

## III.    Plaintiff has not shown entitlement to a preliminary injunction

### A.    Standard of review

A preliminary injunction constitutes a "drastic and extraordinary remedy." <u>Monsanto Co.</u>

<u>v. Geertson Seed Farms</u>, 561 U.S. 139, 165 (2010). When deciding whether a preliminary

injunction is warranted, a court examines four factors: (1) whether the plaintiff has established a

substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable

injury if a preliminary injunction did not issue; (3) whether the injunction would cause

substantial harm to others; and (4) whether the public interest would be served if the court were

to grant the requested injunction. <u>Liberty Coins</u>, 748 F.3d at 689-90 (6th Cir. 2014). When the

government is the defendant, as here, the last two factors merge. <u>Daunt v. Benson</u>, 956 F.3d 396,

422 (6th Cir. 2020) (citing <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009)). Crucially, the burden lies

---

[4]    The United States delayed filing this motion by about a week while it waited to hear
whether CIC would consent to the extension.

with the movant to justify the Court granting a preliminary injunction.  (Doc. 24 (citing <u>Am. Imaging Servs., Inc. v. Eagle-Picher Indust., Inc.</u>, 963 F.2d 855, 858 (6th Cir. 1992)).

CIC has not carried that burden.[5]  It hardly tries, as it contends the Supreme Court has all but directed a ruling in its favor on the merits of its claim.  But the Supreme Court's opinion in <u>CIC Services, LLC v. IRS</u> contains not a whisper about the merits of CIC's claim that Notice 2016-66 is invalid.  And nothing else has swung in CIC's favor so far as to call into question this Court's ruling denying CIC's first motion for preliminary injunction.  If anything, the years gone by without an injunction betray CIC's claim that an injunction is now urgently needed to "preserve the status quo," <u>see</u> doc. 59 at 3, pending the full merits briefing in this case.  Thus, even if the Court were to look past CIC's failure to meet the movant's burden, and dig more deeply into the analysis itself, it would find that the factors for injunctive relief still weigh solidly against granting CIC's motion.  And even if they did not, CIC has not demonstrated why a nationwide injunction is needed to grant it the interim relief it seeks.

### B.     Plaintiff has not established a likelihood of success on the merits.

Plaintiff fails to show a likelihood of success on the merits of its Administrative Procedure Act ("APA") claim that Notice 2016-66 is invalid because the IRS failed to comply with notice-and-comment rulemaking procedures.  (<u>See</u> Doc. 1 (Complaint) ¶¶ 27-38.)  In the

---

[5]     The United States limits its response to the arguments in Doc. 59, along with relevant attachments.  To the extent CIC tried to "incorporate by reference" five previously filed documents (along with the arguments contained therein), such incorporation is improper.  <u>Cf.</u>, <u>e.g.</u>, <u>Card-Monroe Corp. v. Tuftco Corp.</u>, 270 F. Supp. 3d 967, 985 (E.D. Tenn. 2017) (contrasting inappropriateness of incorporation of briefing with incorporation of expert report, which is not legal argument) (citing <u>Cross v. Sbarro Am., Inc.</u>, No. 1:09-cv-275, 2011 WL 572415, at *4 (E.D. Tenn. Feb. 15, 2011) (sustaining objection to incorporation of separate statement of facts into summary judgment motion)); <u>Raceday Ctr., LLC v. RL BB Fin., LLC</u>, No. 2:11-cv-17, 2014 WL 11511063 (E.D. Tenn. Apr. 30, 2014) (striking filing that sought to incorporate other briefs because such incorporation led to party exceeding page limits).

latest filing, see Doc. 59, Plaintiff does not cite *a single case or other binding authority* to support this claim. Its moving papers instead just cite the Complaint and non-binding Treasury Guidance. (See Doc. 59 at 9-10).[6] The Complaint merely proffers CIC's legal conclusion that the Notice is a "substantive rule" (also called a "legislative rule") for which a notice-and-comment process was required. (Doc. 1 ¶¶ 31, 33.). Instead of binding authority, CIC points the Court to non-binding Treasury guidance issued years after the challenged Notice that encourages a notice-and-comment process for all rulemaking (see doc. 59 at 5-6, Ex. 2.). But CIC cites nothing beyond its Complaint to establish that the Notice is a rule in the first place. And even if one skips past that omission, Plaintiff then cites nothing to explain why the Notice — if it is a rule at all — is a "legislative rule," rather than an "interpretative rule" that is categorically exempt from notice-and-comment rulemaking. 5 U.S.C. § 553(b).

