UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CIC SERVICES, LLC and RYAN, LLC, | ) |
|     *Plaintiffs*, | ) Case No. 3:17-cv-110 |
| v. | ) Judge Travis R. McDonough |
| INTERNAL REVENUE SERVICE, DEPARTMENT OF TREASURY, and THE UNITED STATES OF AMERICA, | ) Magistrate Judge H. Bruce Guyton |
|     *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a renewed motion for preliminary injunction filed by Plaintiff CIC Services, LLC ("CIC").[1] (Doc. 59.) For the reasons stated hereafter, CIC's motion for preliminary injunction will be **GRANTED**.

I. BACKGROUND

    A. Statutory and Regulatory Background

Through the Internal Revenue Code, Congress requires that certain taxpayers provide the Internal Revenue Service ("IRS") with information regarding "reportable transaction[s]." 26 U.S.C. § 6707A(c)(1). Congress defines a "reportable transaction" as "any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under section 6011, such transaction is of a type which

---

[1] CIC and Ryan, LLC ("Ryan") initiated the present action in 2017. During the appellate process, Ryan was dismissed as a party to the appeal. (Doc. 39.) Although Ryan remains a party to this action, the present motion was filed on behalf of CIC only. (*See* Doc. 59.)

the Secretary determines as having a potential for tax avoidance or evasion." *Id*. Consistent with this requirement, Congress delegated to the Secretary of the Department of Treasury (the "Secretary") the authority to "prescribe regulations which . . . provide such rules as may be necessary to carry out the purposes of this section." 26 U.S.C. § 6111(c)(3). Congress also authorized the IRS to assess penalties to taxpayers and material advisors[2] who fail to make required disclosures regarding reportable transactions. 26 U.S.C. §§ 6707(a), 6708(a). Taxpayers and material advisors who willfully fail to make required disclosures are potentially subject to criminal prosecution. *See* 26 U.S.C. § 7203.

Consistent with the authority delegated by Congress, the Secretary has promulgated regulations specifying that taxpayers and material advisors must provide to the IRS information about defined types of reportable transactions, including:

- "Listed transactions" – "a transaction that is the same or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction";

- "Confidential transactions" – "a transaction that is offered to a taxpayer under conditions of confidentiality and for which the taxpayer has paid an advisor a minimum fee";

- "Transactions with contractual protection" – "a transaction for which the taxpayer or a related party . . . has the right to a full or partial refund of fees . . . if all or part of the intended tax consequences from the transaction are not sustained, or a transaction for which fees . . . are contingent on the taxpayer's realization of tax benefits from the transaction";

- "Loss transactions" – "any transaction resulting in the taxpayer claiming a loss under section 165" at certain specified amounts; and

---

[2] A material advisor is any person "who provides any material aid, assistance, or advice with respect to organizing, managing, promoting, selling, implementing, insuring, or carrying out any reportable transaction," and who receives gross income for such activities in excess of certain thresholds. 26 U.S.C. § 6111(b)(1).

- "Transactions of interest" – "a transaction that is the same or substantially similar to one of the types of transactions that the IRS has identified by notice, regulation, or other form of published guidance as a transaction of interest."

26 C.F.R. § 1.6011-4(b)(1)–(6).

On November 1, 2016, the IRS issued Notice 2016-66 (the "Notice"). In the Notice, the IRS expressed concern that "micro-captive transactions"[3] had the potential for tax avoidance or evasion and classified these transactions as "transactions of interest" for the purposes of 26 C.F.R. § 1.6011-4 and 26 U.S.C. §§ 6011 and 6012 (Doc. 1-1, at 2–3.) Based on this classification, the Notice directs that: (1) "[p]ersons entering into these transactions on or after November 2, 2006, must disclose the transaction" to the IRS; and (2)"[m]aterial advisors who make a tax statement on or after November 2, 2006, with respect to transactions entered into on or after November 2, 2006, have disclosure and maintenance obligations under §§ 6111 and 6112" of the Internal Revenue Code. (*Id*. at 12.) The Notice further provides that taxpayers and material advisors are required to file a disclosure statement regarding these transactions prior to January 30, 2017, and that persons who fail to make required disclosures "may be subject to [ ] penalty" under 26 U.S.C. §§ 6707(a), 6707A, and 6708(a). (*Id*. at 13, 15.) Finally, the Notice requests comment "on how the transaction might be addressed in published guidance." (*Id*. at 16.) On December 30, 2016, the IRS issued Notice 2017-08, which extended the deadline for required disclosure of the transactions at issue to May 1, 2017. (Doc. 1-2.)

