# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION (KNOXVILLE)

| | | |
|---|---|---|
| **CIC SERVICES, LLC, et al.** | : | |
| | : | CASE NO. 3:17-cv-00110-TRM-HBG |
| *Plaintiff,* | : | |
| | : | CHIEF JUDGE TRAVIS R. McDONOUGH |
| v. | : | |
| | : | |
| **INTERNAL REVENUE** | : | |
| **SERVICE,** *et al.,* | : | |
| | : | **CIC SERVICES, LLC'S MOTION FOR SUMMARY** |
| *Defendants.* | : | **JUDGMENT ON ITS FIRST CAUSE OF ACTION,** |
| | : | **PARTIAL SUMMARY JUDGMENT ON ITS** |
| | : | **SECOND CAUSE OF ACTION, AND** |
| | : | **VOLUNTARILY DISMISSAL OF ITS THIRD** |
| | : | **CAUSE OF ACTION** |

*"The broader legal context in which this case has been brought is not lost on this Court. Defendants do not have a great history of complying with APA procedures, having claimed for several decades that their rules and regulations are exempt from those requirements. And despite the jurisdictional nature of this appeal, Plaintiff has made its thoughts on the merits abundantly clear, emphasizing that Notice 2016-66's issuance and enforcement is an obvious violation of the APA."*

*CIC Servs., LLC v. IRS*, 925 F.3d 247, 258 (6th Cir.2019)(cleaned up)(Clay, J.).

*"In recent years, the [IRS] has begun to regulate an ever-expanding sphere of everyday life—from childcare and charity to healthcare and the environment. That might be okay if the IRS followed basic rules of administrative law. But it doesn't. So with great power comes little accountability."*

*CIC Servs., LLC v. IRS*, 936 F.3d 501, 507 (6th Cir.2019)(cleaned up)(Tharpar, J., dissenting)

And so, after nearly five years of litigation against the IRS, Plaintiff CIC Services, LLC hereby submits its motion for summary judgment. There is nothing that should dissuade this Court from now concluding what has been apparent since the beginning: IRS's Notice 2016-66 violates the APA and should therefore be held as unlawful and set aside. This conclusion is compelled for two

1

reasons. First, Notice 2016-66 violates the notice-and-comment provisions of the Administrative Procedures Act ("APA") and it is therefore invalid. Second, in promulgating Notice 2016-66, the IRS acted arbitrarily and capriciously, and Notice 2016-66 is not based on a reasoned analysis as legally required by the APA. If CIC Services succeeds on *either* of these claims, Notice 2016-66 must be held unlawful and set aside.

**I.      Relevant Procedural Background and Pending Motions.**

Plaintiff's Verified Complaint (Doc. 1) was filed on March 27, 2017. The IRS initially asserted that pre-enforcement review of Notice 2016-66 was barred by the Anti-Injunction Act, and this Court accepted the IRS's argument. (Doc. 35). A unanimous Supreme Court reversed and remanded so that this case could be heard on the merits.

The IRS transmitted its administrative record on August 9, 2021. (Doc. 66). It consisted of 1451 pages (for Notice 2016-66) and 70 pages (for Notice 2017-08). The parties agree that the relevant portions of that record are included in a joint appendix filed contemporaneously herewith.

Following its review of the administrative record, CIC Services informally attempted to work with the IRS's counsel to remedy deficiencies in the record. When that informal attempt failed, CIC Services filed the following motions seeking to engage in limited discovery to address the record's deficiencies:

- A 'Motion to Reconsider the Scheduling Order' (Doc. 80) – filed September 15, 2021. That motion is ripe for decision (Doc. 83; Doc. 86); and

- A 'Motion to Complete the Administrative Record' (Doc. 84) – filed October 1, 2021. That motion is ripe for decision (Doc. 88; Doc. 92).

