UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION (KNOXVILLE)

| | | |
|---|---|---|
| **CIC SERVICES, LLC** | : | CIVIL CASE NO. 3:17-CV-110 |
| *Plaintiff,* | : | |
| | : | CHIEF JUDGE TRAVIS R. McDONOUGH |
| v. | : | |
| | : | MAGISTRATE JUDGE H. BRUCE GUYTON |
| **INTERNAL REVENUE SERVICE,** | : | |
| | : | |
| **DEPARTMENT OF THE TREASURY** | : | |
| | : | **AMENDED VERIFIED COMPLAINT FOR** |
| -and- | : | **INJUNCTIVE AND DECLARATORY RELIEF** |
| | : | |
| **THE UNITED STATES OF AMERICA** | : | |
| | : | |
| *Defendants* | : | |

_____

Plaintiff CIC Services, LLC, by counsel, in accordance with Rule 15 of the Federal Rules of Civil Procedure and pursuant to this Court's Order (Doc. 103), hereby states its claims for relief against the Defendants.

This Amended Complaint is identical to the Complaint (Doc. 1) except that it reflects the following changes: (1) former-Plaintiff Ryan, LLC has been removed and references to "plaintiffs" have been made singular; (2) consistent with the voluntary dismissal of the Complaint's third cause of action (see Doc. 97), this cause of action has been omitted; (3) the requests for relief have been amended consistent with the proposed amendments (see Doc. 89).

## SUMMARY OF CASE

This lawsuit seeks the following injunctive relief: setting aside IRS Notice 2016-66, as modified by IRS Notice 2017-08; prohibiting Internal Revenue Service ("IRS") enforcement of its provisions regarding so-called "micro-captive transactions,"; and related injunctive and declaratory relief. The IRS issued Notice 2016-66 on November 1, 2016 (effective on that date) which required the filing of certain informational returns by the Plaintiff and thousands of other taxpayers on January 30, 2017, under threat of severe monetary penalties, public embarrassment and ridicule. IRS Notice 2017-08, issued on December 29, 2016, extended the filing date from January 30, 2017 to May 1, 2017. [1]/

The bases for the lawsuit are twofold. *First*, the IRS unlawfully issued Notice 2016-66, which qualifies as a "legislative-type rule," without first complying with the mandatory notice-and-comment provisions of the Administrative Procedure Act ("APA", 5 U.S.C. §553). *Second,* Notice 2016-66 is arbitrary and capricious and *ultra vires* in nature, lacking underlying authority and the reasoned-analysis footing required by the APA (5 U.S.C. §706(2)(A)).

## JURISDICTION & VENUE

1. This Court has jurisdiction over the causes of action herein alleged under 28 U.S.C. §1331 ("federal question" jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States) and pursuant to the APA, 5 U.S.C. §702 (authorizing judicial review of alleged legal wrongs arising from agency action).

---

[1]/ Plaintiff CRC Services, LLC filed a similar, previous complaint for injunctive and declaratory relief with this Court on December 28, 2016 (Docket No. 3:16-cv – 00709, assigned to District Judge J. Ronnie Greer) but dismissed that case without prejudice, in accordance with Rule 41(a) of the Federal Rules of Civil Procedure, on December 30, 2016, immediately following the issuance of Notice 2017-08.

2. Venue lies here under 28 U.S.C. §1391(e)(C) (judicial district in which defendant is the United States or a federal agency and a plaintiff resides in such district and the cause of action does not involve real property).

**IDENTIFICATION OF THE PARTIES**

3. Plaintiff CIC Services, LLC, ("CIC"), a manger of captive insurance companies, is a limited liability corporation with offices at 1111 N. Northshore Drive, Suite N325, Knoxville, Tennessee 37919.

4. Defendants IRS and the Department of the Treasury (both agencies of the United States) maintain their principal offices in the District of Columbia. Service upon the Defendant United States will be made upon the Attorney General of the United States in Washington, D.C. and the Acting U.S. Attorney for the Eastern District of Tennessee, in Knoxville, Tennessee.

