# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| CIC SERVICES, LLC, | ) | |
| | ) | Case No. 3:17-cv-110 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Jill E. McCook |
| INTERNAL REVENUE SERVICE, | ) | |
| DEPARTMENT OF TREASURY, and | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

Before the Court are the following motions:  (1) Plaintiff CIC Services, LLC's ("CIC")

motion to reconsider the scope of preliminary injunction (Doc. 87); (2) CIC's motion for

summary judgment (Doc. 97); (3) Defendants Internal Revenue Service ("IRS"), Department of

Treasury, and the United States of America's (collectively, the "Government") motion for

summary judgment (Doc 99); (4) CIC's objection to the magistrate judge's order denying

discovery (Doc. 105); and (5) the Government's motion to strike CIC's reply brief in support of

its motion for summary judgment (Doc. 116).  For the following reasons, CIC's motion to

reconsider the scope of the preliminary injunction and the Government's motion to strike will be

**DENIED AS MOOT**.  CIC's objection to the magistrate judge's order denying discovery will

be **OVERRULED AS MOOT**.  CIC's motion for summary judgment will be **GRANTED**, and

the Government's motion for summary judgment will be **DENIED**.

## I.    BACKGROUND

### A.  Statutory and Regulatory Background

Through the Internal Revenue Code, Congress requires that certain taxpayers provide the IRS with information regarding "reportable transaction[s]."  26 U.S.C. § 6707A(c)(1).  Congress defines a "reportable transaction" as "any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion."  *Id*.  Consistent with this requirement, Congress delegated to the Secretary of the Department of Treasury (the "Secretary") the authority to "prescribe regulations which . . . provide such rules as may be necessary to carry out the purposes of this section."  26 U.S.C. § 6111(c)(3).  Congress also authorized the IRS to assess penalties to taxpayers and material advisors who fail to make required disclosures regarding reportable transactions.  26 U.S.C. §§ 6707(a), 6708(a).  Taxpayers and material advisors who willfully fail to make required disclosures are potentially subject to criminal prosecution.  *See* 26 U.S.C. § 7203.

Consistent with the authority delegated by Congress, the Secretary has promulgated regulations specifying that taxpayers and material advisors must provide to the IRS information about defined types of reportable transactions, including, but not limited to:

- "Listed transactions"—"a transaction that is the same or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction";

. . .

- "Transactions of interest"—"a transaction that is the same or substantially similar to one of the types of transactions that the IRS has identified by notice, regulation, or other form of published guidance as a transaction of interest."

Case 3:17-cv-00110-TRM-JEM   Document 123   Filed 03/21/22   Page 2 of 16   PageID #: 2152

26 C.F.R. § 1.6011-4(b)(1)–(6).

On November 1, 2016, the IRS issued Notice 2016-66 (the "Notice"). (Doc. 98, at 381–95.) In the Notice, the IRS expressed concern that "micro-captive transactions" had the potential for tax avoidance or evasion and classified these transactions as "transactions of interest" for the purposes of 26 C.F.R. § 1.6011-4 and 26 U.S.C. §§ 6011 and 6012. (*Id*. at 382–83.) Based on this classification, the Notice directs that: (1) "[p]ersons entering into these transactions on or after November 2, 2006, must disclose the transaction" to the IRS; and (2)"[m]aterial advisors who make a tax statement on or after November 2, 2006, with respect to transactions entered into on or after November 2, 2006, have disclosure and maintenance obligations under §§ 6111 and 6112" of the Internal Revenue Code.[1] (*Id*. at 391.) The Notice further provides that taxpayers and material advisors are required to file a disclosure statement regarding these transactions prior to January 30, 2017, and that persons who fail to make required disclosures "may be subject to [ ] penalty" under 26 U.S.C. §§ 6707(a), 6707A, and 6708(a). (*Id*. at 394.) Finally, the Notice requests comment "on how the transaction might be addressed in published guidance." (*Id*. at 395.)

