# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

CIC SERVICES, LLC,                          )
                                            )
       Plaintiff,                          )    Case No. 3:17-cv-110
                                            )
       v.                                  )    Judge Travis R. McDonough
                                            )
INTERNAL REVENUE SERVICE, ET AL.,           )    Magistrate Judge Jill E. McCook
                                            )
       Defendants.                         )
_____)

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF INJUNCTIVE RELIEF

Shortly after the Sixth Circuit issued an opinion in <u>Mann Construction</u>, this Court granted summary judgment in favor of CIC. (Dkt. 123 (relying on <u>Mann Constr., Inc. v. United States</u>, 27 F.4th 1138 (6th Cir. 2022))). The Court ruled not only on the merits of this case, but also granted CIC and nonparties broad injunctive relief, ordering the IRS "to return to taxpayers and material advisors all documents and information produced pursuant" to Notice 2016-66. (Dkt. 124).

The Court never provided the Government an opportunity to present arguments as to the appropriateness of that relief. Yet the Court previously directed that briefing on CIC's request for broad injunctive relief—a public structural injunction and a public reparative injunction—would occur only after the Court addressed the validity of Notice 2016-66. (<u>See</u> dkt. 103 at 2). Because the Court lacked that briefing, and since the Government's arguments show the Court should not have granted the relief it did, the Court should grant this motion for reconsideration and dissolve the injunction as to nonparties.

As an initial matter, ruling before allowing the Government to present its arguments constituted manifest error. Moreover, had the Court allowed briefing, the Government would

have explained the numerous reasons the Court should not have granted the injunction. To start, the Administrative Procedure Act does not allow the Court to compel an agency to take an action not otherwise demanded by law. Even if it did, CIC lacked standing to seek the injunction and the Court thus lacked jurisdiction to grant it, at least as to nonparties. And even if the injunction were permissible under the APA and Article III, the Court erred in granting it because traditional equitable factors do not support it.

In any event, the Court should clarify the terms of the injunction so the IRS clearly understands what documents the Court requires it to return. For all these reasons, the Court should grant the Government's motion to reconsider the injunctive relief it issued in this case.

## PROCEDURAL HISTORY

CIC filed its complaint in this action in 2017 seeking: (1) an order permanently enjoining the IRS from enforcing Notice 2016-66; and (2) a judgment declaring Notice 2016-66 unlawful. (Dkt. 1 at 16). That complaint did not seek any remedy requiring an affirmative act of the IRS. (Id.).

On the eve of dispositive motions, CIC filed a motion to amend its complaint to request two new forms of relief: (1) entry of a "public structural injunction" preventing the Government from using any documents obtained from Notice 2016-66 in "any judicial proceeding or governmental administrative proceeding"; and (2) a "public reparative injunction," requiring the IRS to "[d]estroy or return to individuals with all deliberate speed all materials provided in response to Notice 2016-66." (Dkt. 89 at 1–2).

The Government opposed that amendment. (Dkt. 95). It noted that the amended complaint "raises a host of complex questions of law," including "the scope of relief available under the APA, and CIC's Article III and prudential standing to seek such broad relief." (Id. at

1–2). The Government also pointed out that the timing of CIC's request risked requiring the parties to tackle these complex issues only days before dispositive motions were due. (Id. at 2). It concluded by asking the Court, if it granted the relief, to postpone briefing on the additional prayers for relief until after the Court ruled on dispositive motions. (Id. at 3).

Magistrate Judge Guyton allowed the amendment, but deferred briefing as the United States suggested. (Dkt. 103). The order stated that:

> The Court will later set a briefing schedule, if necessary, with respect to Plaintiff's request for a public structural injunction and a public reparative injunction after the dispositive motions have been decided.

(Id. at 2).

Relying on the Court's order, the Government did not address this newly requested relief in its opposition to CIC's dispositive motion. (Dkt. 112 at 23 n.7 ("The government does not address CIC's demands for a structural or reparative injunction in this brief because the Court stated a separate briefing schedule will be set for those topics, if necessary, 'after the dispositive motions have been decided.'") (quoting dkt. 103 at 2)).[1] Similarly, in its motion to strike CIC's attempt to file a reply brief, the Government did not address these arguments because, as it noted, those arguments were to "be addressed after rulings on the dispositive motions." (Dkt. 116 at 4 (citing dkt. 103 at 2)).

