UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION (KNOXVILLE)

| | | |
|---|---|---|
| CIC SERVICES, LLC, et al. | : | |
| | : | CASE NO. 3:17-cv-00110-TRM-HBG |
| *Plaintiff,* | : | |
| | : | CHIEF JUDGE TRAVIS R. McDONOUGH |
| v. | : | |
| | : | **PLAINTIFF'S RESPONSE TO DEFENDANTS'** |
| INTERNAL REVENUE | : | **MOTION FOR RECONSIDERATION OF** |
| SERVICE, *et al.,* | : | **INJUNCTIVE RELIEF (DOC. # 125)** |
| | : | |
| *Defendants.* | : | |
| | : | |

Plaintiff, by counsel, responds to Defendants' Motion for Reconsideration of Injunctive Relief filed herein on April 18, 2022 ("Motion for Reconsideration," Doc. # 125) as follows:

**PROCEDURAL NOTE**

On March 21, 2022, this Court ruled on then pending cross-motions for summary judgment, issuing a Memorandum Opinion and final Order and Judgment in favor of the Plaintiff (Docs. # 124 and 125). The Court's pronouncements (a) vacated IRS Notice 2016-66, effectively enjoining its enforcement nationwide due to its finding that it was patently unlawful, ("ordinary injunctive relief") and (b) also directed the IRS to return all documents filed with the IRS by all taxpayers pursuant to such Notice in light of the Court's express finding of illegality and "arbitrary and capricious" actions on the part of the Service ("special injunctive relief"). [1]

---

[1] / Judgments for injunctions are <u>not</u> automatically stayed for any period of time; rather, they require immediate compliance, whether or not an appeal is taken. Fed. R. Civ. Pro. 62(c). It does not appear that the IRS has complied with this requirement.

1

On April 18, 2022, the IRS filed its Motion for Reconsideration, requesting the Court to (a) drop the portion of its Order requiring special injunctive relief, i.e., the return of documents and (b) clarify the injunctive relief it granted so as to provide greater guidance to the IRS, consistent with Fed. R. Civ. Pro. 65. *See* Doc. 125 at 19. [2]/

**LEGAL DISCUSSION**

**A. Summary of Plaintiff's Position.**

Plaintiff has no objection to the Court's further consideration of the legal argument now advanced by the IRS in support of its opposition to the return of documents to nonparties. It also has no objection to appropriate clarification of the Court's Order so as to provide the IRS with additional guidance for purposes of compliance. However, Plaintiff continues in the belief that a renewal of the grant of ordinary and special injunctive relief by the Court is entirely appropriate in the circumstances presented by this case.

**B. Impact of Defendants' Rule 59(e) Motion.**

On one hand, Defendants' Motion for Reconsideration is an "extraordinary remedy" that is said to impose a "heavy burden" on the movant, for such motions can frustrate bringing litigation to a prompt conclusion in accordance with FRCP 1. *See Clark v. U.S.,* 764 F.3d 653, 661 (6th Cir. 2014) (quoting *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). [3]/ On the other hand, such motions can serve a salutary purpose, permitting a court, exercising its sound discretion, to alter or amend a judgment in order to re-examine and refine

---

[2]/ It appears that Defendants at least tentatively recognize that the opinion in *Mann Construction, Inc. . et al. v. USA,* Case No. 1:20-cv-11307 (5th Cir., decided March 3, 2022) justifies *vacatur in this case.*

2

an earlier decision. *See White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 450 (1982). A rendering of a court's clarification or self-correction might even eliminate the need for an appeal. *See Acadian Diagnostic Labs, LLC v. Quality Toxicology, LLC,* 965 F.3d 404, 414 (5th Cir. 2020). Here, the slight delay involved is worth the salutary advantage to be obtained. *See* further discussion *infra.*

The Court's consideration of the IRS's motion along the lines suggested herein by Plaintiff will "suspend the finality of the original judgment" of the Court and "reset the clock" for purposes of appeal, the seeking of a stay, and Plaintiff's application for legal fees and expenses. *Bannister v. Davis,* ___U.S.___, 140 S. Ct. 1698, 1703 (2020). [4]/

### C. Defendants' Request to Advance Additional Arguments.

The first point made by the IRS in support of its Motion for Reconsideration is that it had inadequate opportunity to advance its legal argument in opposition to the Court's grant of special injunctive relief, i.e. the return of documents. Doc. # 125, at 5-6.

