UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION (KNOXVILLE)

| | | |
|---|---|---|
| **CIC SERVICES, LLC** | : | CIVIL CASE NO. 3:17-CV-110 |
| *Plaintiff,* | : | CHIEF JUDGE TRAVIS R. McDONOUGH |
| v. | : | |
| | : | **MEMORANDUM IN OPPOSITION TO** |
| **INTERNAL REVENUE SERVICE, et al.** | : | **IRS'S MOTION FOR STAY OF INJUNCTIVE** |
| | : | **RELIEF (DOC. 126)** |
| *Defendants.* | : | |

CIC Services hereby submits its opposition to the IRS's Motion for Stay of Injunctive Relief ("pending Motion") (Doc. #126), as follows:

**INTRODUCTORY NOTE**

As an initial matter, it is important to distinguish what the IRS asks and what it *doesn't* ask to be stayed. The IRS does not argue that the *vacatur* of Notice 2016-66 should be stayed (Doc. 123). That is, the IRS appears to concede that, Notice 2016-66 is vacated and a nullity and unless it successfully appeals that portion of the Court's Judgment, it will remain so.

Instead, the sole focus of the IRS's post-judgment Motion for Reconsideration (Doc. #125) and the pending Motion to Stay the Judgment (Doc. #126) is the special injunctive relief ordered by this Court—the return of citizens' illegally-collected informational returns. Obviously, the two motions are related.

As noted in its response to the IRS's Motion for Reconsideration (Doc. #125), CIC Services does not entirely oppose the IRS's request for consideration of its motion papers and clarification from the Court on its Order. To the extent that the IRS claims it cannot (or doesn't know how to) comply with the Court's order, CIC Services welcomes this Court's further instruction to the IRS.

However, to the extent that the IRS claims this Court cannot or should not order special injunctive relief—the return of documents filed in accordance with IRS Notice 2016-66—it is wrong. Put more bluntly, if the IRS wishes to complain to the Sixth Circuit that this Court doesn't have the power to order the return of documents and that it should be entitled to keep years of illegally-collected returns, that is its right—and that is the correct forum for those arguments. But when the IRS asserts that it *cannot actually accomplish this task as ordered*, that is a factual matter that ought to be resolved via a presentation of facts and testimony to this Court in the context of a future hearing, as respectfully suggested to the Court by the Plaintiff (Doc. 128, at 11).

**RELEVANT FACTS**

The Government's recitation of the alleged "facts" set forth in its supporting statement of Procedural History (Doc. 126, at 1) is incorrect. Four corrections bear mentioning:

1. Plaintiff's amended complaint was filed only a month after the Defendants' answered the original complaint (Doc. #76, filed 9/7/21).

2. Magistrate Judge Guyton's Order noted that an additional briefing schedule on Plaintiff's proposed special injunctive relief would be set only <u>if necessary</u>. (Doc. 103, at 2).

3. Plaintiff did brief the special injunctive relief issue in its Motion for Summary Judgment. (Doc. 97, at 16-18).

4. In his March 21, Memorandum Opinion, Chief Judge McDonough saw no necessity for an additional briefing schedule on the special injunctive relief. (Doc. 123, at 15-16).

**LEGAL ARGUMENT**

Plaintiff respectfully request that the IRS first explain what action has already been taken toward compliance with the Court's Order and Judgment of March 21st (Doc. 123).

When a party makes a motion under FRCP 62(c), courts must require the movant to satisfy the following elements: (a) a strong likelihood of success on the merits of the appeal; (b) that unless the motion is granted the movant will suffer irreparable injury; (c) no substantial harm will come to other interested parties; <u>and</u> (d) a grant of the motion will not harm the public interest. *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987); accord *Breeze Smoke, LLC v. U.S.F.D.A.*, 18 F.4th 499, 503 (6th Cir. 2021).

The Government has not and cannot satisfy its burden and it has not tendered to the Court even one affidavit or other admissible piece of evidence in support of its pending Motion.

**A. The Requirement of a Strong Likelihood of Government Success on the Merits**

On this point, the Government basically presents a rehash of its arguments in support of Its Motion for Reconsideration (Doc. #125) which already have been rebutted by Plaintiff's Response thereto (Doc. #128). Those arguments of Plaintiff are incorporated by reference herein.