Legislative rules "grant rights, impose obligations, or produce other significant effects on private interests." United States v. Cinemark USA, Inc., 348 F.3d 569, 580 (6th Cir. 2003). But the Notice is not the source of the legal consequences or "significant effects" to which CIC objects. Instead, those consequences flow from a framework that pre-exists and underpins the Notice.

Section 6707A penalizes taxpayers who do not properly report participation in a reportable transaction, that is, a transaction "as determined under regulations prescribed under section 6011 . . . of a type which the Secretary determines as having a potential for tax avoidance or evasion." 26 U.S.C. § 6707A. Agency regulations, not challenged by CIC and promulgated following notice and comment, set forth categories of reportable transactions, identify who must

_____

[6]    Because CIC filed both its motion and brief in support in the same docket entry, but did not number the pages continuously, the United States refers to that document using the page numbers produced by the Court's electronic filing system.

8

report, and set the timing and content of the reporting requirements.  See 26 C.F.R. §§ 1.6011-4(b)(6), 301.6111-3, 301.6112-1.

Among the types of reportable transactions, the regulation includes transactions of interest, defined as "a transaction that is the same as or substantially similar to one of the types of transactions that the IRS has identified by notice, regulation, or other form of published guidance as a transaction of interest."  26 C.F.R. § 1.6011-4(b)(6).  CIC's obligations as a material advisor to report transactions of interest are set by statute and the regulations promulgated under the statutes.  26 U.S.C. §§ 6111, 6112.  Failure-to-report-penalties against material advisors are found at 26 U.S.C. § 6707.  CIC did not challenge these reporting requirements or the promulgation of the regulations.

Instead, CIC challenges Notice 2016-66, which identifies certain captive insurance transactions as reportable.  But the challenged Notice is neither the source of the obligation to provide information on a reportable transaction nor the source of the penalty for violating that obligation.  Cf. Cinemark USA, Inc., 348 F.3d at 580 (legislative rules create rights, obligations and other significant effects on private interests).  Nor does the Notice designate CIC as a material advisor.  CIC's obligations to report flow from the statutes and regulations.  Id.

Rather, the Notice establishes that micro-captive transactions, like those for which CIC is a material advisor, count as a transaction of interest, and are therefore, under 26 C.F.R. § 1.6011-4(B)(6), within the larger body of reportable transactions for which the law has already fixed obligations and consequences.

Even if the challenged Notices are a rule, they are an interpretative rule.  Cf.  Dismas Charities, Inc. v. U.S. Dep't of Justice, 401 F.3d 666, 680 (6th Cir. 2005) (an "interpretative rule" is "issued by an agency to advise the public of the agency's construction of the statutes and

rules which it administers").  A legislative rule imposes new obligations and legal consequences.

An interpretative rule clarifies one set of circumstances in which more general, pre-existing

obligations and consequences (related to reportable transactions) will come to bear.  In moving

for an injunction, CIC asserts without any support outside of its Complaint that the Notice is a

legislative rule and thus misses its chance to demonstrate the merits of its claim.

Nor does Plaintiff address the separate possibility that, even if the Notice were a

legislative rule, Congress could have excused the IRS from the typical notice-and-comment

rulemaking procedure.  CIC essentially ignores that another court in this circuit recently held that

Congress authorized the IRS to proceed without notice-and-comment when designating certain

transactions to be another form of reportable transaction called a "listed transaction."  Mann

Construction, Inc. v. United States, — F. Supp. 3d —, 2021 WL 1923412 at *12-14 (E.D. Mich.,

May 13, 2021).  As here, Mann Construction involved the designation of transactions using an

IRS notice.  See id. at *1.  Plus, the case involved 26 U.S.C.§ 6707A, see id. at *2, which is an

analogue penalty to the 26 U.S.C. § 6707 penalty provision that applies to CIC and gives teeth to

the disclosure requirement that CIC challenges.[7]  Mann Construction refutes CIC's assertion that

it is likely to prevail on the merits.