### B. Procedural History

On March 27, 2017, CIC and Ryan initiated the present action. (Doc. 1.) According to the verified complaint, CIC is "a manager of captive insurance companies," and Ryan is a "broad-based accounting, consulting, and tax services corporation, which also manages captive

---

[3] For a definition of the transactions at issue, see Doc. 1-1, at 9–11.

insurance companies." (*Id*. at 3.)  In these capacities, CIC and Ryan assert that they are subject to the Notice's disclosure requirements for material advisors and that complying with the Notice's disclosure requirements will force them to incur significant costs.  (*Id*. at 10.)   CIC and Ryan assert, however, that the Notice:  (1) constitutes a "legislative-type rule" that fails to comply with mandatory notice-and-comment requirements under the Administrative Procedures Act ("APA"), 5 U.S.C. § 533, *et seq*.; (2) is "arbitrary and capricious and *ultra vires* in nature"; and (3) fails to comply with the requirements of the Congressional Review of Agency Rule-Making Act, 5 U.S.C. § 801, because the IRS failed to submit to Congress and the Comptroller General.  (*Id*. at 2.)  Based on these allegations, CIC and Ryan's verified complaint seeks, among other things, a preliminary injunction prohibiting the IRS from enforcing the disclosure requirements set forth in the Notice based on the IRS's failure to comply with the APA's notice-and-comment requirements.

On April 19, 2017, the Court held a hearing on the initial motion for preliminary injunction.  At the hearing, the Court heard testimony from Sean King, principal and founder of CIC.  King primarily testified regarding the harm he expected CIC to suffer if forced to comply with the Notice's reporting requirements.  Specifically, King testified that:  (1) he expected CIC to incur significant fees and costs to comply with the Notice's reporting requirements; and (2) the Notice's designation of certain micro-captive transactions as reportable transactions has undermined the market value of CIC and caused reputational damage to CIC.  During his cross-examination, King testified that captive insurance agreements can "most definitely" be used for tax avoidance or evasion purposes.

On April 21, 2017, the Court denied the initial motion for preliminary injunction, finding that CIC and Ryan were unlikely to succeed on the merits of their claims, because their claims

were foreclosed by Anti-Injunction Act ("AIA").  (Doc. 24.)   Then, on November 2, 2017, the Court dismissed CIC and Ryan's claims finding it lacked subject-matter jurisdiction because they were barred by the AIA.  (Docs. 35, 36.)  CIC and Ryan appealed the Court's dismissal of their claims, and, ultimately, on May 19, 2021, the Supreme Court of the United States held that the AIA did not deprive the Court of subject-matter jurisdiction over CIC and Ryan's claims against the IRS.

On July 27, 2021, after the mandate was returned to this Court, CIC filed a renewed motion for preliminary injunction, again seeking to enjoin the IRS's enforcement of Notice 2016-66.  In its motion, CIC again asserts that the Notice is a legislative rule within the meaning of the APA and that the IRS failed to comply with notice-and-comment rulemaking requirements.  (Doc. 59.)  CIC's renewed motion incorporates its previously filed verified complaint, as well as the arguments it made in its initial motion for preliminary injunction.  Additionally, CIC notes that, on June 8, 2020, the IRS notified it that it was under audit as a potential tax shelter promoter and served it with a request for production of documents.  (*Id*. at 3; Doc. 59-1)  CIC also notes that, to date, it has complied with the Notice's requirements, expending hundreds of hours of employee labor and thousands of dollars in costs per year.  (Doc. 59-3, at 1–2.)