2

In the absence of guidance from the Court—and in order to comply with the Court's scheduling order—CIC Services is filing this motion for summary judgment. However, for the reasons set forth in its motions referenced above, it does under protest and preserves its objections: the administrative record as currently constituted is so woefully deficient and the pretextual nature of Notice 2016-66 is so apparent that CIC Services has been deprived of a fair opportunity to develop the merits of the case regarding the arbitrary and capricious nature of Notice 2016-66.[1]

## II. The APA-Specific Summary Judgment Standard.

Summary judgment is the typical mechanism for deciding whether an agency's action is supported by the administrative record and consistent with the APA's standard of review. *Norton v. Beasley*, 2021 U.S. Dist. LEXIS 190096, at *37 (E.D. Ky. Sep. 30, 2021)(quoting 2 Am. Jur. Admin. Law § 544 (2021)). However, the traditional summary judgment standard under Fed. R. Civ. Pro. 56(a) does not apply. See, e.g. *Coe v. McHugh*, 968 F.Supp.2d 237, 239 (D.D.C. 2013)(the Rule 56(a)standard does not apply "because of the court's limited role in reviewing the administrative record"). Instead, the Sixth Circuit has warned that courts adjudicating cross-motions for summary judgment in an APA case should take care that there is no "improper consideration of evidence outside the administrative record and reliance upon post hoc rationalizations for the agency's action." *Alexander v. MSPB*, 165 F.3d 474, 480 (6th Cir.1999); *Donaldson v. United States*, 109 F.App'x 37, 39 (6th Cir.2004)(suggesting that summary judgment is an inapt procedural vehicle). "[W]hen a district court rules on a motion for summary judgment under

---

[1] None of these criticisms are directed at the Court, which has heretofore adjudicated matters in this case expeditiously. The IRS produced the administrative record less than 90 days ago. The Court's scheduling order (Doc. 57) quite rightly ordered the parties to informally confer about the issues. When that failed, briefing began, and the motions only recently became ripe for review.

3

Case 3:17-cv-00110-TRM-HBG   Document 97   Filed 11/01/21   Page 3 of 19   PageID #: 1369

the APA, it must apply the proper standard of review outlined in the APA, and its review must be based on the administrative record." *Norton,* at *38-39 (citations omitted). Thus, cross-motions for summary judgment are simply the procedural vehicle for framing the legal questions at issue in an APA review. *Id.*

III.     **Notice 2066-66 Violates the APA Because It Is a Legislative Rule Promulgated Without Notice and Comment**.

As this Court is aware, this issue has been repeatedly briefed by the parties. See, e.g., Doc. 9, PageID #100; Doc. 15, PageID #174, fn.2; Doc. 17, PageID #194; Doc. 21, PageID #240-43; and Doc. 25-1, PageID #480-83; Doc. 26, PageID #509-11; Doc. 59, PageID #781-83; Doc. 68; PageID 857-62; Doc. 72; PageID #901-03. This Court has already correctly ruled on the applicable law related to this question. Doc. 82; PageID #952-56. Nevertheless, we will move through the relevant questions and attempt to avoid being repetitive or redundant.

Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706. An agency's "failure to provide the required notice and to invite public comment is a fundamental flaw that normally requires vacatur of the rule." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199, (D.C. Cir. 2009)(cleaned up). It is the law of the Sixth Circuit that: a rule that has not been adopted in accordance with procedural notice-and-comment rulemaking requirements is invalid. *Tennessee Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018); *Hca Health Servs. of Tennessee v. Thompson*, 207 F.Supp.2d 719, 732 (M.D.Tenn.2002)(citing *Ohio Dep't of Human Servs. v. United States Dep't of Health & Human Servs., Health Care Fin. Admin.*, 862 F.2d 1228, 1237 (6th Cir. 1988)).