**GENERAL ALLEGATIONS**

The general factual allegations giving rise to the causes of action asserted in this case are as follows:

**Relevant Background**

5. Captive insurance companies ("captives") are a variety of property and casualty insurance companies that are owned and used by the primary insured itself or by the owner of the insured or an affiliated company of the insured to insure risks of the insured or its affiliate or of other insurance companies. They do not offer insurance to the public; rather, loosely speaking, they are vehicles for a type of formalized and partial self-insurance.

6. For tax purposes, current law recognizes three general levels of captives:

(a) Large captives that can receive unlimited premiums and are therefore generally maintained by large, public companies like those listed on the Fortune 500 to achieve a multiplicity of financial and economic benefits conferred by Congress (26 U.S.C §832);

(b) Smaller captives that can receive premiums not exceeding $1.2M per year and are therefore generally maintained by small and mid-sized companies and are allowed to achieve many of the same benefits realized by Fortune 500 companies. (26 U.S.C. §831(b)) [2]/; and

(c) The smallest captives that can receive premiums not exceeding $350K per year and provide commensurate benefits. (26 U.S.C. §501(c)(15).

7. IRS Notice 2016-66, a copy of which is attached hereto as **Exhibit 1**, relates to the second category of captive described immediately above, i.e., §831(b) captives.

8. A copy of IRS Notice 2017-08, modifying Notice 2016-66 so as to extend the mandatory reportorial filing date from January 30, 2017 to May 1, 2017, is attached hereto as **Exhibit 2**.

9. For many years, §831(b) and related "safe-harbor" revenue rulings have advanced important public policy goals by authorizing a range of tax benefits including: (a) the obtainment of customized insurance coverage through an insurance company established and controlled by the taxpayer; (b) the deductibility of up to $1.2M in annual insurance premiums

---

[2]/ §831(b) was substantially rewritten by Congress in 2016 for tax years after 2016. *See* Pub. L. 114-113, Sec. 333. This legislation reaffirmed the long-standing public policy in support of §831(b) captives and increased the amount of the premium ceiling from $1.2M to $2.2M. *Id.* The case at bar involves only 2016 and prior years; therefore, the new law is not implicated in Notice 2016-66.

paid to the captive; (c) no tax due on the insurance premiums received by the captive; and (d) the return of any captive profits to the taxpayer in the form of qualified dividends which are taxed at capital gains rates.

10. The IRS attacked the existence of the large captive insurance companies for decades and lost significant court cases in the U.S. Circuit Courts, thus effectively compelling the IRS's retreat. Having lost its battle against the large captives, the IRS turned its attention to the smaller §831(b) captives.

**Initiation of IRS 831(b) Audit Program**

11. Beginning in or about 2012, the IRS initiated a broad-based, dragnet-type audit program, generally claiming that §831(b) fostered abusive tax-shelter arrangements, thereby disparaging many hundreds, perhaps thousands, of insureds, their captives, their professional captive managers like the Plaintiff, and other advisors. [3]/

12. The IRS audit program has included sweeping document demands such as those looked upon with disfavor by the Sixth Circuit in *In re U.S. v. NorCal Tea Party Patriots,* 817 F.3d 953, 957-58 (6th Cir. 2016), affirming *NorCal Tea Party Patriots v. IRS*, Case No. 1:13-cv-341, 2014 U.S. Dist. LEXIS 97229 (S.D.Ohio July 17, 2014).

13. In conducting its audits, the IRS demonstrates a stubborn resistance to adopting the Sixth Circuit's teaching that the IRS is not permitted to punish taxpayers for making the

---

[3]/ As a practical matter, it is essential for small business people to engage a §831(b) captive manager due to the substantial insurance infrastructure requirements imposed by IRS rules and regulations and requirements of the jurisdiction licensing the captive. §831(b) captive managers include small and medium-size businesses like the Plaintiff, as well as some very large NYSE insurance companies like the Marsh & McLennan Companies and Arthur Gallagher & Co., provide §831(b) captive management services.

most of tax-minimizing opportunities that are lawfully enacted by Congress. *See Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 2017 U.S. App. LEXIS 2713, *25 (6th Cir. Feb. 16, 2017).