### B. Procedural History

On March 27, 2017, CIC initiated the present action.[2] (Doc. 1.) According to its initial verified complaint, CIC is "a manager of captive insurance companies." (*Id*. at 3.) In this capacity, CIC asserts that it is subject to the Notice's disclosure requirements for material advisors and that complying with the Notice's disclosure requirements will force it to incur

---

[1] The IRS subsequently issued Notice 2017-08, which extended the deadline for required disclosure of the transactions at issue to May 1, 2017. (*See id*. at 416.)

[2] Initially, Ryan LLC was also named as a plaintiff in this action. (Doc. 1.) Ryan LLC, however, was removed as a plaintiff in CIC's amended complaint. (*See* Doc. 104.)

significant costs. (*Id*. at 10.) CIC asserts, however, that the Notice: (1) constitutes a "legislative-type rule" that fails to comply with mandatory notice-and-comment requirements under the Administrative Procedures Act ("APA"), 5 U.S.C. § 533, *et seq*.; and (2) is "arbitrary and capricious and *ultra vires* in nature." (*Id*. at 2.) Based on these allegations, CIC's initial verified complaint sought, among other things, a preliminary injunction prohibiting the IRS from enforcing the disclosure requirements set forth in the Notice based on the IRS's failure to comply with the APA's notice-and-comment requirements. (*Id*.)

On April 21, 2017, the Court denied the initial motion for preliminary injunction, finding that CIC was unlikely to succeed on the merits of its claims because the claims were foreclosed by Anti-Injunction Act ("AIA"). (Doc. 24.) Then, on November 2, 2017, the Court dismissed the case, finding it lacked subject-matter jurisdiction because the claims were barred by the AIA. (Docs. 35, 36.) CIC appealed the Court's dismissal of its claims, and, ultimately, on May 19, 2021, the Supreme Court of the United States held that the AIA did not deprive the Court of subject-matter jurisdiction over CIC's claims against the IRS. *CIC Servs., LLC v. I.R.S*, 141 S.Ct. 1582 (2021).

On July 12, 2021, after the mandate was returned to this Court, the Court entered a scheduling order. (Doc. 57.) CIC then filed a renewed motion for preliminary injunction, again seeking to enjoin the IRS's enforcement of Notice 2016-66. (Doc. 59.) On September 15, 2021, CIC moved the Court to reconsider its scheduling order, arguing that it should be modified "to permit discovery into the IRS's basis for Notice 2016-66." (Doc. 80, at 1.) It also filed a motion seeking to supplement the administrative record, arguing that the administrative record filed by the IRS was "wholly inadequate." (Doc. 84.)

4

On September 21, 2021, the Court granted CIC's motion for preliminary injunction, finding that CIC was likely to succeed on its claim that Notice 2016-66 is a legislative rule that is invalid because the IRS failed to observe the notice-and-comment procedures required by the APA. (Doc. 82.) As a result, the Court enjoined the IRS from enforcing Notice 2016-66 against CIC. (*Id*. at 12.) On October 18, 2021, CIC filed a motion for reconsideration, arguing that the Court's injunction was too narrow and that the preliminary injunction should "enjoin the enforcement of Notice 2016-66 *in toto*." (Doc. 87.) On November 1, 2021, consistent with the Court's scheduling order, the parties filed cross-motions for summary judgment. (Docs. 97, 99.)

On November 4, 2021, United States Magistrate Judge H. Bruce Guyton entered an order denying CIC's motion requesting discovery into the IRS's basis for Notice 2016-66 and denying CIC's motion to supplement and complete the administrative record. (Doc. 101.) CIC, after filing an amended verified complaint,[3] objected to Magistrate Judge Guyton's order to the extent it denied the opportunity to conduct discovery in this case. (Doc. 105.)

The parties then filed response briefs in support of their cross-motions for summary judgment. (Docs. 112, 113.) On January 21, 2022, CIC filed a reply brief in support of its summary-judgment motion. (Doc. 114.) The IRS then moved to strike CIC's reply brief, or in the alternative, for leave to file a sur-reply. (Doc. 116.)