The Government was not alone in its interpretation of Magistrate Judge Guyton's order. When CIC opposed the Government's motion for summary judgment, it argued only for the relief it sought in the original complaint. (Dkt. 114 at 2–6). Its brief conceded that briefing on the

---

[1] This order issued after the deadline to file for summary judgment. Because the Court did not allow CIC to amend the complaint until after the Government filed its dispositive motion, the Government did not address the new prayers for relief in its motion for summary judgment. (Dkt. 99-1).

3

additional relief it sought in its amended complaint would only be briefed "after the cross-motions for summary judgment have been decided." (Id. at 9).

## STANDARD OF REVIEW

The Court is already familiar with the standard of review for a motion to reconsider. (See dkt. 106 at 4–5). Courts should grant a Rule 59(e) motion when there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." Clark v. United States, 764 F.3d 653, 661 (6th Cir. 2014) (quoting Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv., 616 F.3d 612, 615 (6th Cir. 2010)). The motion should only advance new arguments, not those that were (or could have been) presented earlier. Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998).

Usually in the motion for reconsideration context, the burden the movant must meet is a heavy one, as the relief is an "extraordinary remedy." See Wright & Miller, Fed. Prac. & Proc. § 2810.1; see also Leisure Caviar, LLC, 616 F.3d at 615. But where a court decides a case on grounds not submitted or briefed by the parties, "a motion for reconsideration not only serves an invaluable function, but a refusal to consider the motion may constitute an abuse of discretion." In re Sulfuric Acid Antitrust Litig., 446 F. Supp. 2d 910, 913 (N.D. Ill. 2006) (citing De Jesus-Mangual v. Rodriguez, 383 F.3d 1, 5–6 (1st Cir. 2004); Loeffel Steel Prods., Inc. v. Delta Brands, Inc., 387 F. Supp. 2d 794, 822 (N.D. Ill. 2005)).

## ARGUMENT

The Court should grant the motion to reconsider for three independent reasons. First, the Court ruled before affording the Government an opportunity to argue about the appropriateness of the relief. Second, the Court committed legal error in granting the relief, because the Court's injunction is invalid under the Administrative Procedure Act, Article III, and traditional

principles of equity. And third, even if the Court disagrees that it committed legal error, it should still revisit the injunction to provide the IRS sufficient guidance as to how it should proceed under the Court's order.

## I.     It is clear error for a court to grant relief without allowing a party the opportunity to oppose that relief.

The Court erred in granting injunctive relief without providing the Government the opportunity to oppose it. A litigant should be given the opportunity to brief an issue before the court rules on that issue. Redding v. St. Eward, 241 F.3d 530, 534 (6th Cir. 2001). The policies behind this are obvious—when a court resolves "a complex and fact-intensive question without the benefit of full briefing," it "invites" error. Comcast Corp. v. Behrend, 569 U.S. 27, 40 (2013) (Ginsburg, J., dissenting). The adversarial system "depends upon input from counsel." Sulfuric Acid Antitrust Litig., 446 F. Supp. 2d at 913. When a court acts without allowing input from both sides, there is an "enhanced" risk that the court rules in error, and in such circumstances, a motion for reconsideration "serves an invaluable function." Id.

Likewise, the absence of briefing also deprives the appellate tribunal of the opportunity to understand the district court's responses to the losing party's arguments, and creates the issue of whether (and how) the non-prevailing party should (or could) have preserved issues for appeal. And here, the Court deprived the Government of its opportunity to have its substantive legal arguments addressed without having to meet the standard of Rule 59(e).[2]

The record makes plain that the Court did not receive briefing on these issues from the Government. As noted above, when the Government opposed CIC's motion to amend the

---

[2] If the Court reviews the Government's substantive legal arguments (see II, *infra*) under the standard in Rule 59(e), it will do so having never given those arguments review under the general *de novo* standard applied when reviewing a legal issue in the first instance. There is no reason to deprive the Government of an opportunity for review under a *de novo* standard.