The "law of the case" imposed by Magistrate Judge Guyton's provided that this Court could later set a briefing schedule on the special injunctive relief requested by Plaintiff, but only <u>if necessary.</u> Doc. #103 at 2. However, in the Opinion, Judgment and Order of this Court, entered on March 21st, Chief Judge McDonough found no necessity for additional briefs

---

[3]/ Indeed, the Federal Rules of Civil Procedure do not even expressly recognize motions for "reconsideration," although individual local Districts may. *See In re Greektown Holdings, LLC,* 728 F.3d 567, 573-74 (6th Cir. 2013).

[4]/ Further, the "finality" of judgment relevant to the case at bar will likely not occur until such time as the case is again ruled upon by the Sixth Circuit. *See McKenyan v. Sullivan*, 501 U.S. 89 (1991) (a final judgment is one that is no longer appealable); *Feldpausch v. Heckler,* 763 F.2d 229, 231-33 (6th Cir. 1985). At that time, if not sooner, Plaintiff will also have an opportunity to finalize and refile its fee calculations. Accordingly, counsel for Plaintiff hereby withdraw their Motion for Attorney Fees (Doc. 127); they will reapply following "final" action in the case.

3

on the question. *See* Doc. 123, at 13-15.

Nonetheless, due to some degree of confusion on the point and in the ultimate interests of justice, Plaintiff believes it to be entirely appropriate for the Court to review the arguments now set forth in Doc. 125 and the IRS's anticipated reply brief on its Motion for Reconsideration. Plaintiff is confident that such review, in light of the arguments advanced herein and elsewhere in the record, will not change the result which should obtain with respect to Plaintiff's request for special injunctive relief.

**D. Equitable Authority in the Federal Courts.**

From our nation's founding, federal courts have exercised broad equitable authority to issue injunctions prohibiting executive branch officials from acting beyond their lawfully-conferred authority. This bedrock power to restrain *ultra vires* acts by the executive branch is a foundational tenet of the American legal system dating back to the Judiciary Act of 1789. The Supreme Court has long recognized that this equitable authority should not be abridged "[a]bsent the clearest command to the contrary from Congress." *Califano v. Yamasaki,* 442 U.S. 682, 705 (1979)(citing *Porter v. Warner Holding Co.,* 328 U.S. 395, 398 (1946)); *Scripps-Howard Radio v. FCC,* 316 U.S. 4, 9-11 (1942).

Congress must speak in unmistakable terms to limit a federal court's inherent equitable powers. *Id.,* at 705. For almost two centuries, the Supreme Court has made clear that "[t]he great principles of equity . . . should not be yielded to light inferences or doubtful construction." *Brown v. Swann,* 35 U.S. (10 Pet.) 497, 503 (1836); *see also Porter*, at 398 (The "comprehensiveness [of a court's] equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command."). Courts must therefore "resolve [any]

ambiguities . . . in favor of that interpretation which affords a full opportunity for equity courts to [act] in accordance with their traditional practices." *Hecht Co. v. Bowles,* 321 U.S. 321, 329-30 (1944); *see also McQuiggin v. Perkins,* 569 U.S. 383, 397 (2013) (Supreme Court concluded that "it will not construe a statute to displace courts' traditional authority absent the clearest command."); *Holland v. Florida*, 560 U.S. 631, 646 (2010) (same); *Miller v. French*, 530 U.S. 327, 340 (2000) (same).