First, the IRS complains that it didn't get a chance to present its arguments. This claim is simply not true. The relief ordered by the Court was requested in Plaintiff's Amended Verified Complaint (Doc. 104). The IRS filed no answer or affirmative defenses denying the propriety of those claims for relief. But in its response to CIC Services's MSJ, the IRS presented arguments about the propriety and scope of equitable relief. (Doc. 112; Page ID# 2086). It then filed a sur-reply (Doc. 116) expanding on those arguments. And now it has filed its Motion for Reconsideration (Doc. 125) and this Motion for Stay (Doc. 126). The parties have already spilled a fair amount of ink on the question of equitable relief. The IRS complains that it didn't get a

3
Case 3:17-cv-00110-TRM-JEM   Document 129   Filed 04/29/22   Page 3 of 8   PageID #: 2267

chance to brief the issue, but this begs the question: what does the IRS have to say on this question that it hasn't already said?

Second, the IRS claims that this Court lacks the inherent equitable power to fashion equitable relief beyond the APA's remedy of vacatur. This argument was rebutted in Plaintiff's response to the Motion for Reconsideration (Doc 128) (and contradicted by the IRS's own, earlier briefs in this case—Doc. 27; PageID #2078).

Third, the IRS argues that CIC Services lacks standing to seek the equitable relief ordered by the Court—in particular the return of taxpayers' property. This is also wrong as argued in Plaintiff's Response to the Motion for Reconsideration (Doc 128). Although the IRS previously argued this Court had broad equitable powers to fashion a remedy *less than* vacatur, it now asserts that the Court lacks those same broad equitable powers to right a very significant wrong— the illegal collection of informational returns from thousands of taxpayers.

Fourth, the IRS claims that *CIC Services* did not establish any of the traditional factors for special injunctive relief. Again, the IRS is wrong inasmuch as the record in this case is replete with proof of such factors, including an amended verified complaint, witness testimony, and numerous affidavits (Doc. #86).

### B. The Requirement of Irreparable Harm to the IRS

What time will it take for the IRS to track down an informational return, lick a stamp, address an envelope, and drop it in the mail? It doesn't say—merely that it would be "significant." We do not challenge the sincerity of DOJ counsel, but at this point the Court must require testimony from the IRS under oath, subject to cross-examination, and further inquiry by the Court. As the Supreme Court has warned, this Court should be highly suspicious of after-the-fact

4
Case 3:17-cv-00110-TRM-JEM   Document 129   Filed 04/29/22   Page 4 of 8   PageID #: 2268

rationalizations made by agencies in litigation. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988)("Deference to what appears to be nothing more than an agency's convenient litigating position is entirely inappropriate.").

Moreover, the shocking irony of the IRS's cry for mercy because of the alleged burden of *returning the information* should not be overlooked. The IRS had precisely ZERO sympathy when CIC Services requested injunctions because Notice 2016-66 required thousands of citizens to prepare years of informational returns—each of which the IRS estimated took 14 hours to prepare.[1]/ When it wastes citizens' (unpaid) time and worry for five years, the IRS sees it as a mere cost of citizenship; but when it calls for IRS employees' (paid) time (or overtime) and perhaps inconvenience searching for allegedly lost or misplaced critical information illegally taken from law-abiding citizens and returning it to them, it is termed a gross injustice and irreparable harm to the IRS.

This is the bed that the IRS has made for itself. It was not unforeseeable. When this case was first filed, the IRS could have agreed to enjoin Notice 2016-66's effect until its legality could be litigated. Instead, it opposed it. And <u>at any time</u> the IRS was free to begin proper rulemaking procedures for identifying captive insurance companies as a reportable transaction via notice and comment. It didn't. Instead, it chose to illegally collect thousands of informational returns and used the reportable transaction designation to scare taxpayers away from captive insurance so the IRS could outrageously seek to close down an entire industry on its whim.