Rather than address the above analysis of the statutes and regulations imposing the

reporting obligations, or the Mann Construction decision, CIC argues (incorrectly) that the

Supreme Court has already ruled on the issue.  Of the six paragraphs in its brief discussing the

merits of its case, four are devoted to the Supreme Court's recent ruling.  (See Doc. 59 at 14-15.)

Plus, CIC proposes the court enter a "finding of fact" that "On May 17, 2021, the Supreme Court

---

[7]      Section 6707A penalizes transaction participants that violate the disclosure requirements
of 26 C.F.R. § 1.6011-4, while section 6707 penalizes material advisors that fail to meet their
own reporting requirements, found at 26 C.F.R. § 301.6111.

of the United States unanimously held that it was unlawful to issue Notice 2016-66 without complying with the public notice-and-comments provision of the APA."  (Doc. 63 ¶ 3.)

This conclusion that the Notices are unlawful is without support.  The Supreme Court never suggested that the IRS violated the APA (tellingly, CIC omits any page cites in its reference to the Supreme Court opinion).  The Court only addressed "whether the Anti-Injunction Act bars CIC's suit complaining that Notice 2016-66's reporting requirements violate the APA" and concluded that it did not.  CIC Services, LLC, 141 S.Ct. at 1594.  It did not comment, one way or another, on the merits of Plaintiff's APA claim.  All the Supreme Court did was lift the Anti-Injunction Act's procedural bar and direct this Court to consider the merits of CIC's claim.

Far from establishing the likelihood of success on the merits of its claim, Plaintiff chooses to rest on rhetoric like "the ultimate merits of this case have never really been in doubt" and erroneous statements about the Supreme Court decision in CIC Services, LLC.  Plaintiff does not offer relevant case law to support its core legal assertions that the Notice is a substantive rule, or that the notice-and-comment was required here.  Neither assertion is nearly so undisputable as CIC assumes.  And CIC fails to address the closest precedent — Mann Construction — despite referencing the case in its brief.[8]

_____

[8]      While CIC offers no case authority supporting its own position, it preemptively denigrates the opinion in Mann Construction as a "non-binding opinion of a trial-level court in Michigan which opinion [sic] pre-dated the Supreme Court's opinion of May 17, 2021" and notes it "look[s] forward to reviewing the government's presentation."  (Doc. 59 at 15.)

It is irrelevant that the Mann Construction opinion pre-dates the Supreme Court's decision in CIC Services, LLC, because each opinions addresses a different question:  the analysis in Mann Construction speaks to the merits of CIC's claim, while the Supreme Court's decision in CIC Services, LLC just allows this case to proceed.  Unlike this case, Mann Construction involves a suit where the plaintiff paid the amount in dispute and then sought a refund.  Consequently, the Anti-Injunction Act was never in issue.

If Plaintiff planned to save all the case law support for its APA claim until "reviewing the government's presentation," then it has held its cards too close. As the movant, CIC bears the burden in its initial briefing to show that it is likely to succeed on the merits. It cannot just state a conclusion about the ultimate legal issue (whether the IRS violated the APA) bereft of support. The opportunity has now passed, and the Court should not reward CIC's gamesmanship by considering legal argument that CIC should have presented before its reply brief. See Island Creek Coal Co. v. Wilkerson, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an 'argument' as 'forfeited when it was not raised in the opening brief.' "); Select Specialty Hosp.-Memphis, Inc. v. Tr. of Langston Co., Inc., 2020 WL 4275264, at *9 (W.D. Tenn. July 24, 2020) ("An argument raised for the first time in a reply brief is considered waived."). Thus, Plaintiff fails to carry its burden as to the first factor warranting a preliminary injunction.[9]