On September 17, 2021, the Court held a hearing on CIC's renewed motion for preliminary injunction.  At the hearing, the Court heard additional testimony from King regarding harm realized by CIC in complying with the IRS's notice.  The Court also heard testimony from Michael Corbitt, former Director of Captive Insurance for the State of Tennessee, who testified generally about micro-captive insurers in Tennessee and CIC's

5

reputation within the micro-captive insurance industry.[4]  CIC's renewed motion for preliminary injunction is ripe for the Court's review.

## II. STANDARD OF LAW

When reviewing motions for preliminary injunctions, courts must consider the following: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without an injunction; (3) whether granting the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting the injunction.  *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992)); *Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F. Supp. 2d 796, 802 (N.D. Ohio 2008) ("The same standard generally applies to the issuance of temporary restraining orders and preliminary injunctions.").  These considerations are factors to be balanced; they are not prerequisites that must each be satisfied before relief may issue.  *Eagle-Picher*, 963 F.2d at 859.  Nor are they "rigid and unbending requirements[;]" rather, "[t]hese factors simply guide the discretion of the court."  *Id*.  The party seeking injunctive relief bears the burden of justifying such relief.  *Id*.

## III. ANALYSIS

### A. Likelihood of Success of the Merits

In its first cause of action, CIC asserts that the IRS unlawfully promulgated Notice 2016-66 because it is a "rule" under the APA, and the IRS failed to observe notice-and-comment procedures required by the APA.  (Doc. 1 at 9–10.)

---

[4] The Court notes that Corbitt's testimony did not impact its decision as it relates to CIC's renewed motion for preliminary injunction.

"The APA establishes the procedures federal administrative agencies use for 'rule making,' defined as the process of 'formulating, amending, or repealing a rule." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015) (quoting 5 U.S.C. § 551(5)). A "rule" is defined as a "statement of general or particular applicability and future effect" that is designed to "implement, interpret, or prescribe law or policy." *Id*. (quoting 5 U.S.C. § 551(4). Section 4 of the APA sets forth a three-step process for "notice and comment rulemaking": (1) an agency must issue a "[g]eneral notice of proposed rulemaking," ordinarily by publication in the Federal Register"; (2) if "notice [is] required," the agency must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments"; and (3) when the agency promulgates the final rule, it must include in the rule's text "a concise general statement of [its] basis and purpose." *Id*. "Rules" issued by agencies without abiding by the APA's notice-and-comment procedural requirements are invalid. *Tenn. Hosp. Assoc. v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018).

The APA, however, distinguishes between "legislative rules," which are subject to the APA's notice-and-comment requirements, and "interpretive rules," which are not. *Perez*, 575 U.S. at 96–97. "The line between interpretive rules and legislative rules is fuzzy and enshrouded in considerable smog." *NRDC v. Wheeler*, 955 F.3d 68, 83 (D.C. Cir. 2020) (internal quotations omitted). The Supreme Court recently acknowledged that the precise meaning of the term interpretive rule is the "source of much scholarly and judicial debate." *Perez*, 575 U.S. at 96. Generally, however, "legislative rules" have the "force and effect of law." *Id*.; *see also Wheeler*, 955 F.3d at 83 ("A legislative rule is one that has legal effect or, alternately, one that an agency promulgates with the intent to exercise its delegated legislative power by speaking with the force of law."); *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 620 (4th Cir.

2018) ("[A] substantive or legislative rule . . . has the force of law, and creates new law or imposes new rights or duties . . . . [A] rule is legislative if it supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy. . . . Likewise, a rule is legislative if it expands the footprint of a regulation by imposing new requirements, rather than simply interpreting the legal norms Congress or the agency itself has previously created" (internal quotations omitted)).