4

A. The IRS did not engage in notice-and comment rulemaking.

The APA generally requires notice-and-comment rulemaking. 5 U.S.C. §§ 554(b), (c). This means that notice of proposed rulemaking "shall be published in the Federal Register," 5 U.S.C. § 553(b), and that the agency "shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." *Id*. § 553(c). And the public's comments must be thoughtfully reviewed and responded to by the agency in the final rule. *Carlson v. Postal Regulatory Comm.*, 938 F.3d 337 (D.C. Cir. 2019); *United States v. Utesch*, 596 F.3d 302, 310 (6th Cir.2010).

The public comment aspect is important to our democracy. "The purpose of the notice and comment provision is so that agencies will receive public input, enabling them to craft a better rule than they otherwise could." *United States v. Cain*, 583 F.3d 408, 420 (6th Cir.2009); *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 680 (6th Cir. 2005). Public participation also helps ensure fair treatment for persons affected by the regulation. *Id*. And it gives affected parties an "opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Int'l Union, United Mine Workers of Am. v. Mine Safety and Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005).

The IRS did none of these things. It has never argued that it complied with notice-and-comment rulemaking when promulgating Notice 2016-66.

Gallingly, the IRS agrees that it *should* do these things. In an IRS "Policy Statement on the Tax Regulatory Process," the IRS agreed that notice-and-comment is "best practice." (Doc. 59-2, PageID #809). And it promised not to "argue that sub-regulatory guidance has the force and effect of law." *Id.* Yet, throughout this case, the IRS has defended *this* sub-regulatory guidance,

5

Notice 2016-66, as having the force of law. The hypocrisy of the IRS's positions in this case should offend this Court and every citizen.

      B. <u>Notice 2016-66 is a legislative rule</u>.

The notice-and-comment rulemaking requirement does not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). Earlier in this case, it appeared that the IRS conceded that Notice 2016-66 was a legislative—not an interpretive—rule. (Doc. 21; PageID #243). Recently, however, the IRS began arguing that Notice 2016-66 was an interpretive rule. As this Court has held, however, the IRS is wrong; Notice 2016-66 is a legislative rule. (Doc. 82, PageID #956).

Notice 2016-66 creates obligations where none previously existed. Upon its issuance, CIC Services, its clients, and other citizens were required to submit informational returns and keep records that they otherwise would not. And the Supreme Court specifically held <u>in this case</u> that Notice 2016-66 threatens citizens who disobey its mandates with new "civil tax penalties and criminal penalties." *CIC Services, LLC v. IRS*, 141 S.Ct. 1582, 1586 (2021). The Sixth Circuit has instructed that, especially when a rule "puts new criminal liability on the acts or omissions of regulated persons, it is quintessentially legislative, as compared with regulations that merely restate or interpret statutory obligations." *United States v. Cain*, 583 F.3d 408, 420 (6th Cir.2009). Agencies that seek to impose criminal penalties "should be held to the strict letter of the APA." *Id*. at 422 (quoting *U.S. v. Picciotto*, 875 F.2d 345, 346 (D.C. Cir. 1989)("Notice is nowhere more important than in the criminal law, where individual liberty is at stake.").

Simply put, because Notice 2016-66 is a "quintessentially legislative" rule, the IRS was required to abide by the APA's notice-and-comment requirements. *In re Long-Distance Tel. Serv.*

6

Case 3:17-cv-00110-TRM-HBG   Document 97   Filed 11/01/21   Page 6 of 19   PageID #: 1372

*Fed. Excise Tax Refund Litigation*, 853 F.Supp.2d 138, 143 (D.D.C.2012)(citing *see General Electric Co. v. EPA*, 290 F.3d 377, 382-83 (D.C. Cir. 2002)). "The IRS's utter failure to comply with notice-and-comment cannot be considered harmless error since there is uncertainty as to the effect of that failure." *Id.* (cleaned up)(quoting *AFL-CIO v. Chao*, 496 F. Supp.2d 76, 89 (D.D.C. 2007). "There is no way for the court to know what effect a notice-and-comment process would have had on the issuance of Notice [2016-66]." *Id.*

    C. <u>The IRS's other excuses fall flat</u>.

Of course, this issue does not come on a clean slate. The IRS has raised two other arguments as to why it should not be faulted for failing to engage in notice-and-comment rulemaking. This Court has correctly rejected these arguments. (Doc. 82; PageID #956, fn.6).