14. The IRS has tar-brushed all §831(b) captives (and their related entities) by including them in its "Dirty Dozen" list of "Tax Scams," implying the existence of widespread and egregious taxpayer abuse, scams, fraud, and the like and tainting legitimate captive managers like the Plaintiff as "promoters" of "tax avoidance schemes." *See* IRS News Release, attached hereto as **Exhibit 3**.

15. As a result of the IRS audit program, the §831(b) market has, of course, been substantially constricted, negatively affecting captive managers, their employees, and many others who rely on the captive industry for employment, including residents of the State of Tennessee, which, at least for the moment, enjoys a robust captive insurance marketplace.

16. Although there are hundreds of audits underway, only three §831(b) cases have been tried (all in the U.S. Tax Court) since the audit program began: *Avrahami v. Commissioner,* Tax Ct. Dkt. No. 17594-13, *Caylor Land & Development v. Commissioner*, Tax Ct. Dkt. No. 17204-13, *et seq.,* and *Wilson v. Commissioner,* Tax Ct. Dkt. No. 026547-13.

17. All three of the above-captioned cases were tried before U.S. Tax Court Judge Mark Holmes, who has announced that at least one of the cases will be decided by an *en banc* Tax Court decision to be issued this Summer, thus providing some guidance and a level of certainty for the captive community going forward.

**Promulgation of Notice 2016-66**

18. IRS Notice 2016-66 designates certain "micro-captive transactions" [4]/ as "transactions of interest" (Notice at §3.01) and such designation makes many of their operations "reportable transactions" under 26 CFR 1.6011-4(b)(6).

19. Notice 2016-66 requires reportorial returns covering broad categorical types of activity (§3.05) engaged in by §831(b) captives that (a) had combined claims and administration expenses totaling less than 70% of premiums or (b) engaged in loans with an affiliate. *See* Notice at §2.01(e). This would include the vast majority of §831(b) captives. Indeed, were the same defining characteristics applied to ordinary commercial insurance carriers, many of them would be implicated as well.

20. The defining characteristics set forth immediately above are not prohibited or otherwise deemed contrary to law. *See* 26 U.S.C. §831(b). Indeed, Tax Court precedent has found no fault with loss/expense ratios as low as 1% over extended periods of time [5]/ and has not challenged loans by captives to affiliates. [6]/

---

[4]/ The IRS calls the transactions it describes in Notice 2016-66 "micro-captive transactions" and says those transactions are governed by 26 U.S.C. §831(b). Micro-captive transactions, however, are not governed by §831(b); rather, they are governed by 501(c)(15). "Mini-captive transactions" are covered by §831(b) and match the transactions described in Notice 2016-66. Inasmuch as Notice 2016-66 describes transactions that match mini-captive transactions, and says the transactions it describes are governed by §831(b), it does not appear the IRS intended to label micro-captive transactions as "transactions of interest"; it is simply a mistake in labeling.

[5]/ *See RVI Guaranty v. Commissioner*, 145 T.C. No. 9 (2015) ("An insurer may go many years without paying an earthquake claim; this does not mean that the insurer is failing to provide 'insurance'"); *see also Securitas Holdings, Inc., et al. v. Commissioner,* T.C. Memo 2014-225.

[6]/ *See Rent-a-Center v. Commissioner,* 142 T.C. No. 1 (2014).

21. Despite the permissibility of transactions with such characteristics, Notice 2016-66 authorizes substantial penalties for a failure to report transactions of interest by two distinct classes of persons, as follows:

(a) *First,* insureds, captives, their owners and managers must tell the IRS when they "participate" in a mini-captive transaction. *See* Notice at §3.06, 26 CFR 1.6011-4(a). Failure to do so by the taxpayer incurs a penalty. 26 U.S.C. §6707A.

(b) *Second,* "material advisors" to mini-captive transactions, e.g. lawyers, accountants, and captive managers like the Plaintiff, "shall make a return . . . setting forth certain statutorily enumerated information about the transaction (*See* 26 U.S.C. §6111(a)). Again, failure to do so incurs a penalty. 26 U.S.C. §6707A; *see also Interior Glass Systems, Inc. v. U.S.,* reported at 118 A.F.T.R.2d 2016 5497 (N.D. Cal., decided August 12, 2016) (violation need not be willful and penalty may not be appealable).