On March 3, 2022, the United States Court of Appeals issued its opinion in *Mann Construction. v. United States*, Case No. 21-1500, __ F.4th __, 2022 WL 619822 (6th Cir. 2022).

---

[3] On November 12, 2021, CIC filed an amended verified complaint, which it represents is "identical" to its initial complaint, except that "it reflects the following changes: (1) former-Plaintiff Ryan has been removed and references to 'plaintiffs' have been made singular; (2) consistent with the voluntary dismissal of the Complaint's third cause of action (see Doc. 97), this cause of action has been omitted; (3) the requests for relief have been amended consistent with the proposed amendments (see Doc. 89)." (Doc. 104, at 1.)

Because *Mann Construction* bears on many of the issues presented in this case, the Court entered

an order inviting the parties to file supplemental briefing as to its effect on this case (Doc. 120),

which the parties have now done (Docs. 121, 122).  The parties' cross-motions for summary

judgment are ripe for the Court's review.

## II.    ANALYSIS

### A.  The Parties' Cross-Motions for Summary Judgment

In cases challenging whether an administrative agency complied with the requirements of

the APA, the normal summary-judgment standard set forth in Rule 56(a) of the Federal Rules of

Civil Procedure does not apply.  *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013); *Oak

Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 808 (E.D. Tenn. 2019).  Rather, the

Court's role is limited to reviewing the administrative record to determine if the agency complied

with the requirements of the APA.  *Coe*, 968 F. Supp. 2d at 239 ("Summary judgment thus

serves as the mechanism for deciding as a matter of law, whether the agency action is supported

by the administrative record and otherwise consistent with the APA standard of review.").  In

making this determination, "the agency resolves factual issues to arrive at a decision that should

be supported by the administrative record."  *Oak Ridge*, 968 F. Supp. 3d at 808 (quoting

*Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007))."  The Court

must "determine whether or not the evidence in the [administrative] record permitted the agency

to make the decision it did."  *Id*.  The APA directs that a court "shall . . . hold unlawful and set

aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, and abuse of

discretion, or otherwise not in accordance with law" or "without observance of procedure

required by law."  5 U.S.C. § 706(2)(A), (D).

### i. *Notice and Comment under the APA*

In its first cause of action, CIC asserts that the IRS unlawfully promulgated Notice 2016-66 because it is a "legislative rule" under the APA, and the IRS failed to observe notice-and-comment procedures required by the APA.[4] (Doc. 104, at 9–11; *see also* Doc. 97, at 4–8.) The IRS does not contend that it complied with the APA's notice-and-comment requirements but argues that Congress exempted it from the APA's notice-and-comment requirements, or, alternatively, that the Notice constitutes an interpretive rule which does not require notice and comment. (Doc. 99-1, at 8–21.)

In *Mann Construction*, the Sixth Circuit rejected the IRS's arguments in connection with a similar IRS notice that designated "certain employee-benefit plans featuring cash-value life insurance policies" as "listed transactions" and required taxpayer disclosure of participation in such plans. 2022 WL 619822, at *1. After failing to disclose participation in such a plan, the IRS imposed penalties on Mann Construction. *Id*. at *1–2. Mann Construction challenged the validity of the IRS notice, arguing, among other things, that the notice failed to comply with the notice-and-comment requirements set forth in the APA. *Id*. On appeal, the IRS did not dispute that it did not follow notice-and-comment procedures when it issued the notice but argued that the notice was merely an interpretive rule which did not require notice and comment and that, even if the notice was a legislative rule, Congress exempted it from the APA's requirements with respect to its disclosure rules. *Id*. at *2. The Sixth Circuit expressly rejected these arguments, holding that the IRS's notice regarding disclosure obligations for listed transactions constituted a

---

[4] In connection with this argument, CIC's third cause of action seeks a declaratory judgment that the Notice is invalid because it violates the notice-and-comment provisions of the APA. (Doc. 104, at 14–15.)

legislative rule and that Congress did not exempt the IRS from complying with the notice-and-comment requirements set forth in the APA.  *Id*. at *3–7.