complaint, it explained to the Court that the amended complaint "raises a host of complex questions of law," including questions about "the scope of relief available under the APA, and CIC's Article III and prudential standing to seek such broad relief." (Dkt. 95 at 1–2). In granting the motion to amend the complaint, Magistrate Judge Guyton expressly provided that "[t]he Court will *later* set a briefing schedule, if necessary, with respect to" the additional relief sought in the amended complaint. (Dkt. 103 at 2) (emphasis added). The Government relied on this assurance in holding its arguments in abeyance in subsequent briefing. (See dkt. 112 at 23 n.7; dkt. 116 at 4). The Government's interpretation of Magistrate Judge Guyton's order was reasonable; CIC interpreted the order in the same way. (Dkt. 114 at 2–6, 9 (acknowledging additional relief it sought in its amended complaint would be considered only "after the cross-motions for summary judgment have been decided")).

The Court should recognize that ruling on issues without briefing—where the opportunity for briefing was deferred and the deferral order was reasonably relied upon—is a manifest injustice as a matter of law. That basis, alone, should prompt the Court to enter an order dissolving the injunction—at least as to nonparties—until such time that it receives full briefing from the parties as to the appropriateness of that relief.

## II.    The law does not support the Court's grant of injunctive relief requiring the IRS to return documents it obtained pursuant to Notice 2016-66 to nonparties.

The Court's order contains three separate errors of law, each of which independently justify reconsideration.[3] First, the Administrative Procedure Act limits the affirmative remedies available under the statute. Because the Court's order exceeds those limitations, the injunction is

---

[3] The IRS will return to CIC the Form 8918 it filed pursuant to Notice 2016-66 with the Office of Tax Shelter Analysis ("OTSA"), assuming the original document can be located. The Government does not concede that CIC is entitled to this relief under the APA or any other source of law, but will take this action voluntarily to simplify the issues before the Court.

statutorily invalid under the APA. Second, CIC lacked standing to seek an injunction requiring the return of documents to nonparties, making that aspect of the Court's order constitutionally invalid under Article III. And third, even if the statute and the Constitution allowed for it, the Court's injunction would still be invalid under traditional equitable principles. Any one of these errors warrants reconsideration, and together, they require it.

**A.      The Court's injunction exceeds the scope of relief permissible under the Administrative Procedure Act.**

At CIC's request, the Court ordered the IRS "to return to taxpayers and material advisors all documents and information produced pursuant" to Notice 2016-66. (Dkt. 124). This directive—compelling the IRS to act—runs afoul of the APA's limitation on ordering agency action not otherwise required by law. CIC brought this suit under the APA, and that statute limits affirmative injunctive relief to actions required by law. There is no statute or regulation requiring the Service to return documents it obtains from taxpayers without receiving a request for that information, and thus the Court cannot compel the Service to do so.

CIC advanced two causes of action in this litigation, both complaining of unlawful agency action. (See dkt. 104 at 2). First, CIC argued that Notice 2016-66 was an agency action accomplished "without observance of procedure required by law." (Id. at 9). Alternatively, CIC alleged that Notice 2016-66 was arbitrary and capricious. (Id. at 11). In its amended complaint, CIC invoked only 5 U.S.C. § 702 as the source of its causes of action. (Id. at 2, 9).[4] Because this is an APA suit, that Act limits the relief CIC can obtain.

---

[4] CIC attempted to plead a third cause of action under the Declaratory Judgment Act. (Dkt. 104 at 14–15 (citing 28 U.S.C. § 2201)). The Declaratory Judgment Act is procedural only, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950), and does not create an independent cause of action, Davis v. United States, 499 F.3d 590, 594 (6th Cir. 2007).

In the Administrative Procedure Act, Congress struck a balance between oversight and interference. Cf. Walter Gellhorn, The Administrative Procedure Act: The Beginnings, 72 VA. L. REV. 219, 230–31 (1986) (citing S. Rep. No. 752, 79th Cong., 1st Sess. 37–38 (1945)). Through the Act, Congress prescribed procedures that agencies must follow in setting policy. E.g., 5 U.S.C. §§ 553 and 554. And to ensure enforcement of those procedures, Congress created a private cause of action, allowing any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to bring a challenge in a federal court. 5 U.S.C. § 702.