There is "no doubt" that "relief may be given in a court of equity . . . to prevent an injurious act. . . for which the law might give no adequate redress." *Carroll v. Safford,* 44 U.S. (3 How.) 441, 463 (1845). The late, renowned Professor Louis L. Jaffee of Harvard Law School recognized the ability of our federal courts to arrest and correct an administrative injury and redress administrative wrongdoing as the very basis for the review and balancing of our "administrative state". *See* Louis L. Jaffee, *Judicial Control of Administrative Action* 176 (1965); 75 Yale L.J. 1208 (1966).

### E. Alleged APA Constraints.

In their Motion for Reconsideration, Defendants contend that the Administrative Procedure Act, specifically 5 U.S.C. §§702 and 706, effectively prohibits the Court's grant of special injunctive relief inasmuch as the APA does not expressly authorize it. Doc. # 125, at 7-10. In short, because the APA does not have a specific statutory provision requiring a federal agency to "return the documents it illegally collected," the IRS contends that the Court is unable to fashion that relief.

The irony of the IRS advancing this argument should not be lost on the Court; only a few weeks ago, the IRS was urging the Court to spurn the remedy that is *actually in the APA* (vacatur) in favor of a judiciary-created remand-without-vacatur option:

> Although the "shall . . . set aside" language of § 706 could be interpreted to require vacatur of an invalid rule, courts and scholars have urged against a literal interpretation. See, e.g., Ronald M. Levin, "Vacation at Sea: Judicial Remedies and Equitable Discretion in Administrative Law", 53 DUKE L.J. 291, 310 (2003); Checkosky v. S.E.C., 23 F.3d 452, 462 (D.C. Cir. 1994). Instead, the remedial directive in § 706 must be construed "in light of a longstanding judicial presumption that militates against a finding that Congress has placed curbs on the courts' remedial discretion." Levin, supra, at 310.

See IRS MSJ, Doc. 27; PageID #2078.

The IRS's *current* view of the Court's powers is that the courts are authorized to act only with the permission of another branch of government. Plaintiff's perception is that this remains a free country where the courts may act to grant equitable relief unless and until the policy branches expressly prohibit certain judicial relief, as concluded by the Supreme Court in *Califano, supra.*

Further, the government misreads the Supreme Court's decisions in *Norton v. S.Utah Wilderness All.* 542 U.S. 55 (2004) and *Tigner v. Texas,* 310 U.S. 141. *Id.* In the case at bar, This Court has expressly found that (a) the IRS has unlawfully failed to follow the public notice and comment requirement of the APA and (b) arbitrarily and capriciously failed to follow the requirement imposed upon the agency by the IRC to determine *a priori* that transactions required to be reported by Notice 2016-66 have the potential to promote tax avoidance or evasion. In the case at bar the IRS has not produced even a *scintilla* of evidence to

such effect. *See* Doc. #123 at 11. In responding to such outrageous failures by the IRS to take actions demanded by law, this Court acted perfectly within the law including 5 U.S.C. 706.

   F. The "Standing" Issue.

Article III of the U.S. Constitution, which extends the jurisdiction of federal courts to "Cases, in Law and Equity" and "Controversies to which the United States shall be a Party," clearly prohibits requests for advisory opinions and the like which do not present a justiciable controversy. *Const. of the U.S., Art. III, Sec. 2, Cl.1*.

In order to establish Article III standing, the Supreme Court has indicated that a plaintiff must demonstrate "injury in fact," a harm that is both concrete and actual or imminent, not conjectural or hypothetical, "causation"—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant, and he must demonstrate "redressability," a substantial likelihood that the requested relief will remedy the alleged injury in fact. *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens,* 529 U.S. 765, 771 (2000). Additionally, in *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157-58 (2014), the Supreme Court noted that the Doctrine of Standing gives meaning to Article III's cases-and-controversies limit on the jurisdiction of federal courts by identifying those disputes which are appropriately resolved through the judicial process. A plaintiff satisfies the injury-in-fact requirement for Article III standing where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder. *Id.,* at 158-61.