C. **No Proof of the Absence of Harm to U.S. Taxpayers.**

---

[1] The IRS's most recent estimate for Form 8918 is that it takes over 14 hours to complete. https://www.irs.gov/pub/irs-pdf/i8918.pdf (page 4) (last visited 1/12/22).

Next, the IRS claims that no one will actually be harmed if it just hangs on to the tens of thousands of illegally-collected returns for a while. Again, the gall of this position is astonishing. If documents are illegally extracted from an unwilling citizen upon pain of fine and imprisonment, would any citizen really agree that it was simply okay for the government to hang onto that property because it inconvenient to return it?

The IRS also views this problem from the wrong perspective: it suggests that there is no harm because the taxpayers likely kept copies of their submitted returns and could request copies if they wanted them. This misses the point: whether they kept copies or not, taxpayers don't want the IRS to have (and use) illegally-collected documents that don't belong to it. The IRS has maintained throughout this case that it actively uses the information returns it received pursuant to Notice 2016-66. (See, e.g. Doc. 112; Page ID #2081, claiming "The Service can differentiate the legitimate micro-captive arrangements from tax shelters by analyzing the information reported pursuant to the Notice.").[2]

Plaintiff merely seeks the return of personal property to its rightful owners.

**D. Proof of the Absence of Harm to the Public Interest.**

Finally, the IRS asserts that the taxpaying public will be harmed if it is forced to spend federal dollars to return documents when it is cocksure that this Court will change its mind (or have its mind changed by the Sixth Circuit). One cannot help but wonder how much time and public funds were spent defending this case? Creating and enforcing the illegal Notice 2016-66

---

[2] Of course, this claim is now undercut by the IRS's new admission that it may not actually be able to locate the illegally-collected returns or they may not still exist (See, e.g. Doc. 125; PageID #2187 "These forms were filed on paper (or via e-fax), were stored in a physical location, and to the extent they still exist and <u>can be found</u> . . ."). (emphasis added)

for five years? How many federal dollars were spent collecting, reviewing, sorting, and storing the mountains of illegally-collected information? Again, the IRS should be called to provide testimony to this Court about how heavy a lift this really is in comparison to its efforts that created the problem.

It also strains credulity that the IRS now claims that, although it has been tracking, tracing, and analyzing captive insurance companies and advisors using Notice 2016-66, it may not actually be able to properly locate and send information to those same taxpayers using the U.S. Postal Service. Wasn't the whole point of Notice 2016-66 to *identify* the participants in the captives? The IRS also has the audacity to suggest that it is protecting the privacy interests of taxpayers by retaining their documents because they might get lost or fall into the wrong hands. <u>But the documents are already in the wrong hands</u>!

Except to the extent necessary to expeditiously clarify or modify the Court's ordered reparative relief (based on sworn testimony from the IRS), this Motion to Stay should be denied.

Date: April 29, 2022.

                                             Respectfully submitted,

                                             s/ Kenneth A. Lazarus
                                             Kenneth A. Lazarus (admitted *pro hac vice*)
                                             LAZARUS & ASSOCIATES
                                             1055 Thomas Jefferson St., NW, Suite M-100
                                             Washington, D.C. 20007
                                             Tel: (202) 295-2330 (Direct Line)
                                             E-mail: lazaruslaw@aol.com

                                             s/ Adam R. Webber
                                             Adam R. Webber (admitted *pro hac vice*)
                                             4244 Indian Ripple Road, Suite 150

7
Case 3:17-cv-00110-TRM-JEM   Document 129   Filed 04/29/22   Page 7 of 8   PageID #: 2271

Beavercreek, Ohio 45440
Tel: (937) 264-8719
E-mail: awebber@elliottfaulknerlaw.com

-and-

s/ John M. Kizer
John M. Kizer (TN Bar No. 029846)
Gentry, Tipton & McLemore, PC
900 South Gay Street, Suite 2300
Knoxville, TN 37902
Tel: (865) 525-5300
E-mail: jmk@tennlaw.com
COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This is to certify that on this 29th day of April, 2022, I electronically filed the foregoing pleading, using the CM/ECF system, which will provide copies of such filing to all counsel of record for the Defendants.

/s/ Adam R. Webber
Counsel for Plaintiff