### C. Plaintiff cannot show it will suffer irreparable harm in the absence of a preliminary injunction.

The Court should also find that CIC has not demonstrated there is irreparable harm to support issuing a preliminary injunction. First, CIC's argument is undercut by its own inaction over the four years since this Court initially denied its motion for a preliminary injunction. Even if CIC had moved more quickly, the Court should still find this factor favors the United States because CIC has failed to provide evidence sufficient to show that keeping Notice 2016-66 in place will cause it any harm, let alone irreparable harm.

---

[9]    Because CIC failed to raise the other challenges to the Notices contained in its Complaint in its motion for a preliminary injunction, the Court should conclude that CIC failed to demonstrate it is likely to succeed on the merits of any of those claims.

**1. Plaintiff's delay in seeking this relief should foreclose the finding that CIC will suffer irreparable harm in the absence of an injunction.**

"The single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision can be rendered." Sunbelt Rentals, Inc. v. Spring, No. 3:18-cv-334, 2018 WL 11241773, at *7 (E.D. Tenn. Nov. 19, 2018) (quoting Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.)). Thus, where irreparable harm is not present, injunctive relief is unwarranted. See id.

As an initial matter, the allegations of irreparable harm must be viewed against the backdrop of the timeline in this action. The party that seeks a preliminary injunction "must generally show reasonable diligence" in pursuing that relief. Benisek v. Lamone, 138 S.Ct. 1942, 1944 (2018). As shown above, CIC took no steps to preserve the status quo once this Court ruled against its original preliminary injunction motion in April 2017. CIC failed at every turn to avail itself of any procedural opportunities to avoid the harms it alleges Notice 2016-66 has inflicted upon it. This alone dooms CIC's claim of irreparable harm.

This Court recently ruled that a plaintiff that waited seventeen months to seek injunctive relief after the complained of events thereby "undercut[]" any argument that he might suffer irreparable harm absent immediate action by the Court. Manlove v. Volkswagen Aktiengesellschaft, No. 1:18-cv-145, 2019 WL 2291894, at *15 (E.D. Tenn. May 17, 2019). This Court also ruled in its earlier order denying CIC's motion for a preliminary injunction that CIC's decision to wait three months before filing this suit "somewhat undercut" its arguments about irreparable harm. (Doc. 24 at 7 n. 6).

Here, CIC delayed seeking further review of the denial of its initial motion for a preliminary injunction. As discussed above, it took no action to appeal this Court's earlier denial

13

of a preliminary injunction, and made no effort to expedite the appellate process. This Court should find that its delay defeats its request for relief, because such a delay undercuts any arguments CIC makes about the need for expediency.

### 2. Plaintiff has not substantiated its claims of irreparable harm.

The Court should look to three factors when evaluating whether CIC demonstrated irreparable harm in its motion: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir. 1991).

The Sixth Circuit has explained that the "key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." Id. (quoting Sampson v. Murray, 415 U.S. 61, 90, 94 (1974)). Importantly for purposes of this motion, the focus of the inquiry is on whether *the movant* will suffer irreparable harm without an injunction. (Doc. 24 at 3-4 (internal citations omitted)).

Furthermore, the focus is no longer on harms previously suffered, but the harms that will be suffered due to the delay that would result from waiting until the Court rules in this case, *i.e.*, after briefing concludes this winter.[10] CIC acknowledges as much and limits its discussion to harms it alleges it "will continue to experience without the benefit of a preliminary injunction." (Doc. 59 at 15).

---

[10] Because a hearing aims to protect the nonmovant, the Court may rule for the Government on this motion without requiring it to attend a hearing and defend against a motion for a preliminary injunction for the second time in this litigation. See generally Hunter v. Hamilton Cnty. Bd. of Elections, 635 F.3d 219, 246 (6th Cir. 2011) (discussing that requiring a hearing serves to protect nonmovant).