Conversely, "interpretive rules" are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Perez*, 575 U.S. at 96. "Interpretive rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Id.*; *see also Wheeler*, 955 F.3d at 83 ("An interpretive rule . . . is one that derives a proposition from an existing document, such as a statute, regulation, or judicial decision, whose meaning compels or logically justifies the proposition.") "An interpretive rule, thus, puts the public on notice of pre-existing legal obligations or rights." *Wheeler*, 955 F.3d at 83. "Courts are in general agreement that interpretive rules simply state what the administrative agency thinks the statute means, or only remind affected parties of existing duties." *Azar,* 896 F.3d at 620.

In this case, the parties do not dispute that Congress delegated to the Secretary the authority to define reportable transactions or that the Secretary promulgated 26 C.F.R. § 1.6011-4, which sets forth the types of transactions that qualify as reportable transactions, through required notice-and-comment procedures. The crux of this dispute is whether the IRS can classify specific transactions as "transactions of interest" under 26 C.F.R. § 1.6011-4(b)(6), thereby making them "reportable transactions" and triggering reporting requirements, through an agency-issued notice that did not go through notice and comment.

8

CIC has demonstrated that it is likely to succeed on its claim that Notice 2016-66 constitutes a legislative rule and that it is invalid because the Secretary failed to comply with required notice-and-comment procedures under the APA. In 26 C.F.R. § 1.6011-4(b)(6), "transaction of interest" is nebulously defined as "a transaction that is the same or substantially similar to one of the types of transactions that the IRS has identified by notice, regulation, or other form of published guidance as a transaction of interest." Effectively, a "transaction of interest" is any transaction the IRS believes is the same or similar to any other transaction it has previously deemed a transaction of interest. Such a circular definition amounts to a catch-all that seemingly grants the IRS unlimited discretion to label any transaction a "transaction of interest," and, thus, a "reportable transaction," if it believes the transaction has the potential for tax avoidance or evasion.[5] As a result, classifying a transaction as a "transaction of interest" through an agency-issued notice like Notice 2016-66 likely constitutes a legislative rule because it expands the footprint of 26 C.F.R. § 1.6011-4(b) by creating new rights and duties regarding reporting requirements related to "reportable transactions." Indeed, prior to the Notice, the micro-captive transactions at issue were not considered transactions of interest, and entities like CIC were under no obligation to provide information regarding those transactions to the IRS. The Notice, therefore, creates new duties and obligations and has the "force of law," especially considering that failure to comply with the newly applicable reporting requirements exposes

---

[5] That unlimited discretion stands in contrast to the more clearly defined types of reportable transactions identified by the Secretary in 26 C.F.R. § 1.6011-4(b)(1)–(5). This appears to be a conscious decision by the IRS given its representation that it expressly declined to provide a more specific definition of "transaction of interest" during the notice-and-comment process undertaken in connection with promulgating 26 C.F.R. § 1.0611-4. *See* 72 F.R. 43147 (noting that "providing a specific definition for the transactions of interest category in the regulations would unduly limit the IRS and Treasury Department's ability to identify transactions that have the potential for tax avoidance or evasion").

9
Case 3:17-cv-00110-TRM-HBG   Document 82   Filed 09/21/21   Page 9 of 12   PageID #: 955

material advisors, like CIC, to monetary fines and criminal prosecution. *See* 26 U.S.C. §§ 6707, 6708; *see also* 26 U.S.C. § 7203 (providing that any person who "willfully" fails to supply information at the time or times required by law shall be "guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned for not more than 1 year . . . ."). Alternatively stated, the Notice is not an interpretive rule, because it goes beyond putting the public on notice of pre-existing legal obligations and beyond reminding affected parties of existing duties. Accordingly, CIC has demonstrated that it is likely to succeed on its claim that Notice 2016-66 is a legislative rule that is invalid because the IRS failed observe notice-and-comment procedures required by the APA.[6]