First, the IRS has argued that Congress exempted it from notice-and-comment rulemaking when defining reportable transactions. This Court correctly held that the plain language of Congress's statutory delegation of authority—26 U.S.C. §6111(c)(3) and 26 U.S.C. §6707A(c)(1)—compels the IRS to "prescribe regulations" to define reportable transactions and to describe them "under regulation." The Supreme Court has held that, when Congress explicitly delegates regulatory rulemaking authority to an agency, it intends for this formality to be followed. *See, e.g. United States v. Mead Corp.*, 533 U.S. 218, 227-30 (2001)(quoting *Chevron*: "When Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation'"). It is difficult to imagine Congress being clearer in its direction: the IRS may only define reportable transactions <u>under</u> regulation. Accord *In re Canada*, 2016 Bankr. LEXIS 2234, at *30-33 (N.D. Tex. June 7, 2016) (explaining that reportable transactions are to be determined "via regulation"); *Career Coll. Ass'n*

7

*v. Riley*, 74 F.3d 1265, 1275 (D.C. Cir. 1996) (noting that an administrative agency complies with Congress's directive to make rules "under regulations" by promulgating a regulation).

Second, the IRS has argued that it excused itself from this Congressional mandate by creating the sub-genre "transactions of interest" in 26 C.F.R. §1.6011-4. This regulation, the IRS (hypocritically) argues, *was* created with notice-and-comment rulemaking and therefore allows the IRS to make new legislative rules without notice-and-comment. The Court has rightly rejected this argument for what it is: an improper attempt to avoid the APA.

**IV.     Plaintiff Hereby Dismisses its Third Cause of Action: Violation of the CRA**.

Based upon the administrative record (produced August 9, 2021) and Defendant's Answer (filed September 7, 2021), it appears that the IRS *did* comply with the Congressional Review Act. 5 U.S.C. §801, *et seq*. ("CRA"). Therefore, Plaintiff dismisses its third cause of action without prejudice.

There was good reason to suspect that the IRS had not complied with the CRA. After all, Plaintiff knew that the IRS had not complied with the APA notice-and-comment procedures; that was publicly-available knowledge. There was no way for Plaintiff to know what the IRS had sent to Congress. Yet, the IRS's compliance with the CRA is awfully telling: the CRA's definition of a "rule" is the same as the APA's definition of "rule." 5 U.S.C. §804(3). Why would the IRS comply with the CRA yet claim that it is exempt from compliance with the APA?

**V.     Notice 2066-66 Violates the APA Because It Is Arbitrary and Capricious.**

As stated above, CIC Services has pending motions to supplement the administrative record through limited discovery. This is because the IRS's administrative record is so bare and

8

Case 3:17-cv-00110-TRM-HBG   Document 97   Filed 11/01/21   Page 8 of 19   PageID #: 1374

its stated rationale so unbelievable that it warrants deviating from the general principle that APA cases are to be decided on the administrative record alone.

At this stage in litigation, Plaintiff's Second Cause of Action has developed into two independent arguments, contending that Notice 2016-66 is arbitrary and capricious because: (1) the administrative record as currently constituted does not support the IRS's stated rationale for creating the Notice, and (2) the IRS's stated reason is pretextual and false. Summary judgment is warranted on the former, but not yet on the latter. CIC Services asserts that, until some discovery is had with respect to the IRS's basis for promulgating Notice 2016-66, this cause of action is not yet fully ripe for judgment.

To date, the IRS has vigorously opposed any attempt to learn more about the decision-making process behind Notice 2016-66. No IRS representative has ever appeared before this Court to defend Notice 2016-66 or to rebut the significant evidence that the Notice was issued in bad faith and for ulterior motives. The IRS appears willing to let Notice 2016-66 live or die based on the administrative record alone.