22. Material advisors must also maintain a list identifying each person with respect to whom such advisors acted as a material advisor with respect to a reportable transaction and containing such other information as the Secretary of the Treasury may require (26 U.S.C. §6112(a). Once again, failure to comply may incur a penalty. (26 U.S.C. §6708(a)).

23. IRS Notice 2016-66 was issued on November 1, 2016 and went into effect on the same date. *See* Notice at §3.01. On May 1, 2017, informational returns reporting transactions of interest will be due by thousands of taxpayers across the nation, including captives, captive managers, insureds, their owners, and their material advisors. [7]

---

[7] Notice 2017-08 extended the 90 day period to 180 days (Notice at .03), from January 30, 2017 to May 1, 2017 (because April 30 is a Sunday). *Id.*

24. Notice 2016-66 provided no prior notice or mechanism for public comment, but did invite after-the-fact public comment at §4.

25. Many representatives of the captive industry, including the Plaintiff, have supported various legislative and administrative efforts to ameliorate the harsh impact of Notice 2016-66, unfortunately all to no avail. This eleventh-hour lawsuit is now the only remedy available to prevent a grave injustice.

### FIRST CAUSE OF ACTION:
### IRS FAILURE TO OBSERVE NOTICE-AND-COMMENT
### REQUIREMENTS IN VIOLATION OF THE APA

26. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-25 *supra.,* as if fully set forth herein

27. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702.

28. The APA further empowers this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. §706(2)(D).

29. Pursuant to the APA, certain "rules" promulgated by an agency must be published in accordance with notice-and-comment procedures. 5 U.S.C. §553. An agency's failure to comply with notice-and-comment procedures is grounds for invalidating the rule.

30. Notice 2016-66 is a "rule" within the meaning of the APA, defined as the "whole or part of an agency statement of general or particular applicability and future effect designated to implement, interpret, or prescribe law or policy." *See* 26 U.S.C. §551(4).

31. The IRS is an "agency" within the meaning of the APA. *See* 5 U.S.C. §§551(1) and 552(f)(1).

32. Notice 2016-66 qualifies as a "substantive" or "legislative-type" agency rule, which is the type that, prior to its promulgation, must be subjected to the APA's notice-and-comment regime as a matter of law. *See* 5 U.S.C. §553.

33. The APA's four-step notice-and-comment regime requires the following:

(a) *First,* the agency must issue a "general notice of proposed rule-making" that shall be published in the Federal Register (5 U.S.C. §553(b), "not less than 30 days before its effective date." *Id.*

(b) *Second,* "the agency shall give interested persons an opportunity to participate in the rule-making through submission of written data, views or arguments." *Id.* at §553(c).

(c) *Third,* the agency "must consider and respond to significant comments received during the period for public comment." *See Perez v. Mortgage Bankers Ass'n,* 135 S. Ct. 1199. 1203 (2015).

(d) *Fourth*, when the agency files the final rule, it shall include in the rule's text "a concise general statement of [its] basis and purpose." 5 U.S.C. §553.

34. In issuing Notice 2016-66, the IRS failed to comply with the above requirements.

35. No potential exceptions to the notice-and-comment requirements apply to Notice 2016-66 as it is neither an "interpretive rule" under 5 U.S.C.§§553(b)(A), nor was there any finding of good cause to bypass such procedural requirements in accordance with 5 U.S.C. §§553(b)(B), (d)(3).

36. Having failed to comply with the notice-and-comment rulemaking requirements, Notice 2016-66 was promulgated unlawfully and Plaintiff have been and will be adversely affected by Defendants unlawful conduct, which is reviewable by this Court under the APA, 5 U.S.C. §706.

37. The IRS acted unlawfully in promulgating Notice 2016-66 and the Department of the Treasury participated in such unlawful action by the delegation of its authorities and otherwise.