The Sixth Circuit's analysis in *Mann Construction* is binding on this Court and applies equally to the arguments advanced by the IRS regarding Notice 2016-66 in this case. Accordingly, and for the same reasons previously stated by the Court in granting CIC's motion for preliminary injunction (Doc. 82, at 6–10), Notice 2016-66 is a legislative rule that is invalid because the IRS failed to observe notice-and-comment procedures required by the APA.

### ii.   *Arbitrary and Capricious under the APA*

CIC also argues that the Notice must be set aside under the APA because the IRS acted arbitrarily and capriciously in issuing the Notice.  (Doc. 97, at 8–14.)  A court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  7 U.S.C. § 706(2)(A).  In determining whether an agency action is arbitrary and capricious under the APA, courts "determine only whether the [agency] examined 'the relevant data' and articulated 'a satisfactory explanation' for [its] decision, 'including a rational connection between the facts found and the choice made.'"  *Dep't of Com. v. New York*, 139 S.Ct. 2551, 2569 (2019) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Atrium Med. Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 766 F.3d 560, 567 (6th Cir. 2014) ("[A]n agency's decreed result must be within the scope of its lawful authority" and "the process by which it reaches that result must be logical and rational.").  A court "may not substitute [its] judgment for that of the [agency], but instead must confine [itself] to ensuring that [the agency] remained 'within the bounds of reasoned decisionmaking.'"  *Dep't of Com.*, 139 S. Ct. at 2569  (quoting *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105

(1983)).  In reviewing the agency action, "a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."  *Dep't of Com.*, 139 S. Ct. at 2573.  Courts then examine the administrative record to determine if the agency

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Atrium Med. Ctr.*, 766 F.3d at 567 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).  The standard of review is "narrow," and the reviewing court will "uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned."  *Id*.  The agency's reasoning, however, must be "discernable and defensible."  *Id*. at 568.

Through the Internal Revenue Code, Congress requires that certain taxpayers provide the Internal Revenue Service ("IRS") with information regarding "reportable transaction[s]," which is defined as "any transaction . . . which the Secretary determines as having a potential for tax avoidance or evasion.  26 U.S.C. § 6707A(c)(1).  Consistent with this authority the Secretary has promulgated regulations specifying that taxpayers and material advisors must provide to the IRS information about "[t]ransactions of interest," which are "transaction[s] that [are] the same or substantially similar to one of the types of transactions that the IRS has identified by notice, regulation, or other form of published guidance as a transaction of interest."  26 C.F.R. § 1.6011-4(b)(6).  Under this framework, the IRS undoubtedly has the authority to seek information from taxpayers regarding transactions that the Secretary determines as having a potential for tax avoidance or evasion.  Nonetheless, under the APA, the Court must review the administrative record to determine whether the IRS "examined the relevant data" and "articulated a satisfactory explanation" for its decision to designate micro-captive transactions as a "transaction of interest" based on the potential for tax avoidance or evasion.  *See Dep't of Com.*, 139 S.Ct. at 2569.

9

In this case, the administrative record fails to include relevant data and facts supporting

the IRS's decision to designate micro-captive arrangements as transactions of interest, and, thus,

reportable transactions.  In relevant part, the Notice states:

> The Department of Treasury ("Treasury Department") and the Internal Revenue
> Service (the "IRS") **are aware of a type of transaction**, described below, in
> which a taxpayer attempts to reduce the aggregate taxable income of the taxpayer,
> related persons, or both using contracts that the parties treat as insurance contracts
> and a related company that the parties treat as a captive insurance company.  Each
> entity that the parties treat as an insured entity under the contracts claims
> deductions for premiums for insurance coverage.  The related company that the
> parties treat as a captive insurance company elects under § 831(b) of the Internal
> Revenue Code (the "Code") to be taxed only on investment income and therefore
> excludes the payments directly or indirectly received under the contracts from its
> taxable income.  The manner in which the contacts are interpreted, administered,
> and applied is inconsistent with arm's length transactions and sound business
> practices.
>
> **The Treasury Department and the IRS believe this transaction ("micro-
> captive transaction") has a potential for tax avoidance or evasion**.  <u>See</u> IR-
> 2016-25 (discussing characteristics of an abusive micro-captive insurance
> structure).  **However, the Treasury Department and the IRS lack sufficient
> information to identify which § 831(b) arrangements should be identified
> specifically as a tax avoidance transaction and may lack sufficient
> information to define the characteristics that distinguish the tax avoidance
> transactions from other § 831(b) related-party transactions**.  This notice
> identifies the transaction described in section 2.01 of this notice and substantially
> similar transactions as transactions of interest for purposes of § 1.6011-4(b)(6) of
> the Income Tax Regulations and §§ 6111 and 6112 of the Code.  This notice also
> alerts persons involved in such transactions to certain responsibilities and
> penalties that may arise from their involvement with these transactions.

(Doc. 98, at 381–82 (emphasis added).)  The Notice simply states that the IRS is aware of micro-

captive transactions and "believes" these transactions have the potential for tax avoidance or

evasion.  (*Id*.)  While the Notice goes on to describe these transactions, it does not identify any

facts or data supporting its belief.  (*Id*.)  The IRS's executive summary regarding the Notice

similarly fails to provide underlying facts and data; rather, in the section titled "Reason Guidance

Initiated," the summary simply provides:

> **In recent years the Service has become aware of a large number of these arrangements**. For the past two years the arrangement has been among the abusive tax shelter's on the Service's "Dirty Dozen" list of tax scams. See e.g., IR-2016-25 ad IR-2015-19. Though many taxpayers are under audit and several are in litigation for using this arrangement, the Service is concerned that it is not fully aware of the breadth of this arrangement to capture all variants exhibiting the characteristics that make the arrangement potentially abusive and how to distinguish the tax avoidance transactions from other §831(b) related-party transactions

(*Id*. at 375 (emphasis added).)  Again, while the executive summary states that taxpayers are under audit and in litigation for using this arrangement, it does not include any underlying facts or data explaining how it became aware of "a large number of these transactions" or facts regarding taxpayers under audit and in litigation that explain how this transaction has the potential for tax avoidance or evasion.  This executive summary also cites to two IRS news releases from 2015 and 2016, which are included in the administrative record, in which the IRS identifies micro-captive insurance arrangements a potentially  "abusive tax structure."  (*Id*. at 11–18.)  The news releases, however, do not include any underlying facts or data supporting the IRS's determination that micro-captive insurance arrangements have the potential for tax evasion.  (*Id*.)  Internal IRS and Department of Transportation e-mails in the administrative record also do not include any underlying facts or data.   (*Id*. at 366–74.)  Instead, these e-mails merely circulate draft and final versions of the Notice.  (*See id*.)

Finally, the administrative record includes:  (1) prior IRS notices issued in 2002 and 2004 regarding "Certain Reinsurance Arrangements" (*id*. at 4–9); (2) selected federal statutes and legislative history (*id*. at 19–132); and (3) selected cases regarding insurance and captive insurance (*id*. at 133–365).  In arguing that the administrative record includes sufficient facts to support its decision, the IRS does not explain how its previously issued notices or the statutes and legislative history included in the administrative record provide the facts or data necessary to comply with the APA but notes that it "compiled cases in which a court found the tax payer

11

engaged in an abusive transaction."[5]  (Doc. 112, at 14.)  The cases in the administrative record,

however, are not limited to micro-captive transactions, and not all of the cases conclude that the

taxpayer engaged in an abusive transaction.  *See e.g.*, *Amerco, Inc. v. Comm'r of I.R.S.*, 979 F.2d

162 (9th Cir. 1992) (holding that "it is possible to have a true insurance transaction between a

corporation and its wholly owned subsidiary company if that captive company does substantial

unrelated business"); *Amerco, Inc. v. Comm'r of I.R.S.*, 96 T.C. 18 (1991); *Harper Grp. v.