At the same time, Congress seemed to recognize that § 702's broad grant of jurisdiction risked excessive interference with the Executive Branch. Thus, Congress limited the relief available upon a successful APA challenge. See 5 U.S.C. § 706. Where an agency has acted unlawfully, § 706(2) allows a federal court to set aside the offending action. Where an agency has not taken an action demanded by a party, § 706(1) empowers a federal court—under certain limited circumstances—to compel the agency to take the requested action.

The circumstances under which a federal court can compel agency action are narrow. Under Supreme Court precedent, "[t]he only agency action that can be compelled under the APA is action legally required . . . The limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law." Norton v. S. Utah Wilderness All., 542 U.S. 55, 63–65 (2004). An action is "legally required" only to the extent a statute or regulation "unequivocally requires" it. Sierra Club v. Thomas, 828 F.2d 783, 793 (D.C. Cir. 1987).

In this case, CIC invoked § 706(2) and sought to have Notice 2016-66 set aside. CIC's amended complaint also asked the Court to compel agency action, demanding the IRS return

documents it acquired pursuant to the Notice. (Dkt. 104 at 15–16). That demand must be analyzed under § 706(1), and could only be valid in the event a statute or regulation unequivocally required the Service to take the demanded action. See In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig., 751 F.3d 629, 634 (D.C. Cir. 2014) (describing "§ 706(1)'s exacting requirements").

In Long-Distance Telephone (a class action), the district court set aside a refund program created by the IRS and remanded the issue to the agency. Id. The named plaintiffs appealed, asking the Court of Appeals to command the IRS to "promulgate a new refund procedure." Id. The D.C. Circuit rejected that request because it ran afoul of § 706(1). It held that section only permits relief when a party asks the Government to take a "'*discrete* action' that is 'legally *required* . . . about which an official had no discretion whatsoever.'" Id. (quoting Norton, 542 U.S. at 63–64). Under the APA, when a plaintiff seeks to compel an agency to act, an order granting that relief is available only to the extent such action is required by law. Id.; cf. Norton, 542 U.S. at 63–65. This limitation necessarily overrides federal courts' inherent equitable authority.[5] Cf. Shawnee Tribe v. Yellen, 2021 WL 1634597, at *2 (D.D.C. Apr. 26, 2021).

In that case, the D.C. Circuit declined to compel the IRS to create a refund program to redress the plaintiffs' complaints because one already existed by congressional design (in addition to the administrative remedy invalidated by the district court). Long-Distance Tel., 751

---

[5] To be sure, the APA does not displace all equitable discretion of the federal courts. (Cf. dkt. 112 at 19). This Court could, for example, have exercised its discretion to decline to vacate Notice 2016-66 upon remand to the agency. Congress has, however, set the *outer bounds* of permissible judicial interference with Executive Branch agencies under the APA. Section 706 reflects Congress's careful balancing of its desire for agency oversight against the importance of the separation of powers. While the Court undoubtedly retains discretion to interfere less, it can do no more than Congress has permitted. Cf. Tigner v. Texas, 310 U.S. 141, 148–49 (1940) (observing that the fashioning of remedies is an important legislative function).

F.3d at 634. So too here. In general, when a taxpayer files a return with the IRS, it cannot require the IRS return the original documents. Section 6103(e)(1)(A) generally provides that a taxpayer may, upon written request to the IRS, receive a copy of any return it files with the IRS. Taxpayers request that information using Form 4506, Request for Copy of Tax Return. Taxpayers may also request this information by invoking their rights under the Freedom of Information Act. 5 U.S.C. § 552.

Absent a request from a taxpayer, the IRS has no statutory or regulatory duty to return the documents, and this Court lacks the authority to command the IRS to create a new program providing a third avenue for that relief. See Long-Distance Tel., 751 F.3d at 634 ("Absent a statutory duty to promulgate a new rule, a court cannot order it.").