The Supreme Court <u>in this case</u> has indicated Notice 2016-66 involves a very real threat of criminal sanctions which could be lodged against Plaintiff CIC Services, LLC and other captive

7

managers as well. *See, CIC Services LLC v. I.R.S.,* 141 S. Ct. 1582, 1587 (2021). Furthermore, both this Court (in its March 21st Opinion, Judgment and Order) as well as the Sixth Circuit have on numerous occasions expressed its dissatisfaction and frustration with the IRS, for example as follows:

> *CIC Services, LLC v. IRS,* 925 F.3d 247, 258 (6th Cir. 2019) (The broader legal context in which this case has been brought is not lost on this Court. Defendants do not have a great history of complying with APA procedures, having claimed for several decades that their rules and regulations are exempt from those requirements.)
>
> *CIC Services, LLC v. IRS,* 936 F.3d 501, 507 (6th Cir. 2019)(Tharpar, J. dissenting) (In recent years, the [IRS] has begun to regulate an ever-expanding sphere of everyday life from childcare and charity to health-care and the environment. That might be okay if the IRS followed basic rules of administrative law. But it doesn't. So with great power comes little accountability.)
>
> *Summa Holdings, Inc. v. Commissioner,* 848 F.3d 779, 787 (6th Cir. 2017) (Before long, allegations of tax avoidance begin to look like efforts at law avoidance [by the IRS]. Tax avoidance by taxpayers is not unlawful. The Commissioner cannot fault taxpayers for making the most of the tax-minimizing opportunities Congress created.)
>
> *Mann Const., Inc. v. U.S.*, Sixth Cir. App. No. 21-1500 (Mar. 3, 2022) (The taxpayers claim that the IRS failed to meet a reporting requirement of its own by skipping the notice-and-comment process before promul-gating this legislative rule. If individuals must turn square corners when they deal with the government, the taxpayers insist, it cannot be too much to expect the government to turn square corners when it deals with them. We agree with the taxpayers.)(cleaned up)

Special injunctions intended to repair and restore law and order have been used as a major tool in civil rights litigation for almost 70 years. *See Brown v. Board of Education (Brown II),* 349 U.S. 294 (1955) and its progeny. Admittedly, the case at bar does not present a case nearly so dire as the case presented by our country's educational system prior to *Brown II,* but the obfuscation and obstinacy of the IRS has thus far not abated, despite the best efforts of

Plaintiff and our judicial system over the course of the last five years. In "thumbing its nose" at the rights of taxpayers, the IRS has invited drastic action. Such drastic action is intended to deter the IRS from its continuing its current course of action which remains adverse to the interests of Plaintiff.

CIC clearly has standing for purposes of the ordinary injunctive relief granted and in APA cases *vacatur* is the norm so the question is whether the injunction is too broad (as a matter of the Court's equitable powers discussed *supra.,* not Article III standing). In this regard, the redressability or propensity rule generally requires a realistic threat from the Defendants of future harm or future harm from past harm before a court issues broad injunctions with public implications. *See, e.g., R.K by and through J.K v. Lee* (mask mandate case decision entered December 21, 2021 by M.D. TN available at 2021 WL 5860924).

The injunctive process was designed to deter, not to punish. And the essence of equity jurisdiction has been the power to "mould each decree to the necessities of the particular case [and] [f]lexibility rather than rigidity has distinguished it." *Hecht Co. v. Bowles,* 321 U.S. 321, 329-30 (1944).

Broad relief is warranted here given the ongoing odious behavior of the IRS and given the fact that illegal Notice 2016-66 permitted the government to collect information it otherwise couldn't. Notice 2016-66 is properly vacated nationwide, thus the IRS should be made to deal with the consequences nationwide and give people their property back.

### G. Traditional Equitable Principles.

Plaintiff respectfully submits that the record before the Court abundantly supports the four traditional equitable bases for the grant of injunctive relief. Plaintiff continues to face

9

Case 3:17-cv-00110-TRM-JEM   Document 128   Filed 04/27/22   Page 9 of 12   PageID #: 2261

irreparable injury, including criminal fines and incarceration. There are no available legal remedies adequate to compensate CIC Services' injuries. An equitable remedy is warranted considering the balance of hardships at issue. The public service would not be disserved by the injunctive relief granted by the Court.