### a. CIC need not divert its resources to comply with the impact of Notice 2016-66 on itself.

CIC first argues that it must reallocate employee resources to assist with "the annual filing" required by Notice 2016-66. But as the declaration of Sean King concedes, this annual filing requirement is not imposed on CIC itself, but "on clients of CIC, the insureds of those clients, and sometimes even the owners of the insureds . . . ." (Doc. 59-3 ¶ 3). Because these harms do not fall on CIC itself, they cannot support a finding that CIC will suffer irreparable harm in the absence of an injunction. Expedia, Inc. v. United Airlines, Inc., No. 19-cv-1066, 2019 WL 1499269, at *6 (S.D.N.Y. Apr. 5, 2019) (citing Fed. Ins. Co. v. Metro. Transp. Auth., No. 17-cv-3425, 2017 WL 2929471, at *2-3 (S.D.N.Y. July 10, 2017)).

To the extent CIC alleges that its customers may take actions that impose more costs on CIC than it would otherwise bear, the fact those harms depend "on the actions of third parties . . . lessens the credibility of the claim." Loan Payment Admin. LLC v. Hubanks, No. 14-cv-4420, 2015 WL 1245895, at *15 (N.D. Cal. Mar. 17, 2015) (citing V Real Est. Grp., Inc. v. U.S. Citizenship & Immigr. Servs., No. 2:14-cv-01096, 2014 WL 5243369, at *3 (D. Nev. Oct. 15, 2014)); see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 (2013) (reiterating the Court's "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"). If CIC is accepting its' customers' obligations as its own, such harms cannot create irreparable harm. Livonia Prop. Holdings v. 12840-12976 Farmington Road Holdings, LLC, 717 F. Supp. 2d 724, 740 (E.D. Mich. 2010) ("self-inflicted harm is not the type that injunctions were meant to prevent") (citing Wright & Miller, § 2948.1 (2d ed.)), aff'd at 399 Fed. Appx. 97, 104 (6th Cir. 2010).

As for CIC's own reporting obligations, there is no reason to believe it is accruing any costs as this suit proceeds. As contemplated by the regulations, CIC has filed just one form in

response to Notice 2016-66. (See Ex. 1). That five-page form contains information that provides transparency into whether and how material advisors might use captive insurance transactions for tax avoidance or evasion purposes but does not appear to excessively burden CIC. And again, CIC has not made *any* additional filings with the IRS since it filed Form 8918 in May 2017. Simply stated, the harms alleged by CIC in its brief cannot be traced to the minimal filing requirements that section 6111 and the regulations promulgated thereunder continue to impose on CIC since the issuance of Notice 2016-66.

### b.  CIC's allegations of financial losses are specious.

CIC next alleges it has suffered almost $400,000 in losses because of compliance with Notice 2016-66 and speculates it will continue to suffer an additional $100,000 in annual losses going forward. As an initial matter, CIC cannot reconcile these allegations with the evidence above that it has filed just one disclosure (totaling five pages) to the IRS in response to Notice 2016-66, and "conclusory or speculative allegations are not enough" to establish irreparable harm at this stage. Titaness Light Shop, LLC v. Sunlight Supply, Inc., 585 Fed. Appx. 390, 391 (9th Cir. 2014); see Gallant v. Ahmed, No. 1:14-cv-199, 2015 WL 136168 (S.D. Ohio Jan. 9, 2015) (adopting report and recommendation denying preliminary injunction where plaintiff failed "to support his conclusory allegations of irreparable harm with factual evidence").