### B. Irreparable Harm

CIC has also demonstrated that it is has suffered, and will likely continue to suffer, at least some irreparable harm in the absence of the requested injunction. Specifically, when CIC first moved for a preliminary injunction, its principal represented that it expected to incur substantial economic costs to achieve compliance with the Notice, estimating that they would spend in excess of $60,000 per year to comply with the Notice's reporting requirements. (Doc. 1, at 11.) In a supplemental declaration filed with the renewed motion for preliminary

---

[6] The Court finds the IRS's argument that Congress has expressed a clear intent that APA notice and comment procedure need not be followed unpersuasive. *See Mann Constr. v. United States*, __ F. Supp. 3d __, 2021 WL 1923412 (E.D. Mich. May 13, 2021). Congress delegated to the Secretary the authority to "prescribe **regulations** which . . . provide **such rules** as may be necessary to carry out the purposes of this section." 26 U.S.C. § 6111(c)(3) (emphasis added). The Secretary followed this directive when it promulgated 26 C.F.R. § 1.6011-4 and attempted to define the scope of transactions that qualified as reportable transactions, which included the vaguely-defined "transactions of interest" at issue in this case. What specifically qualifies as a "transaction of interest," however, has not been subject to notice-and-comment procedures that are consistent with Congress's delegated authority. To the contrary, Congress's delegation of authority appears to expressly contemplate that the Secretary be subject to notice-and-comment requirements when "prescribing regulations" and "such rules" as necessary to carry out the purposes of the Internal Revenue Code.

10
Case 3:17-cv-00110-TRM-HBG   Document 82   Filed 09/21/21   Page 10 of 12   PageID #: 956

injunction, Sean King, CIC's principal and co-founder, avers, among other things, that CIC has expended "at least $400,000" over the past four years in out-of-pocket costs and expenses associated with complying with the Notice's reporting requirements. (Doc. 59-3, at 2.) The Court remains unaware of any mechanism by which Plaintiffs can ever recover these expenditures in the event it ultimately finds the Notice invalid. Accordingly, Plaintiffs have made at least some showing that they are likely to suffer from irreparable harm in the absence of an injunction.[7] *Welch v. Brown*, 551 F. App'x 804, 813 (6th Cir. 2014) ("This court has held that harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." (internal quotations omitted)).

### C. Harm to Others

Neither party has discussed harm that is likely to result to third parties if the Court issues the injunction Plaintiffs request. Ultimately, the Court finds that this factor does not weigh in favor of or against the preliminary injunction and is significantly less important than the other factors considered in ruling on Plaintiffs' motion.

### D. Public Interest

As set forth in 26 U.S.C. §§ 6707A and 6111, Congress gave the IRS the authority to designate certain transactions as "reportable transactions" to identify transactions that have the potential for tax avoidance or evasion. Although Plaintiffs may take issue with the IRS's interest in their industry, the public interest in identifying transactions potentially aimed at tax avoidance

---

[7] The Court notes, however, that CIC's arguments regarding irreparable harm are somewhat undercut by its failure to press its need for injunctive relief while this case worked its way through the appellate process. CIC did not appeal the Court's denial of its initial motion for preliminary injunction and did not move for an injunction pending appeal. While such considerations militate against a finding of irreparable harm, those considerations are outweighed by the evidence indicating that CIC has incurred and continues to incur out-of-pocket costs that it cannot recover in complying with the Notice.

or evasion generally serves the overarching public interest. This interest, however, must be weighed against the public interest in agencies promulgating rules that have the effect of law through procedures mandated by Congress through the APA. Accordingly, the Court finds that this factor is neutral.

IV. **CONCLUSION**

For the reasons stated herein, CIC's motion for preliminary injunction (Doc. 59) is **GRANTED**. The IRS is hereby **ENJOINED** from enforcing Notice 2016-66 against CIC.

**SO ORDERED.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**