Because the general Rule 56 standard does not apply with respect to administrative actions (see Section II, *supra*.), CIC Services in no way asserts that there is no "genuine issue of material fact" with respect to this cause of action. To the contrary, CIC Services believes there are significant facts that remain to be developed via discovery—discovery that it has been prevented from pursuing to date. While CIC Services preserves its objections to proceeding on this question without discovery, CIC Services avers that this Court can nevertheless find Notice 2016-66 to be arbitrary and capricious based on the paucity of information in the administrative record as currently constituted.

9

A. <u>APA Standard of Review</u>.

"A court must hold unlawful and set aside any agency action, findings and conclusions found to be arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." *Donaldson v. United States*, 109 F.App'x 37, 40 (6th Cir.2004)(cleaned up)(quoting 5 U.S.C. § 706(2)(A)). Although a court should not substitute its judgment for that of the agency, the administrative record must establish a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

An agency's decision is arbitrary and capricious when the agency "has entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir.2007)(quoting *Motor Vehicles Mfrs. Assoc.*, 463 U.S. at 43 (1983)). A challenger may prevail by showing that the agency's action "had no rational basis." *McDonald Welding v. Webb*, 829 F.2d 593, 595 (6th Cir. 1987). The burden is on the agency to show that it has resolved factual issues and reached a decision supported by the administrative record. 2 Am. Jur. Admin. Law § 544. And the Court's role "is to determine whether or not, as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did." *Id*. (citation omitted).

B. <u>The IRS did not consider any facts</u>.

Notice 2016-66 claims that its *raison d'être* is:

The Treasury Department and the IRS believe this transaction ("micro-captive transaction") has a potential for tax avoidance or evasion. . . . However, the Treasury Department and the IRS lack sufficient information to identify which § 831(b) arrangements should be identified specifically as a tax avoidance

10

> transaction and may lack sufficient information to define the characteristics that distinguish the tax avoidance transactions from other § 831(b) related-party transactions.

Notice 2016-66, p. 1.  This premise is faulty for several reasons.

First, there are no facts in the record that would quantify or substantiate an asserted "belief" that micro-captives "have a potential for tax avoidance or evasion."  Absent from the administrative record is any fact-finding, memoranda, studies, research, or data that would inform this belief.  The IRS ought to be able—presumably more so than most other agencies—to marshall an incredible amount of data regarding just about any tax issue.  How many §831(b) micro-captive transactions are out there?  What have audits uncovered?  What information does the IRS already have from the annual reports that each §831(b) captive is already required to file (See Verified Complaint, ¶49, Exhibit 4)?

Second, the IRS's stated rationale is subjective, vaporous, and virtually unassailable.  Who can argue with what the IRS "believes" has a "potential" for tax avoidance?  Who can argue whether the IRS "may lack sufficient information?"   If this nebulous rationale is sufficient to justify a regulatory act (let alone one that could put someone in jail), it would make a mockery of what the APA requires: "reasoned decision-making."  *Atrium Med. Ctr. v. U.S. Dep't of Health & Human Servs.*, 766 F.3d 560, 567 (6th Cir. 2014).

Third, not only does the administrative record not support the IRS's self-proclaimed "lack of sufficient knowledge" rationale, but there is evidence that contradicts this.  Except for the text of Notice 2016-66 itself, nowhere in the administrative record does the IRS actually discuss the alleged dearth of information sufficient for it to analyze §831(b) transactions.  Instead, the administrative record reveals alternate motivations that drove its publication.  Those include a

desire to target micro-captives before courts had a chance to rule on the merits of certain cases and to dissuade the formation of new captives.