38. Plaintiff, if required to comply with Notice 2016-66, will sustain actual damages that are concrete and particularized in nature.

39. Plaintiff, if compelled to comply with Notice 2016-66, estimate that it will be required to expend hundreds of hours of labor and in excess of $60,000 per year in direct and indirect costs in satisfaction thereof or risk substantial penalties, beginning with the first reporting date on May 1, 2017, and continuing every year thereafter.

## SECOND CAUSE OF ACTION:
## ARBITRARY, CAPRICIOUS AND *ULTRA VIRES* ACTIONS
## IN VIOLATION OF THE APA

40. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 39, *supra.,* as if fully set forth herein.

41. The APA empowers this Court to "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

42. The APA also empowers this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights [*ultra vires* actions]." 5 U.S.C. §706(2)(C).

43. Notice 2016-66 is the result of arbitrary and capricious rulemaking that is not based on a reasoned analysis as legally required by the APA.

44. In Notice 2016-66, Defendants purport to be acting to require informational returns regarding transactions of interest as possible tax avoidance transactions pursuant to existing authority, pointing to 26 CFR 1.6011-4(b)(6) and I.R.C. §§ 6111 and 6112. *See* Notice 2016-66 at 1-2.

45. 26 CFR 1.6011-4(b)(6) merely provides that a transaction of interest is one which

". . . is the same as, or substantially similar to, one of the types of transactions that the IRS has identified by notice, regulation, or other form of published guidance. . ."

46. In adopting 26 CFR 1.6011-4(b)(6), the IRS indicated as follows:

". . . a transaction of interest is a transaction that the IRS and the Treasury Department believe has a potential for tax avoidance or evasion, <u>but for which the IRS and the Treasury Department lack enough information to determine whether the transaction should be identified specifically as a tax avoidance transaction.</u>"

72 FR 434146-01 at p. 2, Transactions of Interest (emphasis added).

47. In sum, the IRS claims legal authority to require the filing of informational returns regarding behavior which it deems a "transaction of interest." Nevertheless, however, the IRS admits it is unable to implicate such behavior in any definable tax avoidance scheme despite having already conducted a substantial number of §831(b) audits.

48. The overwhelming majority—if not all—of the information legitimately needed by the IRS to assess the legal validity of any §831(b) transaction is already available to it through normal channels and filings that do not impose additional burdens or expenses on filers. *See* IRS Form 1120-PC, attached hereto as **Exhibit 4**, the annual tax return which each §831(b) captive is required to file under existing law.

49. The IRS had no rational foundation for the imposition of additional informational return requirements in accordance with Notice 2016-66 consistent with their legal authority to conduct the lawful administrative enforcement of our federal tax laws. Therefore, it is in violation of 5 U.S.C. §706(2)(A).

50. In promulgating Notice 2016-66, the IRS and Treasury have engaged in *ultra vires* behavior in excess of their statutory authority and, therefore, it is in violation of 5 U.S.C. §706(2)(C).

51. Had the IRS permitted and reasonably considered public comment prior to the issuance of Notice 2016-66, it would have been alerted to the above-referenced facts and problems, and it would have had an opportunity to adjust its reportorial demands accordingly. Its failure to do so is further evidence of arbitrary and capricious decision-making.

52. Significant public comment was provided to the IRS after the fact with respect to Notice 2016-66 but the IRS refused to "consider and respond" to such comment and to amend and reissue its reportorial demands accordingly, as required by law. *See* ¶34, *supra.*

53. Plaintiff and numerous other taxpayers, if compelled to comply with Notice 2016-66, will not only be required to expend substantial sums of money in satisfaction thereof;

they will also be wrongfully and irrevocably harmed and aggrieved by the false implication that they are members of the IRS's "Dirty Dozen" and participants in a tax scam.

54. Defendants' unlawful behavior has seriously damaged the Plaintiff who, if compelled to comply with Notice 2016-66, will be required to expend substantial sums of money for years to come in satisfaction thereof, or risk substantial penalties for noncompliance.