Comm'r of I.R.S.*, 979 F.2d 1341 (9th Cir. 1992) (holding that true insurance transaction occurred

between corporation and wholly owned insurance company based on subsidiary's substantial

unrelated business); *Harper Grp. v. Comm'r of I.R.S.*, 96 T.C. 45 (1991); *Helvering v. Le Gierse*,

312 U.S. 531 (1941) (holding contracts entered into by decedent one month before death did not

include an insurance risk, and, thus were a taxable part of decedent's estate); *Rent-A-Center*, 142

T.C. 1 (2014) (finding agreements between brother-sister entities constituted insurance and that

certain payments to the captive insurer were deductible as insurance expenses); *United Parcel

Serv. of Am. v. Comm'r of I.R.S.*, 254 F.3d 1014 (11th Cir. 2001) (holding that taxpayer's

restructuring of its excess-value business as insurance provided by overseas affiliate had

sufficient economic substance and was not a sham transaction); *but see Salty Brine I, Ltd. v.

United States*, 761 F.3d 484 (5th Cir. 2014) (affirming district court's determination that royalty

interest transaction lacked economic substance, was entered into for tax avoidance, and should

be disregarded for tax purposes); *Clougherty Packaging Co. v. Comm'r of I.R.S.*, 811 F.2d 1297

(9th Cir. 1987) (holding that premiums paid by parent corporation to wholly owned subsidiary

captive insurer may not be deducted as necessary business expenses).  Simply including cases in

---

[5] The IRS's brief also cites to additional cases in which a tax court found that taxpayers used
micro-captive arrangements abusively (*see* Doc. 112, at 14), but those cases are not included in
the administrative record.

the administrative record that suggest certain tax structures could be abusively employed is not

synonymous with examining relevant facts and data in connection with issuing the Notice.

While the IRS may ultimately be correct that micro-captive insurance arrangements have

the potential for tax avoidance or evasion and should be classified as transactions of interest, the

APA requires that the IRS examine relevant facts and data supporting that conclusion. The

administrative record in this case simply does not include underlying facts and data showing that

micro-captive insurance arrangements have a potential for tax avoidance or evasion. As a result,

the Notice must also be set aside as agency action that is arbitrary and capricious.[6]

## B. Relief

Having found that the IRS failed to engage in notice-and-comment procedures required

by the APA and that its issuance of the Notice was arbitrary and capricious, the Court must now

determine the appropriate relief. In its amended complaint, CIC requests that the Court:

(1) enter a judgment declaring the Notice unlawful and setting it aside; (2) enjoin all agencies

from enforcing the notice and offering documents produced by any individual or entity in

response to the Notice in judicial or administrative proceedings; and (3) require the IRS to

destroy or return materials produced in response to the Notice. (Doc. 104, at 15–16.)

Conversely, the IRS argues that the Court need not set aside the Notice and, instead, should

remand the rule to the IRS and leave in place the rule pending promulgation of a new or

---

[6] Having determined that the Notice must be set aside as agency action that is arbitrary and capricious based on the current administrative record, the Court need not resolve CIC's argument that it is entitled to limited discovery to support its arguments that the IRS acted arbitrarily and capriciously. Accordingly, the Court **OVERRULES AS MOOT**, CIC's objections to Magistrate Judge Guyton's order denying CIC's motions to conduct discovery and supplement the administrative record (Doc. 105). The Court notes, however, that, even based on a *de novo* review, it agrees with Magistrate Judge Guyton's well-reasoned analysis and conclusions in his order denying CIC's motions.