**B.    Even if the injunction was permissible under the APA, CIC lacked standing to seek—and the Court thus lacked jurisdiction to issue—an injunction requiring the return of documents to nonparties.**

Aside from the APA problems, CIC also lacked standing to seek the return of documents given to the IRS under the Notice by nonparties. Since the Court lacked jurisdiction to order such relief, it should reconsider its order.

CIC had standing to challenge the Notice because it alleged it was harmed by the Notice. CIC may also have standing to seek the return of its own Form 8918, the only document it filed pursuant to Notice 2016-66.[6]

_____

[6] As noted above, the IRS will search for the form CIC filed with OTSA and return the original document once found. Because the Government will voluntarily return CIC's Form 8918, the Court need not decide whether CIC has standing to demand that relief. If it has such standing, it would only be to seek the return of the original, paper document. CIC cannot demand the return of copies made before the Notice was invalidated. See Richard A. Vaughn, DDS, P.C. v. Baldwin, 950 F.2d 331, 333 (6th Cir. 1991). Relatedly, the Court's order does not command the destruction of electronic copies of documents produced pursuant to the Notice. If it had, that relief would likely be barred by the Anti-Injunction Act. Shiffman v. I.R.S., 103 F.3d 130

(continued…)

But CIC has not established its standing—or this Court's jurisdiction—to seek injunctive relief demanding the return of documents the IRS collected from nonparties. Article III requires plaintiffs to demonstrate standing for each form of relief that they seek. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208 (2021). A plaintiff "cannot sidestep Article III's requirements by combining a request for injunctive relief for which he *has* standing with a request for injunctive relief for which he *lacks* standing." Salazar v. Buono, 559 U.S. 700, 731 (2010) (Scalia, J., concurring) (emphasis in original). If a plaintiff lacks standing to pursue its requested relief, a court is without jurisdiction to grant it. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109–10 (1998); Parsons v. U.S. D.O.J., 801 F.3d 701, 709–10 (6th Cir. 2015).

To seek injunctive relief, a plaintiff must show it is "under threat of suffering 'injury in fact' that is concrete and particularized." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). The risk of threat must be actual and imminent as opposed to conjectural or hypothetical. Id. The plaintiff's impending injury must be "fairly traceable" to the defendant's action. Id. And, crucially, it must be likely that the plaintiff's requested relief will redress the alleged injury. Steel Co., 523 U.S. at 103. If (as here) all standing conditions are not met, then injunctive relief is prohibited. To "allow[] courts to oversee legislative or executive action would significantly alter the allocation of power away from a democratic form of government." Summers, 555 U.S. at 493.

The burden is on CIC to establish all elements of Article III standing. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 411–12 (2013). Where standing is challenged at the summary judgment stage, a party "can no longer rest on mere allegations" and must instead "set forth by

_____

(Table), 1996 WL 721787, at *2 (6th Cir. 1996) (suit asking Court to require IRS to return documents allegedly collected illegally barred by Anti-Injunction Act).

affidavit or other evidence specific facts" that establish its standing. Id. at 412; accord Parsons, 801 F.3d at 715. These specific facts "must affirmatively appear in the record," Crawford v. U.S. Dep't of Treasury, 868 F.3d 438, 457 (6th Cir. 2017), even if, as here, the record is limited by the nature of the APA, Klein v. U.S. Dep't of Energy, 753 F.3d 576, 580 (6th Cir. 2014).

CIC has not alleged—much less established—that it has suffered, is suffering, or will suffer an Article III injury in fact as a result of the IRS declining to return documents produced by nonparties pursuant to the Notice. Allegations of past harm are insufficient to establish standing to seek injunctive relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983); Kanuszewski v. Mich. Dep't of Health & Human Servs., 927 F.3d 396, 406 (6th Cir. 2019) ("Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief."). A risk of future harm can satisfy the concrete-harm requirement in a suit for injunctive relief, but only if "the risk of harm is sufficiently imminent and substantial." TransUnion LLC, 141 S. Ct. at 2210. The risk of harm must be to the plaintiff, not to the interests of nonparties. Cf. Kowalski v. Tesmer, 543 U.S. 125, 129 (2004). And that risk of future harm must be established by evidence in the record. TransUnion LLC, 141 S. Ct. at 2212.