The necessity and propriety of this equitable remedy is entirely brought on the IRS by itself in two ways. First, CIC Service's original motion for preliminary injunction was filed well before the initial filing date. The IRS could have agreed to enjoin Notice 2016-66's effect until its legality could be litigated. Instead, it opposed it. Second, at any time, the IRS was free to begin proper rulemaking procedures for identifying captive insurance companies as a reportable transaction via notice and comment. It didn't. Instead, it chose to illegally collect thousands of informational returns and used the reportable transaction designation to scare taxpayers away from captive insurance. This is the bed the IRS made for itself.

**H. Clarification of Injunctive Relief.**

FRCP 65(d)(1) and (2) govern the content and scope of orders granting an injunction. The order should state the reasons for its issuance, its specific terms, and describe the act or acts restrained or required. The order binds the parties, their officers, agents, servants, employees, and attorneys, and other persons in concert with them. *Id.*

Rule 65(d) is not a limitation on a federal court's inherent power to render and enforce an equitable judgment. *See Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 577 (5th Cir. 2005). In the case at bar, it might require the appellate court to examine the accompanying Memorandum Opinion and perhaps the record, to determine if sufficient evidence supports the issuance of injunctive relief. Plaintiff respectfully submits that it does. *Id.*

### I. Alleged Impossibility of Performance.

For the past five years, the government has continually argued that Notice 2016-66 is essential to uncover critical information vital to the needs of the IRS. However, it now claims that it may not even be able to find such critical information. Doc. #125, at 18. Additionally, the government claims that it may be impossible to return documents submitted electronically (rather than hard copy) in satisfaction of Notice 2016-66. Mind you, it does not appear that the IRS has yet made a serious effort to even find such documents.

Plaintiff respectfully requests that the Court issue an order to show cause to the IRS requiring the in-person appearance before the Court of the highest responsible policy official currently responsible for Notice 2016-66, along with the top technical official familiar with the storage and availability of filings in compliance with Notice 2016-66. The hearing on such order should be scheduled for a date sometime within the next 30-60 days, during which the IRS shall explore in detail enforcement of the March 21st Order, be available to report to the Court in detail on the feasibility of compliance, and be available to answer questions under oath to be posed by counsel for the Plaintiff and the Court. Injunction orders are subject to the Court's contempt power. *Gunn v. University Committee to End War in Vietnam,* 399 U.S. 383 (1970).

### CONCLUSION

Consistent with the arguments raised *supra.,* Plaintiff respectfully requests that the Court issue a revised judgment and order in keeping with the points advanced herein. Attached for the Court's convenience is a proposed draft order and judgment.

Date: April 27, 2022

Respectfully submitted,

s/ Kenneth A. Lazarus
Kenneth A. Lazarus (admitted *pro hac vice*)
LAZARUS & ASSOCIATES
1055 Thomas Jefferson St., NW, Suite M-100
Washington, D.C. 20007
Tel: (202) 295-2330 (Direct Line)
E-mail: lazaruslaw@aol.com

s/ Adam R. Webber
Adam R. Webber (admitted *pro hac vice*)
Attorney at Law
4244 Indian Ripple Road, Suite 150
Beavercreek, Ohio 45440
Tel: (937) 797-8500
E-mail: adam@awebberlaw.com

-and-

s/ John M. Kizer
John M. Kizer (TN Bar No. 029846)
Gentry, Tipton & McLemore, PC
900 South Gay Street, Suite 2300
Knoxville, TN 37902
Tel: (865) 525-5300
E-mail: jmk@tennlaw.com

COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This is to certify that on this 27th day of April, 2022, I electronically filed the foregoing, together with the attachment, using the CM/ECF system which will provide copies of such filing to counsel of record for Defendants.

s/ Adam R. Webber
Adam R. Webber
Counsel for Plaintiff