Plaintiff's unsupported allegation that the IRS opened an audit against CIC for improper purposes is similarly unproven. Courts presume that government officials act in good faith. United States v. Hughley, No. 1:04-cr-14-002, 2007 WL 9706622, at *4 (E.D. Tenn. Oct. 1, 2007) ("Public officials and agencies are presumed to act in good faith and in accord with applicable law and regulations. When an official act is shown on its face to have been regularly taken, it is presumed to be regular and valid in all respects."). To overcome the presumption, Plaintiff must offer "clear and convincing evidence." Local Spot, Inc. v. Cooper, No. 3:20-cv-

00421, 2020 WL 7554247, at *2 (M.D. Tenn. Dec. 21, 2020). CIC fails at this. All it offers is a conclusory allegation by its owner that the IRS acted improperly when it opened an audit of CIC to investigate transactions that CIC admits can be used for tax avoidance or evasion. And because the Court cannot redress the alleged "audit related" harms by issuing a preliminary injunction, they are otherwise irrelevant. See Assoc. of Am. Physicians & Surgeons v. FDA, No. 20-1784, 2020 WL 5745974, at *3 (6th Cir. Sept. 24, 2020).

**c.      Notice 2016-66 imposes no limitations on how CIC conducts its business.**

Plaintiff makes three allegations to support its contention that Notice 2016-66 restricts how CIC conducts its business. CIC contends it faces an "entirely realistic" possibility that it will lose its errors and omissions insurance policy unless this Court enjoins Notice 2016-66. (Doc. 59 at 16). It also alleges it "continues to lose [its] client base" due to the Notice. (Id.). And its owner claims he cannot sell CIC to prospective buyers because of the Notice. (Id.).

CIC has apparently not lost its errors and omissions insurance over the five years since the IRS issued Notice 2016-66, so it is sheer speculation for it to now claim it may lose that insurance "at anytime." (Doc. 59 at 16). Furthermore, as noted above, harms that depend "on the actions of third parties . . . lessens the credibility of the claim." Hubanks, 2015 WL 1245895 at *15 (citing V Real Estate, 2014 WL 5243369 at *3); see also Clapper, 568 U.S. at 414. It is also likely that any loss of insurance would be attributable not to CIC's reporting obligation, but to its involvement in transactions that are later found to lack economic substance.

The claim that CIC may suffer from "loss of business" is also inherently speculative. (Doc. 59 at 16). This loss may stem from customers' reticence to enter into transactions that are the same as, or substantially similar to, those that the Tax Court has disregarded in four separate opinions issued over the last five years. Avrahami v. Commissioner, 149 T.C. 144 (Tax Ct.

2017); <u>Reserve Mech. Corp. v. Commissioner</u>, T.C. Memo. 2018-86, 2018 WL 3046596 (Tax

Ct. 2018), <u>appeal docketed at</u> No. 18-9011 (10th Cir.); <u>Syzygy Ins. Co. v. Commissioner</u>, T.C.

Memo. 2019-34, 2019 WL 1559540 (Tax Ct. 2019); <u>Caylor Land & Dev. Inc. v. Commissioner</u>,

T.C. Memo. 2021-30, 2021 WL 915613 (Tax Ct. 2021).  It also could stem from micro-captive's

designation as "a potential tax scheme." (Doc. 24 at 8 n. 7).  Or perhaps these customers recoiled

when they learned Sean King admitted that captive insurance arrangements can "most definitely"

be used for tax avoidance or evasion purposes.  (Doc. 41 at 39:22-24).  Had CIC identified one

or more of the 45 clients it alleges it has lost (or not obtained) over the last four years, they could

have explained the reason they do not currently do business with CIC. (Doc. 59-3 at 3-4).  CIC

made no such effort, despite the burden on this motion resting with it.  <u>Am. Imaging Servs., Inc.</u>,

963 F.2d at 858.

     CIC's contention that King cannot sell the business does not represent harm to CIC, but

harm to its owner (<i>i.e.</i>, King), which cannot create irreparable harm at this stage.  <u>Gallant</u>, 2015

WL 136168 at *2 (speculative or unsubstantiated harm insufficient at preliminary injunction

stage).  Moreover, for all the reasons set forth above, CIC cannot tie any alleged diminution in its

value to the IRS's decision to issue Notice 2016-66.  Rather, the diminution (if any) is due to its

involvement in transactions such as those considered by the Tax Court.