Finally, the IRS's claim in Notice 2016-66 that it cannot distinguish "tax avoidance" transactions from other transactions begs the question: SO WHAT!?! As the Sixth Circuit recently chastised the IRS, even if a transaction is solely motivated by tax-avoidance, it may still be lawful. *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 787 (6th Cir.2017)("Before long, allegations of tax avoidance begin to look like efforts at text avoidance [by the IRS]. What started as a tool to prevent taxpayers from placing labels on transactions to avoid tax consequences they don't like runs the risk of becoming a tool that allows the Commissioner to place labels on transactions to avoid textual consequences he doesn't like."). "If the Code authorizes the formal transactions the taxpayer entered into, then it is of no consequence that it was all an elaborate scheme to get rid of income taxes." *Id*. (cleaned up)(quoting Judge Learned Hand in *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934)). To be sure, Congress and the Tax Code provide significant incentives to those who use §831(b) captive insurance; but that is because Congress gets to use the Tax Code to incentive, dis-incentivize, or tax subsidize all sorts of policy goals. As with many things in the Tax Code (like the Roth-IRAs and DISC's in *Summa Holdings*) tax-avoidance may be the whole point. "The Commissioner cannot fault taxpayers for making the most of the tax-minimizing opportunities Congress created." *Summa Holdings*, 848 F.3d at 790. Although the IRS may have legitimate reasons to want to learn more about captive insurance companies, scruitinizing taxpayers' motivation to avoid paying taxes can hardly be called sufficient ground to label something as a "reportable transaction."

12

C. <u>The IRS failed to consider an important aspect of the problems Notice 2016-66 creates</u>.

In this case, Notice 2016-66 created problems for citizens and taxpayers that the IRS didn't properly consider (or, more likely, that the IRS intended). The record before the Court is replete with the negative consequences of Notice 2016-66. It imposes significant reporting requirements on lawful participants in Congressionally-sanctioned transactions. Many of the reports are duplicative because multiple parties to the transaction have to provide the same information, and the Notice demands information that the IRS already has. It frightens away potential new business for those in the captive insurance industry. It causes current users of captive insurance to discontinue their use of captive insurance companies, thereby undermining the very incentive that Congress sought to provide.

There are hints of these concerns in the administrative record. The IRS anticipated that Notice 2016-66 would be perceived as a "burdensome ministerial requirement" that was part of a campaign to "tarnish[] the entire captive insurance industry"—not just abusive ones. (Exhibit A, p. 1407; Doc. 84-1; PageID #1214). Contrary to its duty under the APA, however, there is no evidence—at least nothing in the administrative record—that the IRS actually *considered* these important aspects. At best, this is a dereliction of its duty under the APA. At worst, forcing the industry to suffer these consequences was the actual purpose of the Notice.

D. <u>Had the IRS properly engaged in notice-and-comment rulemaking, it would have been forced to reckon with these significant concerns</u>.

Because the public was not given an opportunity to comment on Notice 2016-66 before its publication, there are no public comments about Notice 2016-66 in its administrative record. There are, however, several comments that were submitted to the IRS that are included in the

13

administrative record for Notice 2017-08 (which extended the deadline for compliance with Notice 2016-66 in 2017). The concerns outlined above appear throughout these comments. United States Senators Michael Bennett and Cory Gardner criticized the reporting requirement's effect on small businesses, its overbroad nature, its duplicative reporting requirements, and questioned why the IRS could not use information it already had. (Admin 1457-58, 1460). Senator Johnny Isakson chastised the IRS for acting contrary to Congress's support for captive insurance companies. (Admin. 1459). And Senator Isakson decried that the IRS had imposed reporting requirements "on a large number of small and medium-sized businesses . . . before the IRS has carefully reviewed such taxpayers' comments [which] is unfair and violates a basic principal of administrative process." *Id*. Several other stakeholders and concerned citizens submitted lengthier comments which echo these concerns and allege numerous other technical criticisms. (Admin. 1461-74). There were at least four other letters submitted to the IRS critical of Notice 2016-66 including one by CIC Services's principal, Sean King. See attached Exhibit 1.[2]

The IRS ignored all of these concerns except one—accepting Senator Isakson's request to extend the first reporting deadline by ninety days.