55. Notice 2016-66 unfairly implicates many legitimate captives, unnecessarily requires burdensome and expensive filings by a substantial number of taxpayers, and, without foundation, seeks to publicly taint the entire captive industry as one filled with crooked operatives and tax scammers.

56. While the avowed purpose of Notice 2016-66 is to obtain information that will assist the IRS in determining whether captives are being improperly utilized for tax avoidance purposes, it would appear that the IRS seeks to subvert the express will of Congress as embodied in §831(b). [8]/

## THIRD CAUSE OF ACTION:
## REQUEST FOR DECLARATORY JUDGMENT

57. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 56, *supra.,* as if fully set forth herein.

---

[8]/ It also appears that the IRS seeks to undermine the reverse preemption provisions of the McCarran-Ferguson Act, 15 U.S.C. §1011, *et seq.*, which generally bars federal regulation of the insurance industry.

58. The Declaratory Judgment Act, 28 U.S.C. §2201, and Rule 57 of the Federal Rules of Civil Procedure grant this Court authority to declare Plaintiff's legal rights when an actual controversy exists between the parties.

59. As stated herein above, Plaintiff and Defendants have adverse legal interests that are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in accordance with 28 U.S.C. §2201.

60. Defendants failed to comply with the APA's notice-and-comment provisions in promulgating Notice 2016-66.

61. Nothing in this lawsuit seeks to restrain the assessment or collection of taxes, only the arbitrary demand for information unrelated to any instances of such assessment or collection.

62. For the above-described reasons, Plaintiff respectfully requests this Court to declare that Notice 2016-66 violates the notice-and-comment provisions of the APA and to further declare that such Notice is therefore invalid.

**REQUESTS FOR RELIEF**

A. IRS Notice 2016-66 shall be set aside in its entirety as an unlawful rule;

B. Entry of a judgment declaring that Notice 2016-66 is unlawful;

C. Entry of a public structural injunction, enjoining all agencies of the Executive Branch of the Government of the United States from:

   1. enforcing any provision of IRS Notice 2016-66 against any citizen of the United States; and

2. offering into evidence in any judicial proceeding or governmental administrative proceeding any document produced in response to IRS Notice 2016-66;

D. Entry of a public reparative injunction, requiring the IRS to:

1. Destroy or return to individuals with all deliberate speed all materials provided in response to IRS Notice 2016-66; and

2. Provide monthly progress reports to the Court until completion of this responsibility.

E. Recovery of all costs and fees allowable by law and/or equity.

### VERIFICATION

SEAN KING, a Founder and Principal of Plaintiff CIC Services, LLC, in accordance with 28 U.S.C. § 1746, hereby verifies under penalty of perjury that the factual allegations set forth in this complaint, as differentiated from legal representations and conclusions included herein, are true and correct to the best of my knowledge and belief.

_____
SEAN KING

Date: November 12, 202

                              Respectfully submitted,

                              s/   Kenneth A. Lazarus
                              Kenneth A. Lazarus (pro hac vice)
                              LAZARUS & ASSOCIATES
                              1025 Thomas Jefferson St., NW, Suite 110-G
                              Washington, D. C. 20007
                              Tel: (202) 295-2330
                              Email: lazaruslaw@aol.com

-and-

s/ Adam R. Webber
Adam R. Webber (pro hac vice)
FALKE & DUNPHY LLC
30 Wyoming Street
Dayton, Ohio 45409
Tel: (937) 222-3000
Email: webber@ohiolawyers.cc

-and-

s/ John Kizer
E.Jerome Melson (TN Bar No. 013340)
John Kizer (TN Bar No. 029846)
GENTRY TIPTON & McLEMORE P.C.
900 South Gay Street, Suite 2300
Knoxville, Tennessee 37902
Tel: (865) 525-5300, Ext. 124
Email:ejm@tennlaw.com

**Certificate of Service**

This is to certify that on this 12th day of November, 2021, I electronically filed the foregoing Amended Verified Complaint for Injunctive and Declaratory Relief, using the CM/ECF system, which will provide copies of such filing to all counsel of record for the Defendants.

Adam R. Webber
Adam R. Webber
Counsel for Plaintiff