amended rule.  (Doc. 112, at 18–27.)  The IRS alternatively argues that the Court should limit

vacatur of the Notice to CIC and should not grant any of CIC's requested injunctive relief.  (*Id.*)

The text of the APA provides that the reviewing court "shall . . . **hold unlawful and set**

**aside** agency action, findings, and conclusions found to be . . . arbitrary, capricious, and abuse of

discretion, or otherwise not in accordance with law" or "without observance of procedure

required by law."  5 U.S.C. § 706(2)(A), (D) (emphasis added).  Consistent with the text of the

APA, in *Mann Construction*, the Sixth Circuit expressly stated that, "[b]ecause the IRS's process

for issuing Notice 2007-83 did not satisfy the notice-and-comment procedures for promulgating

legislative rules under the APA, **we must set it aside**."  2022 WL 619822, at \*1 (emphasis

added).  The United States Court of Appeals for the District of Columbia, however, has held that

"[a]n inadequately supported rule, however, need not necessarily be vacated," and "the decision

to vacate depends on the seriousness of the order's deficiencies . . . and the disruptive

consequences of an interim change that may itself be changed."  *Allied-Signal, Inc. v. U.S.*

*Nuclear Regul. Comm'n.*, 988 F.2d 146, 150 (D.C. Cir. 1993).

In this case, vacating the Notice in its entirety is appropriate.  The IRS did not comply

with notice-and-comment procedures, and it acted arbitrarily and capriciously.  While it may be

able to rectify these deficiencies if it pursues promulgating a new rule,[7] nothing about its actions

supports leaving the Notice in place while it takes the actions necessary to comply with the APA

or vacating the Notice as to CIC only, especially given the Sixth Circuit's prior observations that

the IRS "does not have a great history of complying with APA procedures," *CIC Servs., LLC v.*

---

[7] The Court's vacatur of the Notice should not be construed as limiting the IRS's ability to
promulgate a new rule in compliance with the APA.

*I.R.S.*, 925 F.3d 247, 258 (6th Cir. 2019), and that it does not follow the basic rules of administrative law, *CIC Servs., LLC v. I.R.S*, 936 F.3d 501, 507 (6th Cir. 2019).

At least some of CIC's requests for permanent injunctive relief are also warranted. The Notice has required taxpayers and material advisors to expend time and resources, which they cannot recoup, to comply with the Notice's reporting requirements for more than four years. In turn, the IRS has received documents and information it was not entitled to because it failed to comply with the APA. Under these circumstances, it is entirely reasonable and equitable to require the IRS to return to the taxpayers and material advisors information and documents it collected pursuant to the Notice. The Court will not, however, enter an injunction barring agencies from offering documents produced by any individual or entity in response to the Notice in judicial or administrative proceedings. The Notice is merely one source of information for the IRS, and granting such relief risks depriving the IRS of the use of such documents for the public's benefit even if it acquires them lawfully in the future. The IRS may attempt to promulgate an APA-compliant rule requiring taxpayers and material advisors to produce the same information in the future. The Court declines CIC's invitation to, in effect, create future litigation over how and when the IRS received information in its possession. Accordingly, the Court will order that the IRS return all documents and information produced pursuant to the Notice to taxpayers and material advisors.

### III.    CONCLUSION

For the following reasons, CIC's motion to reconsider the scope of the preliminary injunction (Doc. 87) and the Government's motion to strike (Doc. 116) are **DENIED AS MOOT**. CIC's objection to the magistrate judge's order denying discovery (Doc. 105) is

**OVERRULED AS MOOT**. CIC's motion for summary judgment (Doc. 97) is **GRANTED**, and the Government's motion for summary judgment (Doc. 99) is **DENIED**.

The Court will enter judgment: (1) vacating the Notice in its entirety; and (2) ordering the IRS to return all documents and information produced pursuant to the Notice to taxpayers and material advisors.

**AN APPROPRIATE JUDGMENT WILL ENTER**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**