CIC will suffer no particularized, concrete harm if the IRS does not return the Forms 8918 and 8886 produced to OTSA under the Notice by nonparties. Assuming (but not conceding) that those third parties would be harmed if IRS did not return the documents it acquired under the Notice, CIC must establish an injury to *its own* interests, not the interests of nonparties. To have standing to seek injunctive relief extending to nonparties, CIC must establish that IRS's failure to return nonparty documents would harm CIC, not anyone else. See Gill v. Whitford, 138 S. Ct. 1916, 1934 (2018). CIC cannot make that showing. It has no possessory or

privacy interest in the documents submitted by nonparties. It would experience no benefit if the documents were returned to their filers. Conversely, it will experience no harm if they are not.

Moving to the next (equally disqualifying) problem, CIC cannot satisfy the redressability element. As stated, the only potential Article III harm CIC could suffer would arise if IRS refused to return the original documents CIC submitted pursuant to the Notice. But the requested relief—requiring the return of *all* documents submitted by others under the Notice—is not designed to remedy that injury. See id. ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.").

To survive Article III scrutiny, a remedy must provide "substantial and meaningful relief" to the plaintiff's injury in fact. Parsons, 801 F.3d at 715; accord Arizona v. Biden, 2022 WL 1090176, at *10 (6th Cir. Apr. 12, 2022) (Sutton, C.J., concurring) ("A valid Article III remedy operates with respect to specific parties, not with respect to a law in the abstract." (cleaned up)). Relief that does not remedy the injury suffered cannot be "bootstrap[ped]" to a request for relief that does provide redress. Steel Co., 523 U.S. at 107. To the extent CIC's injury is having been subject to an APA-invalid rule, that is a past injury that cannot provide standing to seek injunctive relief. Kanuszewski, 927 F.3d at 406. To the extent CIC's injury is the IRS's retention of *its* Form 8918, its injury will be fully remedied by return of that document and cannot establish standing to demand return of documents to nonparties. If CIC wanted an injunction extending to nonparties, it should have pursued this case as a class action. Cf. Arizona, 2022 WL 1090176, at *10 ("The law already has a mechanism for applying a judgment to third parties. That is the role of class actions."); Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 163 (2010) ("Respondents in this case do not represent a class, so they could not seek to enjoin such an order on the ground that it might cause harm to other parties.").

All of this makes clear that this injunction is not designed to remedy a harm suffered by CIC; it is designed to prevent the Service from benefiting from the APA violation. But there is no such thing as a punitive injunction. Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 61 ("The historic injunctive process was designed to deter, not to punish.") (quoting Hecht Co. v. Bowles, 321 U.S. 321, 329–30 (1944)). Nor can a plaintiff establish standing to seek injunctive relief to deter an agency from committing future violations absent concrete evidence that an imminent future violation is likely to occur. See Steel Co., 523 U.S. at 108 (holding that injunctive relief which could not "conceivably remedy any past wrong but [was] aimed at deterring petitioner from violating [a statute] in the future" violated Article III absent evidence of a continuing violation of the statute or an imminent future violation of the statute).

Even assuming that CIC is harmed by IRS retention of its information (which the Court need not decide as the IRS will return the Form 8919 when located)[7] there is no reasonable reading of the hundred-plus filings constituting this record that could justify CIC's standing to seek the return of *nonparty* information.[8] And if CIC lacked standing to ask for it, this Court lacked jurisdiction to grant it.

As the Supreme Court has explained:

> In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or

---

[7] The substance of the information is not privileged because CIC is not a law firm or federal tax practitioner under 26 U.S.C. § 7525.

[8] The burden to establish standing rests with CIC, not the Government. Nevertheless, the Government addresses CIC's possible arguments to show that CIC cannot cure these failures through amendment, extrinsic evidence, or otherwise. None of this should distract from the fact that "[s]tanding is not an ingenious academic exercise in the conceivable, but . . . requires, at the summary judgment stage, a factual showing of perceptible harm." Lujan v. Defs. of Wildlife, 504 U.S. 555, 566 (1992).