       **d.**    **The reputational harm CIC complains of is not due to the**
              **continued enforcement of Notice 2016-66.**

     CIC alleges for the second time in this case that it will suffer reputational harm if the

Court does not issue a preliminary injunction.  (Doc. 9 at 14-15; Doc. 59 at 16-17).  This time,

Plaintiff baldly alleges its employees "have begun to feel the lash of public ridicule" due to

Notice 2016-66. (Doc. 59 at 16).  But despite this ridicule supposedly occurring in "public," CIC

does not submit any written evidence of the alleged ridicule, or any direct testimony from an

employee as to the contents of that ridicule.  Thus, Plaintiff has failed to meet its evidentiary

burden.  With no "specific evidence" that supports CIC's claims, the Court should not accept

them.  <u>Manlove</u>, 2019 WL 2291894, at *14.

Furthermore, as the Court previously found, any anger expressed by CIC's customers

likely stems "from the IRS's announcement that captive insurance companies are a potential tax

scheme, not from" Notice 2016-66. (Doc. 24 at 8 n. 7).  It may also stem from the four recent

decisions in the United States Tax Court, cited above, denying benefits to taxpayers utilizing

captive insurance companies much like those promoted by CIC.  Even so, because CIC failed to

present sufficient evidence showing such harm exists, let alone that it stems from the Notice,

reputational harm cannot support the entry of a preliminary injunction.

> **e.**  **Threats of civil or criminal investigation by the IRS stems from conduct unrelated to CIC's compliance with Notice 2016-66.**

Lastly, CIC alleges it may face civil or criminal penalties if the Notice remains in place.

(Doc. 59 at 17).  This is without merit.  CIC admits in its declaration that it has "complied with

all responsibilities imposed by" Notice 2016-66 and will "continue to do so unless and until it is

relieved of such responsibilities . . . ." (Doc. 59-3 ¶ 10).  Given that CIC states it has complied

with the Notice and intends to do so, there is no threat of civil or criminal penalty associated with

the Notice.  While CIC may face examination or investigation for other actions, these

investigations do not stem from Notice 2016-66.

For example, the civil examination by the IRS that CIC references in its brief relates to

(1) whether CIC may be liable for penalties for understating its clients' tax liabilities, 26 U.S.C.

§ 6694; (2) whether CIC may be liable for other penalties as a tax return preparer, 26 U.S.C.

§ 6695; (3) whether CIC may be liable for penalties for promoting abusive tax shelters, <u>see</u> 26

U.S.C. § 6700; and (4) whether CIC aided and abetted others in understating their tax liabilities,

see 26 U.S.C. § 6701.  (Doc. 59-1 at 1).  CIC does not allege that it is under examination for failing to comply with reporting transactions described in the Notice  Therefore, this harm (to the extent it even constitutes harm) is not traceable to the Notice and cannot support a preliminary injunction in this case.  Assoc. of Am. Physicians & Surgeons, 2020 WL 5745974, at *3 (denying preliminary injunction because, among other reasons, harm alleged was not "fairly traceable" to defendant's actions, and thus harm was not "redressable by the injunction" plaintiff sought).

 **D. The public interest does not favor issuing a preliminary injunction.**

 The public interest is not served by issuing an injunction against the IRS.  In its brief, CIC recites arguments that substantially parrot the points raised in the motion for a preliminary injunction it filed over four years ago.  Compare Doc. 9 at 16 (alleging IRS actions implicated "balance of power between Congress and the IRS") with Doc. 59 at 9-10 (pointing only to "considerations of the separation of powers").

 In its earlier ruling, the Court rejected those arguments, instead finding "the public interest would not be served" by issuing an injunction.  (Doc. 24 at 8).  The Court reasoned that "Congress gave the IRS the authority to designate certain transactions as 'Reportable Transactions' as a way to identify transactions that have the potential for tax avoidance or evasion."  Id. at 8-9 (quoting 26 U.S.C. §§ 6111, 6707A).  Four years ago, the Court concluded that "the public interest in identifying transactions potentially aimed at tax avoidance or evasion outweighs any incidental effects on entities forced to comply with the IRS's reporting requirements."  Id. at 9.  Plaintiff cites nothing that would cause the Court to change this conclusion, and it should not do so.  Thus, just as it did four years ago, this factor favors the United States.