Imagine what could have been. What wealth of information would be available in this administrative record had the IRS actually complied with the APA, reviewed and thoughtfully responded to the submitted comments? What improvements could have been made to Notice

---

[2] Conveniently, the IRS claims that these *post hoc* comments cannot be considered by this Court because they were not received before Notice 2016-66 and Notice 2017-08 were issued and thus are not part of the administrative record. (Doc. 83, PageID # 961, fn. 2). But this proves the point: this is why the APA requires the publication of a draft rule, a time-period for comments, and consideration of those comments. Rather than engaging in proper rulemaking, the IRS ignored criticisms received *after* it had already made up its mind, and it argues that this Court has to ignore those criticisms, too.

14

2016-66 to address the concerns of CIC Services, U.S. Senators, and other citizens? What response might the IRS have formulated to defend its decisions? We'll never know because the IRS defied the APA.

Summary judgment should be granted on CIC Services's first and second causes of action.

**VI.     Relief Requested.**

Plaintiff respectfully requests entry of judgment in its favor on the first count of its Verified Complaint and relief thereon as follows:

A. Entry of a universal, nationwide injunction setting aside IRS Notice 2016-66 in its entirety as an unlawful rule, *nunc pro tunc*.

B. Entry of a structural injunction, enjoining all agencies of the U.S. Government from (1) enforcing any provision of IRS Notice 2016-66 against any citizen of the U.S., and (2) offering into evidence in any judicial proceeding or governmental administrative proceeding any document produced in response to IRS Notice 2016-66.

C. Entry of a reparative injunction, requiring the IRS to:

  1. destroy or return to sender with all deliberate speed all materials provided in response to IRS Notice 2016-66, and
  2. provide monthly progress reports to this Court until completion of this responsibility.

D. Plaintiff shall be granted all costs and fees allowable by law and/or equity and shall submit to the Court its application for all costs and fees incurred since the filing of its Verified Complaint, within 90 days from date of judgment.

In support of the relief requested, Plaintiff respectfully submits as follows:

A. <u>Setting Aside Notice 2016-66 *Nunc Pro Tunc*.</u>

The Supreme Court has made abundantly clear that, absent a direct command to the contrary by Congress, federal courts retain all equitable power to issue injunctions in suits over which they have jurisdiction. *Califano v.Yamaski,* 442 U.S.682, 702, 705 (1979) ("the scope of injunctive relief is dictated by the extent of the violation established, not by the [size of the]

plaintiff class"). *See Porter v. Warner Holding Co.,* 328 U.S. 395, 398 (1946); *see also Howe v. City of Akron,* 801 F.3d 718, 753 (6th Cir. 2015) (citing *EEOC v. Wilson Metal Casket Co.,* 24 F.3d 836, 842 (6th Cir. 1994)(District Court may extend injunction to conduct which is found to have been pursued or is related to the proven unlawful conduct)).

In this case, the Supreme Court noted in its opinion reversing the decisions of this Court and the Sixth Circuit (earlier dismissing this case), the propriety of Plaintiff's request to set aside and <u>eliminate</u> Notice 2016-66. *CIC Servs.LLC v. IRS,* 141 S.Ct. 1582, 1590 (2021). In this regard, the Supreme Court referenced 5 U.S.C. §706, which specifically states that the appropriate relief under the APA is to "set aside" an agency rule. Although there has been some debate among federal courts regarding the proper scope of APA injunctions, a unanimous Supreme Court has indicated, *at least in this case,* that the proper remedy for CIC Services is a universal, nationwide *vacatur* of Notice 2016-66, and nothing less. *Id; see also* Mila Sohoni, *Do you C what I C? – CIC Services v. IRS and Remedies under the APA,* Yale J. on Regulation (2021).

Universal *vacatur* is particularly well-suited in the case at bar due to the fact that Plaintiff, and all other captive managers as well, are negatively affected by the impact of Notice 2016-66 on non-parties that they manage and service. *See* Motion to Reconsider Scope of Preliminary Injunction. (Doc. 87, at 2-7).