> official violation of law. Except when necessary in the execution
> of that function, courts have no charter to review and revise
> legislative and executive action.

Summers, 555 U.S. at 492.

Having determined that Notice 2016-66 violated the APA, this Court had jurisdiction to remedy that violation. But that jurisdiction did not empower the Court to remedy all perceived problems stemming from that violation. See Lewis v. Casey, 518 U.S. 343, 357 (1996). In providing relief greater than that required to remedy a harm affecting CIC, the Court's order "discard[ed] a principle fundamental to the separate and distinct role of the Third Branch." Lujan, 504 U.S. at 576. A federal court can act only to remedy harm suffered by a litigant appearing before it. Id. "Vindicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive." Id. (emphasis original). The Court's order, insofar as it orders the return of documents to nonparties, cannot withstand Article III scrutiny and should be reconsidered.

### C.     Even if the injunction was permissible under the APA, and even if the Court had jurisdiction to grant it, traditional equitable principles do not support it.

Even assuming the APA and Article III did not limit the Court's ability to order equitable relief, the relief ordered was inappropriate because the four traditional equitable factors do not support the injunction. In the usual course, a plaintiff may only obtain a permanent injunction if it demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto Co., 561 U.S. at 156–57 (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). The Court's failure to consider these factors is alone a manifest error justifying reconsideration.

As explained above, CIC has not identified a concrete harm that the injunction was designed to redress, and thus lacks standing to seek injunctive relief to the extent it applies to the documents of nonparties. Yet the harm a party must show to justify injunctive relief is far greater than the harm required for Article III standing. Rather than merely "concrete" and "particularized," the irreparable injury must instead "be both certain and great." Nat. Res. Def. Council, Inc. v. U.S. E.P.A., 383 F. Supp. 3d 1, 14 (D.D.C. 2019); cf. Lyons, 461 U.S. at 111.

CIC's complaint did not allege any irreparable harm, let alone harm that an injunction requiring the return of documents provided by nonparties would address.[9] This Court agreed when it granted a preliminary injunction. It identified the only basis of irreparable harm as CIC's alleged "substantial economic costs to achieve compliance with the Notice." (Dkt. 82 at 10). The Court referenced no other harms. In fact, the Court previously rejected CIC's allegations of other harms in an earlier order denying injunctive relief. (Dkt. 24 at 8 n.7 (noting skepticism that any other harms alleged by CIC would constitute irreparable harm)). And while it may be appropriate to perform some speculation for purposes of standing, the harm must be clear and sufficiently supported in the record to justify injunctive relief. Compare Monsanto Co., 561 U.S. at 153 (finding standing) with id. at 162 (denying injunctive relief). Suffice to say, the nonparties to whom the order extends have offered no allegation of any irreparable harm *they* will suffer if the Court does not issue its injunction.

With only the past harm of compliance costs properly before the Court, the injunction cannot be justified. The party that seeks injunctive relief must show the threat of a *future* injury as the result of the defendant's actions to obtain such a drastic remedy. Friends of Tims Ford v.

_____

[9] This analysis holds true whether reviewing the original complaint, (dkt. 1), or the amended complaint, (dkt. 104).

Tenn. Valley Auth., 585 F.3d 955, 970–71 (6th Cir. 2009). Here, future compliance costs disappeared with the vacatur of the Notice. And because there is no harm to redress, the second factor—which considers whether the ongoing harm can be redressed through remedies available at law—also favors the Government.

The Court also failed to balance the harm the Government would incur as a result of the injunction against the harm CIC may suffer in its absence. Here, the harm to the IRS imposed by requiring the return of all Forms 8918 and 8886 provided to OTSA pursuant to Notice 2016-66 by nonparties must be measured by the cost to the Government in terms of personnel hours, postage, etc. needed to return the original forms. On the current record, the balance of harms weighs in favor of the Government.

Lastly, the public interest weighs against the injunctive relief granted. As noted, the cost to the Government—and therefore to the public fisc—is likely significant. Yet there is no public interest served by requiring the Service to find and return these documents to nonparties.