## IV. Any injunction should be limited to Plaintiff.

Last, were the Court to grant a preliminary injunction at all, there is no reason for it to enjoin enforcement of the Notice as to any entity other than Plaintiff. CIC states that the injunction "should not be limited to the jurisdiction of the Court or to the individual plaintiff" but does not explain why. (Doc. 59 at 18).

Injunctive relief should be no more burdensome than necessary to provide complete relief to the plaintiff. Sony/ATV Publishing, LLC v. Marcos, 651 F. App'x 482, 487 (6th Cir. 2016) (citing Califano v. Yamasaki, 442 U.S. 682, 702 (1979)). Nowhere does Plaintiff suggest why a limited injunction — staying enforcement of the Notice only as to Plaintiff — would fail to provide complete relief from the alleged burden it faces in litigating this case to its conclusion. Courts abuse their discretion when they impose overly broad injunctions. See id. Because injunctive relief of any scope is to be "cautiously granted," the Sixth Circuit has observed that class-wide injunctive relief — much less the *nationwide* injunctive relief Plaintiffs request — is "rarely justified" in a case involving an individual plaintiff. See Sharpe v. Cureton, 319 F.3d 259, 273 (6th Cir. 2003). This is especially so when the suit is not a class action.

Other courts, too, counsel extreme caution in imposing the nationwide injunction that Plaintiff seeks here. See, e.g., Casa De Md. v. U.S. Dep't of Homeland Sec., 924 F.3d 684, 718 (4th Cir. 2019) (concurring op.) (observing that "[e]ven assuming a nationwide injunction could be appropriate in some case, an injunction that is limited to the plaintiffs should generally suffice"); E. Bay Sanctuary Covenant v. Barr, 934 F.3d 1026, 1029– 30 (9th Cir. 2019) (noting that nationwide injunctions should be the exception rather than the rule, and overturning district court's grant of a nationwide injunction); City of Chicago v. Sessions, 888 F.3d 272, 288 (7th Cir. 2018) (observing that "nationwide injunctions should be utilized only in rare circumstances," and later vacating the nationwide scope of the injunction on rehearing en banc,

2018 WL 3268817 (June 4, 2018)); see also Free Speech Coal., Inc. v. Att'y Gen. United States, 974 F.3d 408, 431 (3d Cir. 2020) (vacating nationwide injunction); New York v. U.S. Dep't of Homeland Sec., 969 F.3d 42 (2d Cir. 2020) (narrowing nationwide injunction after setting forth circumstances that courts should consider before issuing nationwide injunctions).

When another court in this circuit ruled recently that an agency action violated the APA, it still declined to impose a nationwide injunction extending beyond the plaintiff class. See Skyworks, Ltd. v. Centers for Disease Control and Prevention, 2021 WL 2228676 (N.D. Ohio, June 3, 2021). To be clear, this was even after the court ruled, following full merits briefing, that the agency action was invalid and that the APA demanded that the agency action be "set aside." See id. at *1, *2.

Nationwide injunctions are exceptional. They are not to be granted lightly. Plaintiff does not even attempt to explain why it warrants such drastic relief. It does not.

## V.     Conclusion

CIC does not — and *cannot*, if one scratches the surface of its rhetoric — demonstrate that it warrants the extraordinary relief of a preliminary injunction. Thus, the Court should deny its motion. If the Court is inclined, however, to grant an injunction, there are no grounds to make it nationwide.

//

//

DATE: August 10, 2021

Respectfully submitted

FRANCIS M. HAMILTON III
Acting United States Attorney

DAVID A. HUBBERT
Acting Assistant Attorney General

/s/ Nishant Kumar
KYLE L. BISHOP
NISHANT KUMAR
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
202-616-1878 (v)
202-514-6866 (f)
Kyle.L.Bishop@usdoj.gov
Nishant.Kumar@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to those registered to receive it.

/s/ Nishant Kumar
NISHANT KUMAR
Trial Attorney
United States Department of Justice, Tax Division