B. <u>Structural Injunction</u>

Rule 65(d) of the Federal Rules of Civil Procedure, which is applicable to every injunction issued by the federal district courts and not just to temporary restraining orders and preliminary injunctions, permits broad injunctions in circumstances where "a proclivity for unlawful conduct has been shown." *McComb v. Jacksonville Paper Co.,*336 U.S. 187, 192 (1949).

Rule 65(d) also describes the categories of persons subject to an injunction or order to include not only defendants, but also their "attorneys and other persons who are in active concert or participation [with them]" *See* FRCP, Rule 65(d).

Thus, it is abundantly clear that a broad-based structural injunction, prohibiting any enforcement whatsoever of the unlawful rule or the evidentiary utilization of the "fruits" of the unlawful rule by the IRS, the Department of Justice, or any other agency of the U.S. government is appropriate here.

### C. Reparative Injunction.

The long-standing, so-called *propensity* rule generally requires that plaintiffs demonstrate that there is a realistic threat from the defendant of future harm or future injury from past harm before a court will issue an injunction. *See Hecht Co. v. Bowles,* 321 U.S. 321 (1944). In the case at bar, demonstrating propensity is a no-brainer inasmuch as the IRS has already committed unlawful conduct and the question now is how do we guard against additional future harm from such unlawful conduct. The answer, we respectfully suggest, is that this Court must impose necessary reparative relief. In this regard, CIC Services seeks reparative relief that contains elements of both private and public injunctive relief.

In order to ensure that the IRS is unable to make any use of the "fruits" of their unlawful conduct, it is only reasonable to require that it return or destroy with all deliberate speed all materials provided to it in response to Notice 2016-66. This may take some time to accomplish so the Plaintiff also requests that the IRS report back to the Court on its progress toward completion of the responsibility on a monthly basis.

17

Certainly, there is an abundance of unopposed factual evidence which has been submitted to the Court in the form of sworn testimony by non-parties that there exists a credible threat the IRS will engage in the misuse of the "fruits" of its unlawful conduct in furtherance of its mission to close down the small captive insurance business. *See Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014).

With respect to the public and reportorial aspects of such reparative relief, Plaintiff relies upon the Supreme Court's guidance in *Brown v. Board of Education,* 349 U.S. 294 (1955).

D. Costs and Fees

In the event the Court grants the Plaintiff partial summary judgment as requested, CIC Services, as a "prevailing party," would for the first time be entitled to an award of its costs and fees dating back to 2017, in accordance with 26 U.S.C. §7430 and/or 28 U.S.C. §2412. Both statutes require the submission of an application to the Court in order to ensure compliance with their provisions.

Date: November 1, 2021

Respectfully submitted,

s/ Kenneth A. Lazarus
Kenneth A. Lazarus (admitted *pro hac vice*)
LAZARUS & ASSOCIATES
1055 Thomas Jefferson St., NW, Suite M-100
Washington, D.C. 20007
Tel: (202) 295-2330 (Direct Line)
E-mail: lazaruslaw@aol.com

s/ Adam R. Webber
Adam R. Webber (admitted *pro hac vice*)
ELLIOTT FAULKNER & WEBBER, LLC
4244 Indian Ripple Road, Suite 150
Beavercreek, Ohio 45440
Tel: (937) 264-8710
E-mail: awebber@elliottfaulknerlaw.com

-and-

s/ John M. Kizer
John M. Kizer (TN Bar No. 029846)
Gentry, Tipton & McLemore, PC
900 South Gay Street, Suite 2300
Knoxville, TN 37902
Tel: (865) 525-5300
E-mail: jmk@tennlaw.com

COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This is to certify that on this 1st day of November, 2021, I electronically filed the foregoing, using the CM/ECF system which will provide copies of such filing to counsel of record for Defendants.

s/ Adam R. Webber
Adam R. Webber
Counsel for Plaintiff