## III. At a minimum, the Court should clarify the injunctive relief it granted to comply with the terms of Rule 65.

The Court should dissolve the injunction as to CIC since the Government agrees to return the original documents it provided pursuant to Notice 2016-66. In all events, even if the Court denies the motion to reconsider, it should still modify its earlier order to clarify what it requires of the IRS and to meet the requirements of Rule 65. That rule provides that every order granting an injunction must, at a minimum, "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A–C).

These strictures serve important purposes. First, they "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a

contempt citation on a decree too vague to be understood." Schmidt v. Lessard, 414 U.S. 473, 476 (1974). Second, they "enable the appellate court 'to know precisely what it is reviewing'" if the enjoined party seeks further review of the order. Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc., 904 F. Supp. 2d 530, 532 (D. Md. 2012) (quoting id.).

Here, the Court's injunctive order—in its entirety—states that the IRS is ordered "to return to taxpayers and material advisors all documents and information produced" pursuant to Notice 2016-66. (Dkt. 124). The directive may seem straightforward on its face. And when combined with the memorandum, it appears the Court intended to craft its order to eliminate the need for future litigation between the parties. (Dkt. 123 at 15).

On closer examination, the order will create more problems than it solves because the order does not specify which documents the IRS must return. The IRS interprets "all documents and information" to refer to the Forms 8918 and 8886 that material advisors and participants filed with OTSA. These forms were filed on paper (or via e-fax), were stored in a physical location, and to the extent they still exist and can be found, they can be "return[ed]" in a concrete way. At minimum, the IRS requests the Court reconsider its order to clarify that the IRS need only return the original, paper documents that were sent to OTSA.

Under the reportable transaction regime, participants must file a copy of Form 8886 with OTSA once, on paper (or, starting in late 2020, via e-fax). Participants also must attach that Form 8886 to their annual income tax returns each year that they engage in the reportable transaction. The copies of Forms 8886 sent to OTSA are filed on paper (or via e-fax), while the Forms 8886 filed with annual returns are filed in the same manner as the return. For many taxpayers, that is electronically. The Service cannot meaningfully "return" a document that it received electronically. Nor could the Service feasibly return all Forms 8886 attached to the

annual returns of paper filers because the IRS cannot readily identify which of those returns have Forms 8886 related to Notice 2016-66 attached to them.[10]

The order also lacks any justification for requiring the Service to expend the time and money to send documents to participants and material advisors that those entities likely already possess. Nor does it define what it means to "return" those documents, which is problematic to the extent there are participants that no longer exist as a corporate entity.[11]

Lastly, the Court fails to define the geographic scope of the injunction. Sister district courts within this circuit have reconsidered orders granted against the Government under the APA when they did not define the geographic scope, and in at least one instance, the Court expressly declined to enter nationwide declaratory relief based on many of the concerns articulated by the Government in this motion. Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention, 542 F. Supp. 3d 719, 735–36 (N.D. Ohio 2021); see also Arizona, 2022 WL 1090176, at *10 (questioning the validity of nationwide injunctions).

## CONCLUSION

The Court should not order the return of documents to nonparties. The APA does not provide for it, CIC lacks standing to ask for it, and traditional equitable factors do not support it. Notwithstanding the above, at a minimum, the Court should clarify its order, so the IRS better understands what the Court requires of it.

[*Signature line on next page*]

---

[10] As previously noted, the requirement to return all documents (even if limited to those filed with OTSA) is burdensome in terms of direct costs and employee time.

[11] This likely applies to a significant number of captive insurance companies, as their owners wound down these activities once they realized that those peddling these transactions were selling them tax-abusive transactions that would not survive judicial scrutiny.

DATE: April 18, 2022

FRANCIS M. HAMILTON III
Acting United States Attorney

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ Kyle L. Bishop
KYLE L. BISHOP
MOIRA E. GOODWIN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-616-1878 (v)
202-514-6866 (f)
Kyle.L.Bishop@usdoj.gov
Moira.E.Goodwin@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of April, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ Moira E. Goodwin
MOIRA E. GOODWIN
Trial Attorney
U.S. Department of Justice, Tax Division